## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| FTX RECOVERY TRUST, | |
| Plaintiff, | |
| - against - | |
| MANIFOLD MARKETS, INC, MANIFOLD FOR CHARITY, INC., ROSS RHEINGANS-YOO, and FTX PHILANTHROPY, INC., | Adv. Pro. No. 24-50214 (KBO) |
| Defendants. | |

### FIRST AMENDED COMPLAINT FOR AVOIDANCE AND RECOVERY OF TRANSFERS PURSUANT TO 11 U.S.C. §§ 105, 544, 548, AND 550, AND DEL. CODE ANN. TIT. 6, §§ 1304 AND 1305, AND FOR DISALLOWANCE OR SUBORDINATION OF CLAIM PURSUANT TO 11 U.S.C. §§ 502 AND 510

Plaintiff FTX Recovery Trust, through its undersigned counsel, for its First Amended Complaint against Manifold Markets, Inc. ("Manifold Markets"), Manifold for Charity, Inc. ("Manifold for Charity" and together with Manifold Markets, "Manifold"), Ross Rheingans-Yoo, and FTX Philanthropy, Inc. (collectively, the "Defendants"), states as follows:

### NATURE OF THE CASE

1.      Plaintiff brings this adversary proceeding pursuant to Sections 105, 544, 548, and 550 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), and Sections 1304 and 1305 of Title 6 of the Delaware Code, Del. Code Ann. tit. 6, §§ 1304(a)(1)-(2) and 1305, to avoid and recover from Rheingans-Yoo, Manifold and FTX Philanthropy, Inc., or from any other person or entity for whose benefit the transfers were made or obligations incurred,

all transfers of property or obligations of Plaintiff to Rheingans-Yoo, Manifold and FTX Philanthropy, Inc., prior to commencement of the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases" and each a "Chapter 11 Case"), by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors" and each a "Debtor").

2.       Pursuant to Section 502(d) and/or 510 of the Bankruptcy Code, Plaintiff also seeks to disallow, or alternatively to equitably subordinate, any and all claims filed by Rheingans-Yoo for the benefit of Manifold in these Chapter 11 Cases unless and until Manifold has relinquished to Plaintiff all property that Manifold received in transfers, or the value thereof, determined by the United States Bankruptcy Court for the District of Delaware (the "Court") to be avoidable and recoverable under the Bankruptcy Code and Title 6 of the Delaware Code.

3.       On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  On October 8, 2024, the Court entered an order confirming the *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404] (the "Plan"), which became effective on January 3, 2025 [D.I. 29127] (the "Plan Effective Date"). Upon the Plan Effective Date, all assets of the Debtors, including all claims and causes of action, were transferred to and vested in the FTX Recovery Trust.  Accordingly, Plaintiff has the authority to file this First Amended Complaint to commence, and thereafter to prosecute, this adversary proceeding.

4.       Plaintiff has determined, based on its analysis and investigation to date, that the following transfers to FTX Philanthropy, Inc., and Manifold are avoidable and/or recoverable under the Bankruptcy Code and Title 6 of the Delaware Code:

| Date[s] | Amount of Transfer | Transferor | Transferee |
|---|---|---|---|
| March 18, 2022 | $250,000.00 | Alameda Research Ventures LLC | Manifold Markets |
| April 11, 2022 | $750,000.00 | Alameda Research Ventures LLC | Manifold Markets |
| July 24, 2022 | $8,999,995.86 | West Realm Shires Services Inc. | FTX Philanthropy, Inc. |
| August 8, 2022 | $500,000.00 | FTX Philanthropy, Inc. | Manifold Markets |
| October 26, 2022 | $8,000.00 | FTX Philanthropy, Inc. | Manifold Markets |

5.      During the course of this adversary proceeding, Plaintiff may learn (through formal discovery or otherwise) of additional transfers made to or obligations incurred by the Defendants that are avoidable under the Bankruptcy Code.  Plaintiff intends to avoid and recover all such transfers made, or obligations incurred, to or for the benefit of the Defendants or any other transferee and accordingly reserve the right to amend this First Amended Complaint.  In particular, and without intending to create any limitation, Plaintiff reserves the right to amend this First Amended Complaint to include:  (i) further information regarding relevant transfers or obligations; (ii) information regarding additional transfers made or obligations incurred; (iii) additional plaintiffs; (iv) modifications of and/or revisions to each Defendant's name; (v) additional defendants; and (vi) additional causes of action that may become known at any time during this adversary proceeding, through formal discovery or otherwise.

## THE PARTIES

6.      Plaintiff FTX Recovery Trust is a Delaware statutory trust created and implemented pursuant to the Plan, and the sole owner by assignment of all rights and assets of the Debtors under the Plan as confirmed by the Court.

7.     Defendant Manifold Markets is a Delaware corporation with a principal office in San Francisco, California.  Manifold Markets operates a "social prediction market" that allows users to use "play-money"—called "mana"—to bet on the outcome of future events.[1]

8.     Defendant Manifold for Charity, d/b/a Manifund, was originally registered as a non-profit corporation in Texas in August 2022.  That registration lapsed in January 2024.  As of October 30, 2024, Manifold for Charity is a California non-profit public benefit corporation. Manifold for Charity is the "charitable arm" and "501(c)(3) subsidiary" of Manifold Markets.[2] Donors contribute money to Manifold for Charity, which then allocates money to individuals who recommend that grants be made to certain charities, projects or other individuals.  *Id.*  Manifold for Charity screens and approves grants, and the grant recipient then withdraws the funding, minus a five-percent fee, from their Manifold for Charity account.  *Id.*  Manifold for Charity previously allowed users of Manifold Markets to convert mana to make real-money charitable donations.[3]

9.     Defendant Ross Rheingans-Yoo is a self-proclaimed Effective Altruist.  In early 2022, Bankman-Fried hired Rheingans-Yoo to work on his purported philanthropic initiatives, first at FTX Philanthropy (as defined below), and later at Latona Biosciences Group ("Latona"). Rheingans-Yoo served as the Executive Director of Latona, which was a "project" of FTX

---

[1]   *See* MANIFOLD MARKETS, *About* (last visited July 23, 2025), https://manifold.markets/about; MANIFOLD MARKETS, *FAQ*, https://docs.manifold.markets/faq (last visited July 23, 2025); *See* MANIFOLD MARKETS, *Ways to give* (last visited July 23, 2025), https://manifold.markets/about/donate.

[2]   Austin Chen, *Announcing Manifund Regrants*, LESSWRONG (Jul. 5, 2023), https://www.lesswrong.com/posts/uq4BABSNyH6E8aArA/announcing-manifund-regrants.

[3]   *See id.*; MANIFOLD MARKETS, *When the Current $500 Grant for Manifold for Charity Runs Out, Will the Charity Program Continue (with 100 mana = $1)*, https://manifold.markets/jack/when-the-current-500k-grant-for-man (last visited July 14, 2025); MANIFOLD MARKETS, *Manifold Charitable Donation Program* (archived May 17, 2023), https://web.archive.org/web/20230517112108/https://help.manifold.markets/manifold-charitable-donation-program.

Philanthropy.  Upon information and belief, Rheingans-Yoo is a board member of Manifold for Charity.

10.     Defendant FTX Philanthropy, Inc. is a non-profit, non-stock corporation incorporated in Delaware on February 1, 2022 under the name FTX Foundation, Inc.  On July 1, 2022, FTX Foundation, Inc. filed with the Secretary of State of the State of Delaware a Restated Certificate of Incorporation changing its name to FTX Philanthropy, Inc.  For purposes of this First Amended Complaint, Plaintiff refers to FTX Philanthropy, Inc. and FTX Foundation, Inc. collectively as "FTX Philanthropy."  At all relevant times, FTX Philanthropy's sole member was Bankman-Fried, and its directors and officers included Bankman-Fried, Nishad Singh, Gary Wang, Caroline Ellison, and Nicholas Beckstead.

## OTHER RELEVANT PERSONS AND ENTITIES

11.     Bankman-Fried is one of the founders of the FTX Group.[4]  He co-founded Alameda Research LLC in 2017 and served as its Chief Executive Officer through late 2021.  During 2019, he founded FTX Trading Ltd. ("FTX"), which operated an international cryptocurrency exchange FTX.com.  In 2020, Bankman-Fried established a separate group of operating entities, including West Realm Shires, Inc. and West Realm Shires Services, Inc., that operated a digital asset exchange for U.S. persons, FTX US.  At all relevant times, Bankman-Fried was the ultimate majority owner, and effectively controlled the operations, of the Debtors, including Alameda and FTX.  On November 2, 2023, following a jury trial, Bankman-Fried was convicted of wire fraud, conspiracy to commit wire fraud, conspiracy to commit commodities fraud, conspiracy to commit securities fraud, and conspiracy to commit money laundering.  Jury Verdict, *United States* v.

---

[4]     The term "FTX Group" means, collectively, the Debtors and all affiliates of the Debtors that have not filed voluntary Chapter 11 petitions in the United States under the Bankruptcy Code.

*Bankman-Fried*, No. 22-cr-00673 (S.D.N.Y. Nov. 2, 2023).  He is currently serving his 25-year prison sentence.

12.     Nishad Singh was FTX's former Director of Engineering.  On February 28, 2023, Singh pleaded guilty to wire fraud, conspiracy to commit wire fraud, conspiracy to commit commodities fraud, conspiracy to commit securities fraud, conspiracy to commit money laundering, and conspiracy to make unlawful political contributions and defraud the Federal Election Commission.  Min. Entry, *United States* v. *Singh*, No. 22-cr-00673 (S.D.N.Y. Feb. 28, 2023).  On October 30, 2024, he was sentenced to time served.  Min. Entry, *United States* v. *Singh*, No. 22-cr-00673 (S.D.N.Y. Oct. 30, 2024).  Upon information and belief, on or around May 13, 2025, Singh began working as an engineer for Manifold for Charity.

13.     Zixiao "Gary" Wang was a co-founder of FTX and its former Chief Technology Officer and held ownership stakes in various FTX Group companies.  On December 19, 2022, Wang pleaded guilty to wire fraud, conspiracy to commit wire fraud, conspiracy to commit commodities fraud, and conspiracy to commit securities fraud.  Min. Entry, *United States* v. *Wang*, No. 22-cr-00673 (S.D.N.Y. Dec. 19, 2022).

14.     Caroline Ellison was the co-CEO of Alameda Research LLC from August 2021 until September 2022, when she was named the sole CEO and director.  On December 19, 2022, Ellison pleaded guilty to wire fraud, conspiracy to commit wire fraud, conspiracy to commit commodities fraud, conspiracy to commit securities fraud, and conspiracy to commit money laundering.  Min. Entry, *United States* v. *Ellison*, No. 22-cr-00673 (S.D.N.Y. Dec. 19, 2022).  On September 24, 2024, she was sentenced to 24 months in prison.  Min. Entry, *United States* v. *Ellison*, No. 22-cr-00673 (S.D.N.Y. Sept. 24, 2024).

15.     Each of Bankman-Fried, Singh, Wang, and Ellison was an "FTX Insider" and are together the "FTX Insiders."

16.     Latona is a Bahamian non-profit entity "under the umbrella of the FTX Foundation 'brand.'"  [D.I. 29218 ¶ 37.]  Its initial directors included Rheingans-Yoo, Bankman-Fried, and Valdez Russell, a former FTX Digital Markets employee with limited involvement.  (*See id.* ¶ 35.) Rheingans-Yoo held himself out as the "Executive Director" of Latona, but, in that role, reported directly to Bankman-Fried.  (*Id.* ¶ 36.)  Latona made $68.3 million in investments, funded entirely by Alameda Research Ltd. (and together with its affiliates, "Alameda"), in lifesciences companies.

## JURISDICTION AND VENUE

17.     This is an adversary proceeding commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure because, at a minimum, it seeks, among other things, to recover money or property belonging to the Debtors' Chapter 11 estates.  Fed. R. Bankr. P. 7001(1).

18.     This adversary proceeding arises from and relates to the Chapter 11 Cases filed with this Court on the Petition Date.

19.     The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

20.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter final orders herein.

21.     Venue of this adversary proceeding in this District is proper pursuant to 28 U.S.C. § 1409, and is consistent with the interests of justice, judicial economy, and fairness.

22.     The statutory predicates for the relief requested herein are Sections 105(a), 502, 510, 544, 548, and 550 of the Bankruptcy Code and Sections 1304 and 1305 of Title 6 of the Delaware Code.

23.     Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiff consents to the entry of final orders and judgments by the Court on these claims to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## FACTUAL ALLEGATIONS

### I.      The FTX Insiders' Fraudulent Scheme

24.     Prior to the Petition Date, the FTX Group operated cryptocurrency exchanges and trading businesses.  As explained in the First Day Declarations (defined below), the FTX Group faced a severe liquidity crisis that necessitated the filing of these Chapter 11 Cases on an emergency basis on November 11 and 14, 2022.  Additional factual background relating to the FTX Group's businesses and the commencement of these Chapter 11 Cases is set forth in the *Declaration of John J. Ray III in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 24], the *Declaration of Edgar W. Mosley II in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 57], the *Supplemental Declaration of John J. Ray III in Support of First Day Pleadings* [D.I. 92], and the *Supplemental Declaration of Edgar W. Mosley II in Support of First Day Pleadings* [D.I. 93] (collectively, the "First Day Declarations"); the *First Interim Report of John J. Ray III to the Independent Directors on Control Failures at the FTX Exchanges* [D.I. 1242-1]; and the *Second Interim Report of John J. Ray III to the Independent Directors: The Commingling and Misuse of Customer Deposits at FTX.com* [D.I. 1704-1] (the "Second John Ray Report").

25.     The FTX Insiders, among others, took advantage of the FTX Group's lack of controls and recordkeeping to perpetrate a massive fraud—lavishly spending the FTX Group's

assets on, among other things, private homes and jets, political and "charitable" contributions, and various investments.

26.    All of the FTX Insiders, except for Bankman-Fried, have pleaded guilty to crimes perpetrated through the very practices that facilitated the transactions described herein.   On December 19, 2022, Wang and Ellison pleaded guilty to multiple felonies, including wire fraud, conspiracy to commit wire fraud, conspiracy to commit commodities fraud, conspiracy to commit securities fraud, and conspiracy to commit money laundering.  *See* Min. Entries, *United States* v. *Bankman-Fried*, No. 22-cr-00673 (S.D.N.Y. Dec. 19, 2022).  On September 24, 2024, Ellison was sentenced to two years in prison.  Min. Entry, *United States* v. *Ellison*, No. 22-cr-00673 (S.D.N.Y. Sept. 24, 2024).  Singh pleaded guilty to the same felonies, and an additional charge of conspiracy to violate campaign finance laws, on February 28, 2023.  *See* Min. Entry, *United States* v. *Bankman Fried*, No. 22 cr-00673 (S.D.N.Y. Feb. 28, 2023).  On November 2, 2023 a jury found Bankman-Fried guilty of multiple felonies for defrauding customers, lenders, and investors, including conspiracies to commit wire fraud, wire fraud, conspiracy to commit commodities fraud, conspiracy to commit securities fraud, and conspiracy to commit money laundering.  Jury Verdict, *United States* v. *Bankman-Fried*, No. 22-cr-00673 (S.D.N.Y. Nov. 2, 2023).  On March 28, 2024, Bankman-Fried was sentenced to 25 years in prison.  Min Entry, *United States* v. *Bankman-Fried*, No. 22-cr-00673 (S.D.N.Y. Mar. 28, 2024).

27.    In connection with his plea, Wang admitted that in 2019 he made "certain changes to the [FTX.com] code" to give Alameda and its affiliates "special privileges on the FTX platform," including to allow Alameda unfettered use of assets on the FTX.com exchange, even while Alameda maintained negative balances in its own holdings of fiat (*i.e.*, government-issued) currencies and cryptocurrencies.  Plea Tr. 24:6-14, *United* States v. *Wang*, 22-cr-00673 (S.D.N.Y.

Dec. 19, 2022), ECF No. 21.  Using these "special privileges," the FTX Insiders frequently caused FTX Group entities to misappropriate funds from the FTX exchanges for their own benefit, including to make speculative investments for which they overpaid, and political and charitable donations.

28.    Before his conviction, Bankman-Fried repeatedly, and publicly, claimed that Alameda LLC operated as "a wholly separate entity" from FTX.com.  Annie Massa et al., *Sam Bankman-Fried and Alameda CEO Caroline Ellison Spoke About Red Flags 3 Months Before It Collapsed.  Here's What They Said—and How They Lied*, FORTUNE (Nov. 18, 2022), https://fortune.com/2022/11/18/sam-bankman-fried-alameda-ceo-caroline-ellison-spoke-red-flags-ftx-3-months-before-it-collapsed-what-said-how-lied/.  Ellison was quoted as saying that "[w]e keep [FTX and Alameda] quite separate in terms of day-to-day operations." *Id*.  In reality, Alameda LLC routinely looted "several billion dollars" from FTX.com using its "special privileges," thereby defrauding FTX.com's creditors.  Plea Tr. 28:23-29:1, *United States* v. *Singh*, 22-cr-00673 (S.D.N.Y. Feb. 28, 2023), ECF No. 102; Plea Tr. 24:6-14, *United States* v. *Wang*, 22-cr-00673 (S.D.N.Y. Dec. 19, 2022), ECF No. 21.

29.    The FTX Insiders were aware at all relevant times of the "special privileges on the FTX platform" and that Alameda LLC was "borrowing" (*i.e.*, looting) billions of dollars from FTX.com in order to, among other things, finance sham "loans" from Alameda to the FTX Insiders. Ellison admitted to being aware of this arrangement from 2019 through 2022, which she described as "permitt[ing] Alameda access to an unlimited line of credit without being required to post collateral, . . . pay interest . . . or being subject to margin calls or FTX.com's liquidation protocols." Plea Tr. 27:5-15, *United States* v. *Ellison*, 22-cr-00673 (S.D.N.Y. Dec. 19, 2022), ECF No. 19.

30.     Testimony from the FTX Insiders during Bankman-Fried's criminal trial further clarified the fraudulent relationship between Alameda and FTX, and the scheme pursuant to which the FTX Insiders misappropriated customer funds.  For example, Singh testified he and Wang implemented the "allow negative feature" which granted Alameda the ability to "go negative without any balance" such that Alameda was not "bounded by its collateral limit."   Trial Tr. 1362:25-1363:10, *United States* v. *Bankman-Fried*, 22-cr-00673 (S.D.N.Y. Oct. 16, 2023), ECF No. 366.   When Singh confronted Bankman-Fried about the growing hole caused by Alameda's exchange privileges, Bankman-Fried responded that the "main line plan remains, making FTX successful and growing it." *Id.* 1411:3-1412:10.  FTX.com's former General Counsel also testified that Bankman-Fried told Singh that the hole "is what it is and there is nothing we can do about it.  The only thing we can do is grow the company and fill the hole."  Trial Tr. 1964:12-1965:5, *United States* v. *Bankman-Fried*, 22-cr-00673 (S.D.N.Y. Oct. 19, 2023), ECF No. 372.

31.     Ellison testified that Bankman-Fried's strategy was for Alameda to borrow "as much money as [it] could get from whatever sources [it] could find at whatever terms [it] could get" and to "make a lot of investments, potentially in the billions of dollars of venture investments in . . . relatively early-stage companies."  Trial Tr. 693:4-17, *United States* v. *Bankman-Fried*, 22-cr-00673 (S.D.N.Y. Oct. 10, 2023), ECF No. 358.   Ellison also explained that she "learned that FTX had loaned money that it had raised from investors totaling $1.6 billion to Alameda," which "had been concealed from FTX's auditors."  Trial Tr. 937:10-14, *United States* v. *Bankman-Fried*, 22-cr-00673 (S.D.N.Y. Oct. 11, 2023), ECF No. 360.   Ellison testified that when an Alameda lender called an open term loan, Bankman-Fried directed her to "prepare [ ] alternative ways of presenting the information" and "come up with ways to conceal things in [their] balance sheet that [they] both thought looked bad."  *Id.* 786:13-22.  When third party lenders sought repayment of

open term loans, Alameda would repay them—often using commingled and misappropriated funds obtained through its "unlimited line of credit"—so as to continue to project a façade of financial strength and solvency and prevent lenders from taking legal action that might cause the fraud to come to light.

32.     In the days leading up to the Petition Date, Ellison messaged Bankman-Fried that she "had an increasing dread of this day that was weighing on [her] for a long time, and now that it's actually happening it just feels great to get it over with[,] one way or another." *See* Superseding Indictment ¶ 53, *United States* v. *Bankman-Fried*, 22-cr-00673 (S.D.N.Y. Mar. 28, 2023), ECF No. 115.

33.     As described below, the FTX Insiders used these Alameda funds and privileges to, among other things, fund venture investments and donations—including transfers to Manifold Markets and Manifold for Charity.

## II.     Bankman-Fried Establishes FTX Philanthropy to Further His Fraudulent Scheme

34.     Prior to the Petition Date, FTX Philanthropy was an integrated part of the FTX Group and was funded by Alameda and other Debtor entities in the FTX Group. *See* Second John Ray Report at 25-26.   When Bankman-Fried set up FTX Philanthropy in February 2021, he announced that the FTX Group would contribute at least "1% of FTX's revenue from fees" to FTX Philanthropy. *See id.* at 25 n.22.   But Philanthropy's funds were largely sourced from FTX Group bank accounts that contained commingled customer deposits. *See id.* at 25-26.   In May 2022, FTX Philanthropy opened a Wise bank account, which was funded with FTX Group deposits.   Among other transfers, on July 24, 2022, FTX Philanthropy's Wise account received a transfer of $8,999,995.86 from West Realm Shires Services, Inc. (the "WRSS Transfer").

35.     FTX Philanthropy claimed on its website that it "works to save lives, prevent suffering and build a flourishing future."   In reality, very few of FTX Philanthropy's donations

directly benefitted the needy.  Its largest donations went to associates of Bankman-Fried and others in the Effective Altruism movement.  FTX Philanthropy's donations were intentionally designed to burnish Bankman-Fried's public image as a do-gooder even as he orchestrated one of the largest fraudulent schemes in U.S. history.  FTX Philanthropy ceased operations when the FTX Group collapsed in November 2022.

36.    The donations to Effective Altruist and other charities were part of an integrated plan by the FTX Insiders to siphon money from FTX Group creditors and enhance their own personal and professional reputations at creditors' expense.  Bankman-Fried was aware at all relevant times of Alameda's special privileges that Wang had implemented, and he was also aware that Alameda was borrowing billions of dollars from FTX.com in order to, *inter alia*, finance "loans" from Alameda to Bankman-Fried himself, or to make putative "donations" to causes favored by him—including to entities he controlled or to individuals with whom he was connected.  As Bankman-Fried testified at his criminal trial, he believed that such donations "could have . . . positive public relations value."  Trial Tr. 2642:21-2643:4, *United States* v. *Bankman-Fried*, No. 22-cr-00673 (S.D.N.Y. Oct. 30, 2023), ECF No. 378.  Bankman-Fried further testified that the source of his personal donations was loans from Alameda.  Trial Tr. 2422:7-9, 2423:7-12, *United States* v. *Bankman-Fried*, No. 22-cr-00673 (S.D.N.Y. Oct. 27, 2023), ECF No. 376.  As described in the Second John Ray Report, these "loans" were loans in name only, and the Trust has identified no evidence that any interest was ever paid on the supposed "loans," or that there was ever an intent to repay.  *See* Second John Ray Report at 25.

## III.    Alameda Research Ventures Makes an Initial Investment in Manifold Markets

37.    Defendant Manifold Markets was founded in 2021 and incorporated on February 25, 2022 as a Delaware corporation.  Defendant Manifold Markets holds itself out as "the world's largest social prediction market" that allows users to use "play money" to bet on "any

question [they] care about," creating "real-time odds on politics, tech, sports, and more."

Defendant Manifold Markets' stated mission is to (i) "[p]rovide the most accurate, real-time

predictions on any event[;]" (ii) "[c]ombat misleading news by incentivising traders to be fast

and correct[;]" and (iii) "[h]elp people make more informed decisions by improving their model

of the future."  Essentially, Defendant Manifold Markets "is a social prediction game" allowing

"[n]ew users [to] instantly sign in with existing Google or Apple accounts and start predicting for

free in less than a minute."[5]

38.    In March 2022, FTX Philanthropy approved a request by an FTX Philanthropy

"regrantor"[6] to transfer $1,000,000 to Manifold Markets, pursuant to Simple Agreements for

Future Equity ("SAFEs").  Because FTX Philanthropy had not yet incorporated as an entity, FTX

Group personnel determined that an Alameda affiliate—Alameda Research Ventures LLC—

would be the counterparty to the SAFEs.  On March 20, 2022, Bankman-Fried executed a SAFE

for a $250,000 investment by Alameda Research Ventures LLC in Manifold Markets at a valuation

of $10,000,000.  On March 30, 2022, Alameda Research Ventures LLC wired Manifold Markets

$250,000 from its Signature Bank account (the "First SAFE Transfer").  On April 2, 2022,

Bankman-Fried executed a SAFE for a $750,000 investment by Alameda Research Ventures LLC

in Manifold Markets at a purported $15,000,000 valuation.  On April 11, 2022, Alameda Research

Ventures LLC wired Manifold Markets $750,000 from its Signature Bank account (the "Second

SAFE Transfer" and together with the First SAFE Transfer, the "SAFE Transfers").

---

[5]    MANIFOLD MARKETS, *About* (last visited July 14, 2025), https://manifold.markets/about.

[6]    FTX Philanthropy's "regranting program" offered "discretionary budgets to independent part-time
grantmakers" to fund "grants and investments to ambitious projects in order to improve humanity's long-term
prospects."  Leopold Aschenbrenner & Nicholas Beckstead, *The Future Fund's Regranting Program*,
EFFECTIVE ALTRUISM FORUM (Feb. 28, 2022).

IV.    **FTX Philanthropy Makes a $500,000 "Donation" to Manifold Markets to Establish Manifold for Charity**

39.    On March 21, 2022, Defendant Manifold Markets applied for further funding from FTX Philanthropy to create its new "charitable arm," Defendant Manifold for Charity.  According to its funding application, Manifold Markets planned to use the funding to create a matching pool for donations made by Manifold Markets users to allow Manifold for Charity to function as a "charity prediction market"—users would "place bets" on the outcome of their predictions "using real money, but are required to donate all proceeds to charity."[7]  After, being informed that FTX Philanthropy would grant its application, Austin Chen, the co-founder of Manifold Markets, stated that Manifold Markets would incorporate a "subsidiary" as a 501(c)(3) charity, but that the transfer could be made to Manifold Markets as the "official grantee."

40.    On or about August 8, 2022, FTX Philanthropy transferred $500,000 to Defendant Manifold Markets from its Wise bank account (the "Manifold Transfer").  Upon information and belief, Manifold Markets used the $500,000 Manifold Transfer to establish Manifold for Charity, which on August 9, 2022, filed its Certificate of Formation in Texas and its application for 501(c)(3) status.  According to Manifold for Charity's 2022 Form 990 tax return, its 2022 revenues consisted solely of $500,000.

41.    On or about October 26, 2022, FTX Philanthropy transferred an additional $8,000.00 to Defendant Manifold Markets (the "October 26 Transfer" and together with the WRSS Transfer, SAFE Transfers, and the Manifold Transfer, the "Transfers"). Upon review of Plaintiffs' books and records, the October 26 Transfer was for prize payouts for a forecasting tournament.

---

[7]    *See Predicting for Good:  Charity Prediction Markets*, MANIFOLD MARKETS (Mar. 22, 2022), https://news.manifold.markets/p/predicting-for-good-charity-prediction.

42.    Manifold Markets and Manifold for Charity are closely intertwined and, upon information and belief, operate as alter egos.  Upon information and belief, Manifold for Charity— the "charitable arm" and "501(c)(3) subsidiary" of Manifold Markets—fails to observe even minimal corporate formalities or maintain proper corporate records.  According to Manifold for Charity's 2022 and 2023 Form 990 tax returns, the co-founder of Manifold Markets, Austin Chen, is also the CEO of Manifold for Charity.  Manifold Markets also hosts Manifold for Charity's publicly available documents on its website, and both entities jointly host an annual conference at the former Rose Garden Inn in Berkeley, California.[8]  Publicly available "minutes" from Manifold for Charity meetings show that employees of Manifold for Charity, including CEO Austin Chen, do not know the corporate or registration status of Manifold for Charity.  In one meeting, attended by Chen, the "minutes" reflect that an employee asked:  "I saw that Manifold for Charity was 'Involuntarily Dissolved' by the Texas government (presumably because it failed to make required filings?) - is that intentional?"  Chen replied, "[a] ??? Not really sure what's up here but kinda funny . . . worst case think we might have to re-register the 'corporation.'"[9]  In response to an inquiry about where Manifold for Charity was incorporated on its publicly available website, Chen replied:  "unclear.  Probably Texas?"[10]  The page further states that an employee "asked about moving us [] from Texas to CA in March; unsure if we actually did this," and "[a]pparently, our Texas entity was involuntarily terminated on 23 Jan 2024?"  Manifold for Charity subsequently registered as a California non-profit on October 30, 2024.

---

[8]    MANIFEST 2025, https://manifest.is/ (last visited July 23, 2025).

[9]    MANIFOLD MARKETS, *Standup*, NOTION (April 9, 2024), https://manifoldmarkets.notion.site/Standup-366339b13c184339b05f009033518c89.

[10]    *Manifold for Charity Inc. Legal Docs.*, NOTION, https://manifoldmarkets.notion.site/Manifold-for-Charity-Inc-Legal-Docs-951f19f484bc47b2881e2c4f4cce7557 (last visited July 23, 2025).

43.     Notwithstanding the initial seed money received from the FTX Group, Manifold for Charity appears to be insolvent and/or undercapitalized.  According to publicly available "minutes" from Manifold for Charity's Board of Directors Q3 2024 Meeting, Manifold for Charity was "[t]echnically underwater, after pending Manifold for Charity donations," indicating that Manifold for Charity has insufficient funds for its daily operations.[11]  Despite its financial instability, the board meeting "minutes" stated that the "main ongoing cost is salary (Rachel [Weinberg] draws $140k/y or ~$12k/mo)," who, upon information and belief, is Chen's wife.

**V.     Rheingans-Yoo Designates Manifold for Charity as the Beneficiary of a Claim in These Chapter 11 Cases**

44.     Rheingans-Yoo—a self-proclaimed Effective Altruist—previously worked with Bankman-Fried at Jane Street Capital and they later became close friends and roommates in Hong Kong.  In early 2022, Rheingans-Yoo moved into Bankman-Fried's $30 million penthouse in the Bahamas to begin working on Bankman-Fried's purported philanthropic initiatives—first, at FTX Philanthropy, and later, at Latona.  As described in further detail in the complaint in the case captioned *Alameda Research Ltd. and FTX Trading Ltd.* v. *Platform Life Sciences, Inc. et al.*, Adv. Pro. No. 23-50444 (the "Latona Adversary Proceeding"), Latona was a sham Bahamian non-profit entity that Bankman-Fried and Rheingans-Yoo directed that made investments, funded entirely by Alameda, in lifesciences companies that Bankman-Fried and Rheingans-Yoo "prefer[red] not [] be disclosed on Bahamian entity [Alameda's] balance sheet."

45.     Although Rheingans-Yoo worked for Latona ("an entity under the umbrella of the FTX Foundation 'brand'"), Rheingans-Yoo was nominally employed by Alameda Research (Bahamas) Ltd. as a Trader & Investment Associate, despite performing no actual work for that

---

[11]    MANIFOLD MARKETS, *Board of Directors Q3 2024*, NOTION (July 16, 2024) https://manifoldmarkets.notion.site/Board-of-Directors-Q3-2024-42dc4621d5d7459aa5324d373c8be4af.

entity. [D.I. 29218 ¶¶ 25, 36, 37, 44]. On or about September 1, 2022, Bankman-Fried created and shared a Google document with Rheingans-Yoo, wherein Bankman-Fried promised Rheingans-Yoo, on top of a personal cash bonus for his purported "work" for Alameda Research (Bahamas) Ltd., that Rheingans-Yoo could "get another $650k of directed grants to any EA [Effective Altruist]-driven cause if you want" (the "FDU Bonus"). [D.I. 29218 ¶¶ 38, 41 & Ex. K.] Rheingans-Yoo "did not inform anyone at the FTX Group prepetition that he had designated an EA-driven cause to receive the $650,000 directed grant." (*Id.* ¶ 48).

46.     On June 29, 2023, Rheingans-Yoo filed a non-customer claim numbered 5166, and a duplicative claim numbered 89710, against Alameda Research (Bahamas) Ltd., requesting payment of the FDU Bonus (the "FDU Claim"). The Trust objected to the FDU Claim, and following a hearing on the Trust's objection, on June 25, 2025, the Court allowed Rheingans-Yoo's FDU Claim. [D.I. 31312]. Rheingans-Yoo subsequently designated Manifold for Charity as the beneficiary of the $650,000 FDU Bonus (the "FDU Obligation").

47.     When he designated Manifold for Charity as the beneficiary of the $650,000 donation pursuant to the FDU Claim, neither Rheingans-Yoo nor his counsel disclosed that Rheingans-Yoo is a board member of Manifold for Charity[12] or other material connections between Manifold for Charity and key individuals connected to these Chapter 11 cases.

48.     Rheingans-Yoo's position as a director for Manifold for Charity empowers him to direct the FDU Bonus to line his own pockets at the expense of FTX creditors, perpetuating a key component of the FTX fraud in which FTX Insiders siphoned money from creditors to donate to "charities" in order to enhance their own personal reputations and line the pockets of their Effective

---

[12] *See* Ross Rheingans-Yoo, *Donations 2022-2024*, ICOSIAN REFLECTIONS (Dec. 14, 2024), https://blog.rossry.net/donations-2024/ ("*disclosure: I sit on Manifund's board of directors*" (emphasis in original).

Altruist acquaintances. Rheingans-Yoo is eligible, as a director, to be paid by Manifold for Charity. Rheingans-Yoo has also advocated creating a for-profit subsidiary of Manifold for Charity to make "venture investments into good EA bio things that are also companies" to "make[] $"; that is, Rheingans-Yoo, through designating Manifold for Charity as the beneficiary of the FDU Claim, proposes continuing the course of conduct that gave rise to the Latona Adversary Proceeding—using FTX Group assets to fund lifesciences investments.[13]

49.     Further revealing its extensive connections with the FTX Group Manifold for Charity has employed Singh—who, as Director of Engineering for FTX, furthered the FTX fraud—as an engineer since on or around May 13, 2025. Manifold for Charity also recently hosted its annual conference at the Rose Garden Inn, a hotel in Berkeley California that was purchased by the Center for Applied Rationality using $4.9 million that was transferred to it from the FTX Group. *FTX Recovery Trust* v. *Center for Applied Rationality, et al.*, Adv. Pro. No. 24-ap-50066. And Manifold for Charity recently consulted with Gabe Bankman-Fried—Bankman-Fried's brother—regarding political spending, and considered adding him to its board of directors.

## VI.    The Transfers and the FDU Obligation Involved Multiple Badges of Fraud Evincing Actual Intent to Hinder, Delay, or Defraud Creditors

50.     As set forth above, multiple badges of fraud recognized by bankruptcy law and Del. Code Ann. tit. 6, § 1304(b) permeate the Transfers and the FDU Obligation, including that:

i.      Numerous material facts relating to the Transfers and the FDU Obligation were concealed, including the source of the assets ultimately transferred to FTX Philanthropy and Manifold, the purpose of the Transfers or the FDU Obligation, and the fraudulent scheme pursuant to which the Transfers were made or the FDU Obligation incurred;

ii.     Bankman-Fried and FTX Insiders removed or concealed the Debtors' assets;

---

[13]    MANIFOLD MARKETS, *Board of Directors Q3 2024*, NOTION (July 16, 2024) https://manifoldmarkets.notion.site/Board-of-Directors-Q3-2024-42dc4621d5d7459aa5324d373c8be4af.

iii.    The value of the consideration received by the Debtors was not reasonably equivalent to the value of the assets transferred or the amount of the obligations incurred;

iv.    The Debtors were insolvent when, or became insolvent shortly after, the Transfers were made or the FDU Obligation incurred; and

v.    The Transfers occurred or the FDU Obligation was incurred shortly before or shortly after the Debtors incurred substantial debts.

## CAUSES OF ACTION

### COUNT ONE
### FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)(1)(A)
### (AGAINST ALL DEFENDANTS)

51.    Plaintiff repeats and realleges the allegations in 1 through 50 as if fully set forth here.

52.    Debtors West Realm Shires Services, Inc. and Alameda Research Ventures LLC made the Transfers set forth above, and the FDU Obligation was incurred by Debtor Alameda Research (Bahamas) Ltd.

53.    Each of the Transfers was a transfer of property of Plaintiff.

54.    Each of the Transfers and the FDU Obligation was made with the intent to hinder, delay, or defraud present or future creditors.

55.    Accordingly, each of the Transfers and the FDU Obligation should be avoided as fraudulent pursuant to Section 548(a)(1)(A) of the Bankruptcy Code, and Plaintiff may recover from the respective Defendants the full amount of the Transfers, plus interest from the relevant dates, and costs and fees to the extent available, for the benefit of the Debtors' bankruptcy estates.

56.    As Manifold Markets' alter ego, Manifold for Charity is liable for the recovery sought by Plaintiff.

## COUNT TWO
## FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)(1)(B)
### (AGAINST ALL DEFENDANTS)

57.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 50 as if fully set forth here.

58.     Debtors West Realm Shires Services, Inc. and Alameda Research Ventures LLC made the Transfers set forth above, and the FDU Obligation was incurred by Debtor Alameda Research (Bahamas) Ltd.

59.     Each of the Transfers was a transfer of property of Plaintiff.

60.     Plaintiff did not receive reasonably equivalent value in exchange for any of the Transfers or the FDU Obligation.

61.     Each of the respective Debtors:  (1) was insolvent on the date that each of the Transfers were made or the FDU Obligation incurred; (2) became insolvent as a result of the Transfers or the FDU Obligation; (3) engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to the business or transaction; or (4) intended to incur, or believed that they would incur, or reasonably should have believed that it would incur debts that would be beyond the Debtors' ability to repay as such debts became due.

62.     Accordingly, each of the Transfers and the FDU Obligation should be avoided as fraudulent pursuant to Section 548(a)(1)(B) of the Bankruptcy Code, and Plaintiff may recover from the respective Defendants the full amount of the Transfers, plus interest from the relevant dates, and costs and fees to the extent available, for the benefit of the Debtors' bankruptcy estates.

63.     As Manifold Markets' alter ego, Manifold for Charity is liable for the recovery sought by Plaintiff.

## COUNT THREE
## FRAUDULENT TRANSFERS PURSUANT TO
## DEL. CODE ANN. TIT. 6, § 1304(a)(1) AND 11 U.S.C. § 544(b)
## (AGAINST ALL DEFENDANTS)

64.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 50 as if fully set forth here.

65.    Section 544(b) of the Bankruptcy Code authorizes Plaintiff to avoid any transfer of an interest in its property or any obligation incurred by it that is voidable under applicable law by a creditor holding an allowable unsecured claim.  Accordingly, fraudulent transfers and obligations are avoidable pursuant to Bankruptcy Code Section 544(b) and other applicable law, including the Delaware Uniform Fraudulent Transfer Act, Del. Code Ann. tit. 6, § 1301, *et seq*.

66.    Debtors West Realm Shires Services, Inc. and Alameda Research Ventures LLC made the Transfers set forth above, and the FDU Obligation was incurred by Debtor Alameda Research (Bahamas) Ltd.

67.    Each of the Transfers was a transfer of property of Plaintiff.

68.    Each of the Transfers and the FDU Obligation was made with the intent to hinder, delay, or defraud Plaintiff's present or future creditors, including creditors who hold allowable unsecured claims.

69.    Accordingly, each of the Transfers and the FDU Obligation should be avoided as fraudulent pursuant to Del. Code Ann. tit. 6, § 1304(a)(1) and 11 U.S.C. § 544(b), and Plaintiff may recover from the respective Defendants the full amount of the Transfers, plus interest from the relevant dates, and costs and fees to the extent available, for the benefit of the Debtors' bankruptcy estates.

70.    As Manifold Markets' alter ego, Manifold for Charity is liable for the recovery sought by Plaintiff.

## COUNT FOUR
## FRAUDULENT TRANSFERS PURSUANT TO
## DEL. CODE ANN. TIT. 6, §§ 1304(a)(2) AND 1305 AND 11 U.S.C. § 544(b)
## (AGAINST ALL DEFENDANTS)

71.　　Plaintiff repeats and realleges the allegations in paragraphs 1 through 50 as if fully set forth here.

72.　　Section 544(b) of the Bankruptcy Code authorizes Plaintiff to avoid any transfer of an interest in its property or any obligation incurred by it that is voidable under applicable law by a creditor holding an allowable unsecured claim.  Accordingly, fraudulent transfers and obligations are avoidable pursuant to Bankruptcy Code Section 544(b) and other applicable law, including the Delaware Uniform Fraudulent Transfer Act, Del. Code Ann. tit. 6, § 1301, *et seq*.

73.　　Debtors West Realm Shires Services, Inc. and Alameda Research Ventures LLC made the Transfers set forth above, and the FDU Obligation was incurred by Debtor Alameda Research (Bahamas) Ltd.

74.　　Each of the Transfers was a transfer of property of Plaintiff.

75.　　Plaintiff did not receive reasonably equivalent value in exchange for any of these Transfers or the FDU Obligation.

76.　　Each of the respective Debtors:  (1) was insolvent on the date that each of the Transfers were made or the FDU Obligation incurred; (2) became insolvent as a result of the Transfers or the FDU Obligation; (3) engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to the business or transaction; or (4) intended to incur, believed that it would incur, or reasonably should have believed that it would incur debts that would be beyond the Debtors' ability to repay as such debts became due.

77.    Each of the Transfers and the FDU Obligation is avoidable by creditors who hold allowable unsecured claims, including creditors who were creditors before the Transfers.

78.    Accordingly, each of these Transfers and the FDU Obligation should be avoided as fraudulent pursuant to Del. Code Ann. tit. 6, §§ 1304(a)(2) and 1305, and 11 U.S.C. § 544(b), and Plaintiff may recover from the respective Defendants the full amount of the Transfers, plus interest from the relevant dates, and costs and fees to the extent available, for the benefit of the Debtors' bankruptcy estates.

79.    As Manifold Markets' alter ego, Manifold for Charity is liable for the recovery sought by Plaintiff.

### COUNT FIVE
### PROPERTY RECOVERY PURSUANT TO 11 U.S.C. § 550(a)
### (AGAINST ALL DEFENDANTS)

80.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 50 as if fully set forth here.

81.    As alleged above, Plaintiff is entitled to avoid each of the Transfers to the Defendant addressed herein under Sections 544 and 548 of the Bankruptcy Code.

82.    Because each of Defendants FTX Philanthropy, Inc., Manifold Markets, Inc., Manifold for Charity, Inc., and Ross Rheingans-Yoo is the initial transferee, the immediate or mediate transferee, or the entity for whose benefit the Transfer was made or the FDU Obligation was incurred, Plaintiff may recover from the Defendants the full value of the Transfer pursuant to 11 U.S.C. § 550(a), plus interest from the Transfer dates, and costs and fees to the extent available, for the benefit of the Debtors' bankruptcy estates.

## COUNT SIX
## DISALLOWANCE OF CLAIM PURSUANT TO 11 U.S.C. § 502(d)
### (AGAINST RHEINGANS-YOO and MANIFOLD FOR CHARITY)

83.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 50 as if fully set forth here.

84.     Rheingans-Yoo has designated Manifold for Charity as the beneficiary of the FDU Claim.

85.     As alleged above, Manifold Markets and Manifold for Charity are one integrated enterprise that are transferees of Transfers avoidable under either Sections 544 or 548 of the Bankruptcy Code, and entities from which property is recoverable under Section 550 of the Bankruptcy Code.  As described above, Manifold Markets and Manifold for Charity operated in concert as part of an integrated fraudulent scheme.  The nominal separateness of the entities was intentionally designed to obscure the reality that each formed part of a conspiracy whereby Debtor assets were misappropriated.  The commonality between Manifold Markets and Manifold for Charity, resulted in those entities operating as alter egos for the benefit of the fraudulent scheme.

86.     By reason of the foregoing facts and pursuant to Section 502(d) of the Bankruptcy Code, the FDU Claim, which designates Manifold for Charity as the beneficiary, and any other claims by Defendants that have been or will in the future be asserted in these Chapter 11 Cases should be disallowed unless and until they have relinquished to Plaintiff the property transferred, or have paid Plaintiff the value of such transferred property, for which and to the extent that the Court has determined they are liable pursuant to 11 U.S.C. § 550.

## COUNT SEVEN
## EQUITABLE SUBORDINATION PURSUANT TO 11 U.S.C. § 510(c)
### (AGAINST RHEINGANS-YOO and MANIFOLD FOR CHARITY)

87.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 50 as if fully set forth here.

88.     By reason of the foregoing facts and pursuant to Section 510(c) of the Bankruptcy Code, the claims of Defendants in the Chapter 11 Cases should be equitably subordinated to the claims of innocent creditors who had no part in the illegal and fraudulent misappropriation of customer funds.

89.     Equitable subordination as requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

**COUNT EIGHT**
**UNJUST ENRICHMENT**
**(AGAINST DEFENDANT MANIFOLD MARKETS)**

90.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 50 as if fully set forth here.

91.     As a result of the Manifold Transfer and the October 26 Transfer, Manifold Markets was unjustly enriched by the receipt of the funds.

92.     Any and all benefits obtained by Manifold Markets as a consequence of the Manifold Transfer and the October 26 Transfer were funded by Plaintiff.  However, Plaintiff received no benefit in exchange for the Manifold Transfer and the October 26 Transfer.

93.     Plaintiff lacks an adequate remedy at law against Manifold Market's unjust enrichment at Plaintiff's expense.

94.     Plaintiff seeks to recover from Manifold Markets all payments received from Manifold Markets made using money from Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

95.     Enter an order that the Transfers and FDU Obligation addressed herein are avoidable fraudulent transfers or obligations under 11 U.S.C. §§ 544 and 548 and Del. Code Ann. tit. 6, §§ 1304 and 1305;

96.     Award Plaintiff under 11 U.S.C. § 550 no less than $1,508,000.00 (plus the value of any additional avoidable transfers that Plaintiff learn, through formal discovery or otherwise, were made to Defendants);

97.     Enter an order under 11 U.S.C. § 502(d) disallowing any and all claims filed or held by Defendants in the Chapter 11 Cases unless and until Defendants have turned over to Plaintiff the amount ordered as an award.

98.     Enter an order under 11 U.S.C. § 510(c)(1) subordinating any and all claims filed or held by Defendants in the Chapter 11 Cases to the claims of innocent creditors.

99.     Award Plaintiff its attorneys' fees, pre- and post-judgment interests, and costs of suit; and

100.    Award Plaintiff all other relief, at law or equity, to which it may be entitled.

Dated: July 23, 2025
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Richard S. Cobb (No. 3157)
Matthew B. McGuire (No. 4366)
Howard W. Robertson IV (No. 6903)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail:  landis@lrclaw.com
         cobb@lrclaw.com
         mcguire@lrclaw.com
         robertson@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Stephanie G. Wheeler (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
E-mail:  wheelers@sullcrom.com
         gluecksteinb@sullcrom.com

*Counsel for the FTX Recovery Trust*