**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING, LTD., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered) |
| FTX RECOVERY TRUST,<br><br>                    Plaintiff,<br><br>         - against –<br><br>MANIFOLD MARKETS, INC., MANIFOLD FOR CHARITY, INC., ROSS RHEINGANS-YOO, and FTX PHILANTHROPY, INC.,<br><br>                    Defendants. | Adv. Pro. No. 24-50214 (KBO) |

**OPENING BRIEF IN SUPPORT OF**
**ROSS RHEINGANS-YOO'S MOTION TO DISMISS**

Michael J. Joyce (No. 4563)
**JOYCE, LLC**
1225 King Street, Suite 800
Wilmington, DE 19801
(302) 388-1944
mjoyce@mjlawoffices.com

*Attorneys for Defendant*
*ROSS RHEINGANS-YOO*

Scott D. Simon (admitted *pro hac vice*)
**GOETZ PLATZER LLP**
One Penn Plaza, Suite 3100
New York, New York 10119
(212) 695-8100
ssimon@goetzplatzer.com

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES……………………………………….………………………ii

NATURE AND STATE OF PROCEEDINGS…………..…………………………….1

SUMMARY OF ARGUMENT…..………………………………………………………1

JURISDICTIONAL CONSENT…………………………………………………………7

PROCEDURAL HISTORY……………………………………………………..………7

FACTUAL BACKGROUND………………………………………………………….10

ARGUMENT…………………………………………………………………………12

      I.      Legal Standard…………………………………………………..12

      II.     The fraudulent transfer causes of action are not plausible………………15

      III.    The recovery causes of action are not plausible…………………………16

      IV.    The equitable subordination cause of action is not plausible....…………17

      V.     Leave to amend should be denied……………………..………………21

CONCLUSION…………………………………………………………………………23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................13, 14

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 555 (2007)………………………………………………..…………………………13

*Burden v. United States*,
  17 F.2d 115, 117 (3d Cir. 1990)………………………………….…………………………………17

*Burtch v. Milberg Factors, Inc.*,
  662 F.3d 212 (3d Cir. 2011) ......................................................................14

*Charys Liquidating Trust v. Hades Advisors, LLC*
  *(In re Charys Holding Co., Inc.)*, 443 B.R. 638 (Bankr. D. Del. Jan. 20, 2011) ......................22

*Citicorp Venture Cap., Ltd. v. Comm. of Creditors Holding Unsecured Claims*,
  323 F.3d 228 (3d Cir. 2003) ......................................................................17, 20

*Crystallex Int'l Corp. v Petroleos De Venezuela, S.A.*,
  879 F.3d 79 (3d Cir. 2018) ......................................................................13

*Davis v. Wells Fargo*,
  824 F.3d 333 (3d Cir. 2016) ......................................................................14

*Dole v. Arco Chem. Co.*,
  921 F.2d 484 (3d Cir. 1990) ......................................................................21

*Foman v. Davis*,
  371 U.S. 178 (1962) ......................................................................21

*F.T.C. v. Wyndham Worldwide Corp.*,
  799 F.3d 236, 242 (3d Cir. 2015………….……………………………………………………13

*Giuliano v. U.S. Nursing Corp.*
  (In re Lexington Healthcare Grp., Inc.), 339 B.R. 570 (Bankr. D. Del. 2006) .........................13

*Gray v. Manklow (In re Optical Techs., Inc.),*
  252 B.R. 531, 539 (M.D. Fla. 2000), aff'd, 246 F.3d 1332 (11th Cir. 2001)……………………19

*In re American Remanufacturers, Inc., Adversary No. 07–51750*
  (PJW), 2008 WL 2909871 at *3 (Bankr.D.Del. Jul. 25, 2008) ..................................................15

*In re APF Co.*,
   308 B.R. 183 (Bankr. D. Del. 2004) ......................................................................13

*In re Burlington Coat Factory Sec. Litig.*
114 F.3d 1410, 1434 (3d Cir. 1997) ........................................................................22

*In re Daily Bread Winddown, LLC,*
   Adv. No. 22-50334 (JTD) at *8 (Bankr.D.Del. Nov. 1, 2022)…………………………………17

*In re DHP Holdings II Corp.*,
   435 B.R. 264 (Bankr.D.Del. 2010) .......................................................................17

*In re FBI Wind Down, Inc.*,
   614 B.R. 460 (Bankr.D.Del. 2020) .......................................................................17

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371–06 (S.D.N.Y. 2001) .............................................................14

*In re M. Paolella & Sons, Inc.*,
   161 B.R. 107–19 (E.D. Pa. 1993) .........................................................................19

*In re Mid-Am. Waste Sys., Inc.*,
   284 B.R. 53 (Bankr. D. Del. 2002) .......................................................................17

*In re Winstar Communications, Inc.*,
   554 F.3d 382 (3d Cir. 2009) .................................................................................18

*In re Zohar III, Corp.*,
   639 B.R. 73 (Bankr.D.Del. 2022) ....................................................................18, 21

*Klauder v. Echo/Rt Holdings, LLC*
   (In re Raytrans Holding, Inc.), 573 B.R. 121 (Bankr. D. Del. 2017) ....................18

*Kost v. Kozakiewicz*,
   1 F.3d 176 (3d Cir. 1993) .....................................................................................14

*McTernan v. City of York, Penn.*,
   577 F.3d 521 (3d Cir. 2009) .................................................................................14

*Meeks v. Bank of Rison*
   (In re Armstrong), 231 B.R. 746 (Bankr. E.D. Ark. 1999) ...................................19

*Mervyn's LLC v. LubertAdler Group IV, LLC*
   (In re Mervyn's Holdings, LLC), 426 B.R. 488 (Bankr. D. Del. 2010) ..................13

*Miller v. Mott*,
   No. 23-50004, 2023 WL 6467368 at *6 (Bankr.D.Del. Oct. 4, 2023) ......................................15

*Off. Comm. of Unsecured Creditors of Radnor Holdings Corp. v. Tennenbaum Cap. Partners, LLC*
   (In re Radnor Holdings Corp.), 353 B.R. 820 (Bankr. D. Del. 2006) ......................................19

*Off. Comm. of Unsecured Creditors v. Credit Suisse First Bos.*
   (In re Exide Techs., Inc.), 299 B.R. 732 (Bankr. D. Del. 2003) ................................19

*Off. Unsecured Creditors' Comm. of Broadstripe, LLC v. Highland Capital Mgmt., L.P.*
   (In re Broadstripe, LLC), 444 B.R. 51 (Bankr. D. Del. 2010) ...................................18

*Phillips v. Cnty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) ......................................................12

*Santiago v. Warminster Twp.*,
   629 F.3d 121, 130 (3d Cir. 2010)……………………………………………..………..14

*Schmidt v. Skolas*,
   770 F.3d 241 (3d Cir. 2014) ......................................................14

*Stanziale v. Richards, Layton & Finger, P.A. (In re EP Liquidation, LLC)*,
   583 B.R. 304, 313 (Bankr. D. Del. Apr. 9, 2018)………………………...………………22

*Tanksley v. Daniels*,
   902 F.3d 165 (3d Cir. 2018) ......................................................14

*Trenwick Am. Litigation Trust v. Ernst & Young, L.L.P.*,
   906 A.2d 168 (Del. Ch. 2006) ...................................................22

*United States v. State St. Bank & Trust Co.*,
   520 B.R. 29 (Bankr.D.Del. 2014) .........................................19, 20

**Statutes**

11 U.S.C. § 101(31) (B)(iii) ......................................................18

11 U.S.C. § 105 .......................................................................23

11 U.S.C. § 502.....................................................................4, 15

11 U.S.C. § 510.......................................................................18

11 U.S.C. § 548.......................................................................15

11 U.S.C. § 550 ...........................................................................................................4, 15

28 U.S.C. § 157 ...................................................................................................................7

28 U.S.C. § 1334 .................................................................................................................7

28 U.S.C. § 1408 .................................................................................................................7

28 U.S.C. § 1409 .................................................................................................................7

28 U.S.C. § 1927 ...............................................................................................................23

**Other**

United States Constitution, Art. III .....................................................................................7

Fed. R. Civ. P. 8(a)(2) ......................................................................................................12

Fed. R. Civ. P. 12(b)(6) ....................................................................................................12

Fed. R. Civ. P. 15(a) .........................................................................................................21

Fed. R. Bankr.. P. 7008 .....................................................................................................12

Fed. R. Bankr.. P. 9011......................................................................................................23

Fed. R. Bankr.. P. 9013-1 ....................................................................................................7

## NATURE AND STATE OF PROCEEDINGS

Plaintiff FTX Recovery Trust ("Trust")[1] filed its First Amended Complaint [D.I. 38, "Amended Complaint"][2] on July 23, 2025 against several defendants, including Ross Rheingans-Yoo ("Ross"). This is Ross's responsive pleading. Ross seeks an order dismissing the Amended Complaint because the Trust cannot state a prepetition avoidance claim arising from Ross's postpetition selection of a beneficiary to receive his allowed FDU Claim.

## SUMMARY OF ARGUMENT

1.   The Amended Complaint does not state a cause of action against Ross. It alleges that Ross's post-petition, post-confirmation, post-allowed-claim conduct in 2025 – selecting Manifold for Charity to receive the FDU Claim – violates sections of the Bankruptcy Code and Delaware law that relate to *prepetition* conduct.

2.   On June 25, 2025, the Court ruled that Ross's FDU Claim was employment compensation: "I do believe that the claim was part of his bonus, as indicated by the subsequent memorandum of Mr. Bankman-Fried, outlining the terms of the discretionary bonus approved by the company." *See* June 25, 2025 hearing overruling the Trust's objection to Ross's FDU Claim ("Hearing Tr.").[3]

3.   The Trust had objected to Ross's FDU Claim on the grounds that he did not timely accept it and he lacked standing to assert it. See Debtors' Objection to Proof of Claim Filed by Ross Rheingans-Yoo [D.I. 3409, "Claim Objection"] at ¶¶ 28-29 (emphasis added):

> The Debtors have identified no evidence that Rheingans-Yoo ever directed a grant of $650,000 to any Effective Altruist cause prior to the Petition Date … Moreover,

---

[1] The FTX Recovery Trust (a/k/a the Consolidated Wind Down Trust) was established on January 3, 2025, the effective date of the Debtors' confirmed *Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and its Debtor Affiliates* [D.I. 26404-1].

[2] Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Amended Complaint.

[3] A certified copy of the Hearing Tr. is annexed to the accompanying Declaration of Ross Rheingans-Yoo ("Ross Decl.") as **Exhibit A**. See Hearing Tr. at 46:4-7.

> even if Rheingans-Yoo had timely directed a $650,000 grant to an Effective Altruist cause that he had designated—and he made no such election—Rheingans-Yoo himself would not have received the $650,000 that he now seeks from the Debtors as an administrative claim. **Rather, the $650,000 would have gone to the Effective Altruist cause that Rheingans-Yoo designated**.

The Court overruled the Trust's objection. So, as the Trust acknowledged and the Court ordered, the $650,000 FDU Bonus will go to an effective altruism ("EA") cause that Ross designates.

4.   But when Ross designated Manifold for Charity, the Debtors filed their Amended Complaint, fallaciously conflating Ross's designation with an "integrated plan by the FTX Insiders to siphon money from FTX Group creditors and enhance their own personal and professional reputations at creditors' expense." Amended Complaint, ¶ 36. The Amended Complaint is a screed shouting that EA is Bad.

5.   The gravamen of the Amended Complaint is that FTX was a fraud (Amended Complaint, ¶¶ 24-33), FTX Philanthropy made charitable donations using wrongfully obtained FTX customer funds (*id.* at ¶¶ 34-35), and some of those donations were made to EA charities (*id.* at ¶ 36). The Trust alleges that FTX Philanthropy used customer funds to invest $1 million in Manifold Markets, Inc. and donate $508,000 to Manifold for Charity (*id.* at ¶¶ 38-41).

6.   What, then, is Ross's alleged wrongdoing? That Ross was a named defendant in the Latona Adversary Proceeding? *See* Amended Complaint at ¶¶ 44-45. That cannot be it; the Debtors settled the Latona Adversary Proceeding and released Ross for any claim that he aided and abetted Sam Bankman-Fried's breach of fiduciary duties to the Debtors. *See* Latona Adversary Proceeding D.I. 106. Perhaps Ross's wrongdoing is that he was employed by the fraudulent FTX Group. *See* Amended Complaint at ¶ 45. That can't be it either; the Debtors admitted when they objected to the FDU Claim that the Debtors' employment agreement with Ross was a valid and enforceable contract, and the Debtors in their discretion awarded the FDU Bonus to Ross. *See Stipulation of*

*Undisputed Facts Relating to Ross Rheingans-Yoo's FDU Claim* [D.I. 29218, "Stipulated Facts"][4] at ¶¶ 31, 38-41.

7.   No, what the Trust alleges constitutes Ross's wrongful conduct is designating Manifold for Charity as the beneficiary of his FDU Claim. *See* Amended Complaint at ¶¶ 47-49. Specifically, the Trust alleges that Ross engaged in wrongdoing by not disclosing that he sits on the board of directors of Manifold for Charity and that Manifold for Chairty has "material connections" between it and "key individuals connected to these Chapter 11 cases." *Id.* Respectfully: So what?

8.   The Bonus Memo[5] required Ross to do two things. First, accept the bonus. The Court held that Ross did so by timely filing a proof of claim in the chapter 11 case.[6] Second, designate any EA-driven cause to receive the FDU Bonus. Ross did so, through counsel, on July 2, 2024.[7]

9.   The Trust does not object to Manifold for Charity on the ground that it is not an EA cause. To the contrary, the Trust harps on Manifold for Charity's EA connections, asserting that Manifold for Charity is Ross's "Effective Altruist acquaintance." Amended Complaint at ¶ 48.

10.  Ross had a valid and enforceable employment agreement with the Debtors. The Debtors awarded Ross a discretionary bonus. Ross accepted the bonus on its terms by designating Manifold for Charity. There was no contractual or equitable restriction on Ross's right to choose a beneficiary, other than that his choice needed to be any EA cause. The Trust vigorously agrees that Manifold for Charity is an EA cause. Ross has done nothing wrong.

11.  Through the Amended Complaint, the Trust seeks to "avoid and recover" from Ross the FDU Claim that the Court already allowed at the June 25, 2025 hearing and in a corresponding

---

[4] A true and correct copy of the Stipulated Facts is annexed to the Ross Decl. as **Exhibit B**.
[5] A true and correct copy of the Bonus Memo is annexed to the Ross Decl. as **Exhibit C**. The Bonus Memo was previously filed as an exhibit to the Stipulated Facts.
[6] *See* Hearing Tr. at 45:20 – 46:14.
[7] A true and correct copy of Ross's designation of Manifold for Charity as the recipient of the FDU Bonus is annexed to the Ross Decl. as **Exhibit D**.

order entered on July 9, 2025 ("FDU Order"). Amended Complaint at ¶ 1. The Trust also seeks to "disallow, or alternatively to equitably subordinate" Ross's allowed FDU Claim. *Id.* at ¶ 2.

12. The Amended Complaint is not plausible. It alleges that Ross's post-petition, post-confirmation, post-allowed-claim conduct in 2025 – selecting Manifold for Charity to receive the FDU Claim – violates sections of the Bankruptcy Code and Delaware law that relate to *prepetition* conduct. Counts One through Four seek avoidance under provisions of the Bankruptcy Code and corresponding Delaware law that look back at transfers made before the bankruptcy filing, even though Ross has not received any transfer. Those statutes also require Ross to have received the transfers. Ross has not and will not receive the FDU Bonus himself. Counts Five and Six, sounding under 11 U.S.C. §§ 550 and 502, are tools for enforcing successful avoidance actions; the Trust cannot be successful as to Ross. And Count Seven, seeking equitable subordination of Ross's claim, is subject to dismissal because Ross was not an insider, nor did he engage in inequitable prepetition conduct by working for the Debtors, asserting his FDU Claim, and complying with the FDU Order by selecting an EA charity.

13. Notwithstanding that the Trust's Amended Complaint is meritless, Ross in good faith voluntarily resolved the Trust's concerns by redesignating as the beneficiary 1Day Sooner Inc. ("1Day Sooner"), an EA charity that is not currently litigating with the Trust. The Trust refused.[8]

14. In refusing to pay the FDU Claim to 1Day Sooner, Trust counsel asserted that the FDU Order "does not permit" Ross to substitute another charity for the one he originally designated. *See* Ross Decl., Ex. E. Of course, the FDU Order also does not forbid Ross from designating another charity, especially since the FDU Claim has not even been submitted to the Trust's claims

---

[8] *See* August 14-15, 2025 correspondence redesignating the FDU Bonus recipient from Manifold for Charity and the Trust's refusal. A true copy is annexed to the Ross Decl. as **Exhibit E**.

administrator, let alone paid.[9] The Trust in bad faith rejected Ross's good-faith attempt to avoid multiplying these proceedings. Instead, the Trust insists on wasting judicial resources based on a silence in the FDU Order while at the same time defaulting under the FDU Order by unilaterally failing to comply with it. This bad faith insistence on litigating is sanctionable.

15. There is no legal basis for suing Ross in the Amended Complaint: He did not receive an avoidable transfer; he did not direct the prepetition transfers to the Manifold entities; he did not engage in prepetition inequitable conduct; and his designation of Manifold for Charity complied with his obligations under the Bonus Memo and the FDU Order. Ross did nothing wrong.

16. Additionally, numerous allegations in the Amended Complaint are materially false and misleading – squarely implicating Brandolini's Law.[10]

17. The Trust asserts, for example, that Ross did not disclose that he is a Manifold for Charity board member, implying that he had an obligation to disclose this and he concealed the truth. *See* Amended Complaint at ¶ 47. Both are wrong. Neither the Bonus Memo nor the FDU Order prohibited Ross from designating an EA charity for which he serves as a director. It is commonplace for charities' board members to be among their organizations' largest donors and staunchest supporters; Ross has donated over $150,000 of his own money to Manifold for Charity. In any event, Ross did not conceal this fact. The Trust admits this by citing a post on Ross's own public website! *See* Amended Complaint, ¶ 47 n. 12. The Trust claims that Manifold for Charity directors are entitled to be paid. *See id.* at ¶ 47. Yes, but none of them ever have been paid. Refuting the Trust's mudslinging attacks on EA, Ross, and Manifold for Charity[11] is beside the point.

---

[9] Trust counsel refused to confirm that the claims administrator was directed to pay Manifold for Charity, strongly implying that they have not done so, in violation of the FDU Order. *See* Ross Decl., Ex. E.

[10] "The amount of energy needed to refute [a false and misleading claim] is an order of magnitude bigger than that needed to produce it." Wikipedia, Brandolini's Law, available at https://en.wikipedia.org/wiki/Brandolini%27s_law (last accessed August 19, 2025).

[11] *See generally* Ross Decl.

18. The point is best made in response to the overriding theme of the Trust's pleadings: "The donations to Effective Altruist and other charities were part of an integrated plan by the FTX Insiders to siphon money from FTX Group creditors and enhance their own personal and professional reputations at creditors' expense." Amended Complaint, ¶ 36. Here is what the Trust elides: *The knowledge that the Debtors had donated customer funds to EA charities and sued for their return was known to the Debtors at all times.* Ross's obligation to select any EA charity as the FDU Claim's beneficiary, if it was objectionable to the Trust, should have been argued as a basis for objecting to the FDU Claim. It cannot be heard now.

19. Nor can the Trust argue that Ross's employment and the FDU Bonus were fraudulent. The Trust asserted in the objection to claim sequence that Ross's Employment Agreement was a valid, enforceable, fully integrated contract, so Ross could not offer evidence of negotiations leading up to issuance of the Bonus Memo or execution of Employment Agreement: "[T]he Ross terms, as they're referred, we do not believe those are … admissible." Hearing Tr. at 42:13-15. Having argued that evidence of Ross's pre-contractual negotiations are inadmissible, the Trust cannot now offer evidence on why Bankman-Fried issued the Bonus Memo with the requirement that Ross select any EA-driven cause to receive it.

20. More importantly, Ross has an unconditional contractual right to designate "*any*" EA cause to receive the FDU Claim. Bonus Memo at p. 2 (emphasis added). Neither the Bonus Memo nor the FDU Order precludes Ross from changing the beneficiary before the claim is paid.

21. In filing the Amended Complaint, the Trust indicated that it believes Ross designating Manifold for Chairty is somehow fraudulent. Ross disagreed with the Trust's interpretation but nevertheless resolved the Trust's concern by voluntarily redesignating the beneficiary. *See* Ross Decl., Ex. E.

6

22. Ross's prompt change to another EA charity, one that is not litigating with the Trust, completely undermines the Trust's theory of wrongdoing.

## JURISDICTIONAL CONSENT

23. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Ross consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL HISTORY

24. The Court is respectfully referred to the Stipulated Facts (Ross Decl. Ex. B) for an undisputed recitation of Ross's employment history with the Debtors.

25. The Debtors filed their chapter 11 cases on November 11, 2022. The general non-customer bar date was set as June 30, 2023. Ross timely filed his proof of claim, inclusive of the FDU Claim, on or about June 29, 2023.

26. On October 30, 2023, the Debtors filed their Claim Objection. The Claim Objection asserted two grounds for disallowance of the FDU Claim. First, Ross did not identify the FDU Claim's beneficiary prior to the Petition Date. *See* Claim Objection at ¶ 28. Second, Ross lacked standing to assert the FDU Claim. *See id.* at ¶ 29. The Claim Objection recognized that the FDU Claim, if paid, would go "to the Effective Altruist cause that Rheingans-Yoo designated." *Id.* The

Claim Objection did not seek disallowance of the FDU Claim on the ground that allowance would require the Debtors to make a charitable donation to an EA cause.

27. On February 12, 2025, Ross filed his response to the Claim Objection [D.I. 29572, "Ross Response"]. The Ross Response explained that the FDU Claim was part of Ross's earned employment compensation and the Bonus Memo did not obligate Ross to designate a beneficiary between September 2022, when the Debtors awarded the FDU Bonus, and the November 2022 petition date.

28. On June 12, 2025, the Trust filed its reply on the Claim Objection [D.I. 30712, "Trust Reply"]. The Trust Reply repeated the arguments made in the Claim Objection, namely that Ross lacked standing to assert the FDU Claim since he would not be the ultimate recipient of the FDUs, and Ross's claim was unenforceable because he never accepted the bonus by designating the beneficiary before the petition date.[12]

29. On June 25, 2025, the Court held oral argument on the Claim Objection. On the record of the hearing, the Court determined that Ross had standing to assert the FDU Claim given his personal interest in the FDU Bonus. *See* Hearing Tr. at 46:2-4. The Court also determined that the Debtors awarded Ross a prepetition discretionary bonus which required the Debtors to make a $650,000 donation to an EA cause, and that Ross timely accepted the bonus by filing a proof of claim pursuant to Judge Dorsey's bar date order. *Id.* at 46:4-14.

30. On July 2, 2025, Ross's counsel timely emailed Trust counsel to advise that Ross had selected Manifold for Charity. *See* Ross Decl., Ex. D. The email advised Trust counsel to "[l]et me know if you need any additional information to identify the Designated Beneficiary…" *Id.*

---

[12] The Trust Reply also insisted that Final Ross Terms – the Google Document expressing the terms of Ross's employment that was negotiated between Ross and Sam Bankman-Fried – was inadmissible to show the parties' intent because Ross's form Employment Agreement was a fully integrated contract.

31. On July 9, 2025, the Court entered the FDU Order. The FDU Order directed the Trust to "make distributions in accordance with the terms of the Plan on account of the Allowed FDU Claim to the Effective Altruism-driven charity identified by counsel for Rheingans-Yoo in writing to counsel for the Trust." FDU Order, ¶ 3. The FDU Order further directed Kroll Restructuring Administration LLC, the Trust's claims and administrative agent, to "update the claims register maintained in these Chapter 11 Cases to reflect the relief granted in this Order." *Id.*, ¶ 4.

32. On July 23, 2025, Trust counsel filed the Amended Complaint and a Motion for Reconsideration [D.I. 31846, "Motion for Reconsideration"]. Trust counsel never reached out to Ross's counsel to discuss Ross's July 2 selection of Manifold for Charity before precipitously filing these pleadings.

33. On August 14, 2025, Ross's counsel emailed Trust counsel to advise that Ross believed the Amended Complaint and Motion for Reconsideration lacked merit, but in an effort to "eliminate the parties' ongoing litigation costs and conserve judicial resources," Ross was changing his designation from Manifold for Charity to 1Day Sooner. *See* Ross Decl. Ex. E. The August 14, 2025 email also advised Trust counsel that upon information and belief, the Trust had not complied with the FDU Order by directing its claims administrator to pay the FDU Claim to Manifold for Charity. *See id.* And Ross's counsel also advised Trust counsel that Ross was willing to answer written questions about 1Day Sooner "to prospectively alleviate any concerns that the debtors may have about its philanthropy or relationship to Ross." *Id.*

34. On August 15, 2025, the Debtors responded that the FDU Order "does not permit Rheingans-Yoo to substitute another charity for the one he originally designated." *See* Ross Decl. Ex. E. Of course, the FDU Order also does not prohibit a substitution, especially where the FDU Bonus has not been paid or even conveyed to the claims administrator in compliance with the FDU

Order – a fair presumption given Trust counsel's refusal to address Ross's counsel's concern that there had been no such direction.

## FACTUAL BACKGROUND[13]

35. Ross has donated over $700,000 of his own money to charity since 2014. This is *before* considering the FDU Bonus.

36. Most of Ross's donations were to EA causes. As many EA donors do, Ross has publicly explained why he believes that the recipients of his donations are worthy of support. For example, Ross has given the largest portion of his personal donations – nearly $165,000 – to the organization GiveWell, established in 2007 as a nonprofit dedicated to finding outstanding giving opportunities and sharing the full details of that analysis with everyone for free.

37. The second-largest portion of Ross's personal donations – over $150,000 – has been to Manifold for Charity. Ross has also personally donated to the Centre for Effective Altruism, COVID-response projects, the Humane League for animal welfare, the Against Malaria Foundation, and many other EA causes.

38. The Court may recall that Final Ross Terms contemplated that the FDU Bonus could be granted "to a Ross-controlled personal foundation." See Stipulated Facts, p. 7. This is because in a technical sense, Ross initially made the vast majority of his over $700,000 in donations to Vanguard Charitable, which administers Ross's donor-advised fund ("DAF").

39. Vanguard describes DAFs as "a charitable giving vehicle that empowers you to grow your philanthropy with ease and precision." As a 501(c)(3), Vanguard Charitable faces restrictions in how it can invest or direct these funds, to prevent them from being used for the private benefit of individuals connected to the donor.

---

[13] The factual recitation in this section is based upon the Ross Decl.

40. Once Ross donates funds to Vanguard Charitable, his role is limited to the provision of advice as to how the assets may be invested, or how they may be directed for charitable purposes, which in practice often means Ross advising Vanguard to send the funds to an EA cause.

41. Vanguard Charitable as a DAF service provider has a legal obligation to ensure that it only makes regrants for charitable purposes, and that its investments comport with all relevant laws that govern charitable investing. It is Vanguard's duty to ensure that following actions advised by a donor-advisor does not illegally inure to private benefit. In this responsibility, the organization, its officers, and its directors are responsible to state and federal authorities under common statutes against misuse of philanthropic funds.

42. Manifold for Charity is, like Vanguard Charitable, a DAF service provider.

43. Ross is indeed an independent director of Manifold for Charity. In that role, he is legally obligated to evaluate opportunities to either advise investments that are likely to lead to the growth of philanthropic capital to support future projects, or to advise grants that will have positive impact on the world in the shorter term. In the latter, Ross takes seriously his responsibility to ensure that Manifold for Charity complies with its legal obligations as a 501(c)(3) as it evaluates advice from donor-advisors as to grants and investments.

44. Importantly, Ross has no property interest in his donations once they are made to Vanguard Charitable, Manifold for Charity, or any other DAF. Indeed, when Ross advises Manifold for Charity about how he wishes to regrant funds that he donated, Ross recuses himself from board oversight and the remaining directors confirm that Ross's donations are used only for charitable purposes and not to benefit himself.

45. It is true that Manifold for Charity's bylaws provide that directors can be paid for serving on the board. However, since Manifold for Charity's founding, directors have never been

11

paid, and there is no expectation or plan for that to change.

46. Manifold for Charity never paid Gabe Bankman-Fried for consulting, as the Trust implies at ¶ 49 of the Amended Complaint. A phone call or two does not raise "concerns." Nor did Manifold for Charity ever add Gabe Bankman-Fried to its board of directors.

47. Even though the Trust's purported "concerns" with Manifold for Charity are unfounded, Ross nevertheless promptly sought to address those concerns by substituting 1Day Sooner as the recipient of the FDU Claim.

48. Ross is not an employee, officer, or director of 1Day Sooner. He has never been paid by 1Day Sooner.

49. From time to time, Ross has volunteered his time to assist 1Day Sooner's research and public-communications efforts with uncredited and uncompensated writing, reviewing, and informal advice.

50. Ross is willing to stipulate that he not be compensated by 1Day Sooner in any capacity for a future period sufficient to allay the Trust's purported concerns about self-dealing.

51. As with Manifold for Charity, once the FDU Bonus is distributed to 1Day Sooner, Ross will have no legal right to control the FDU Bonus funds.

### ARGUMENT

### I. Legal Standard

52.   Federal Rule 8(a)(2), made applicable to this proceeding by Rule 7008 of the Federal Rules of Bankruptcy Procedure, provides that to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"80 This rule imposes a "notice pleading standard . . . to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir.

2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While detailed facts are not necessary, "a plaintiff is required to put the defendant on notice as to the basics of the plaintiff's complaint [and] to set forth the facts with sufficient particularity to apprise the defendant fairly of the charges made against him so that he can prepare an adequate answer." *Giuliano v. U.S. Nursing Corp. (In re Lexington Healthcare Grp., Inc.)*, 339 B.R. 570, 575 (Bankr. D. Del. 2006); *see also In re APF Co.*, 308 B.R. 183, 188 (Bankr.D. Del. 2004); *Mervyn's LLC v. LubertAdler Group IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 488, 495 (Bankr. D. Del. 2010). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do[.]" *Twombly*, 550 U.S. at 545. Accordingly, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and a plaintiff's threadbare recitals of the elements of a cause of action that are only supported by conclusory statements will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

53.   When reviewing a motion to dismiss under Federal Rule 12(b)(6) challenging the sufficiency of a plaintiff's statement of claim, a court must accept all factual allegations as true, construe such facts in the light most favorable to the plaintiff, and determine whether they allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678; *Crystallex Int'l Corp. v Petroleos De Venezuela, S.A.*, 879 F.3d 79, 83 n.6 (3d Cir. 2018) (quoting *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 242 (3d Cir. 2015)) This is a plausibility standard – it requires more than speculation or a sheer possibility that a defendant acted unlawfully but is not akin to a probability standard. *Iqbal*, 556 U.S. at 67. Rather, the alleged facts must nudge the claims "across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570.

54. The United States Court of Appeals for the Third Circuit has prescribed a three-step process for courts to determine the sufficiency of a complaint: note the elements of the claim; identify the allegations that are conclusory and not entitled to an assumption of truth; assume the veracity of well-pleaded factual allegations and determine the plausibility of the plaintiff's entitlement to relief. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). Instead of being a mini trial for parties to put forth their whole case and competing viewpoints of what the ultimate outcome should be, a dismissal motion focuses on the narrow and fundamental question of whether, if everything the plaintiff alleges is true, the plaintiff can prevail. *See Kost v. Kozakiwicz*, 1 F.3d 176, 183 (3d Cir. 1993). In answering that question, a court may draw from "judicial experience and common sense" (*see Iqbal*, 556 U.S. at 679), but it must only consider alleged facts that are within the scope of the court's review. *See Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016); *see also Schmidt v. Skolas,* 770 F.3d 241, 249 (3d Cir. 2014). The scope of what is reviewable includes the complaint, public record, and documents that are "integral to or explicitly relied upon" by a plaintiff, such as documents attached to a complaint and any undisputedly authentic documents upon which the claims are based. *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018); *see also McTernan v. City of York, Penn.,* 577 F.3d 521, 526 (3d Cir. 2009); *Davis*, 824 F.3d at 341. "[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice. *See In re Livent, Inc. Noteholders Sec. Litig.,* 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001).

14

**II. The fraudulent transfer causes of action are not plausible.**

55. The first four causes of action against Ross in the Amended Complaint assert claims under sections 548(a) and 544(b) of the Bankruptcy Code. *See* Amended Complaint at ¶¶ 51-79. It is black-letter law that an essential element of a claim under these statutes is a transfer that took place prior to the petition date. "[T]he fraudulent transfer provisions of section 548(a) and the 'strong arm' provisions of provisions of section 544(b) likewise require a 'transfer' that occurred before the commencement of the debtor's case." *In re American Remanufacturers, Inc.*, Adversary No. 07–51750(PJW), 2008 WL 2909871 at *3 (Bankr.D.Del. Jul. 25, 2008).

56. The Trust's allegation against Ross is that he "designated Manifold for Charity as the beneficiary of the FDU Claim." Amended Complaint at ¶¶ 47-48. Undeniably, Ross's designation was made on July 2, 2025. *See* Ross Decl., Ex. D. For the avoidance of doubt, July 2, 2025 was not only after the November 2022 petition date, but it was also after the October 8, 2024 plan confirmation date, and it was also after the June 25, 2025 hearing at which the Court allowed Ross's FDU Claim. The allegation that Ross's FDU Claim was a prepetition transfer is not plausible.

57. Another essential element of a claim under § 548(a) and 544(b) is that the defendant received the alleged fraudulent transfer. "A bankruptcy trustee may recover property transferred from the debtor to an initial transferee or any immediate or mediate transferee to the extent that a transfer could be avoided under §§ 544 and 548, among others." *Miller v. Mott*, No. 23-50004, 2023 WL 6467368 at *6 (Bankr.D.Del. Oct. 4, 2023). The same is true under Delaware law. "The only proper defendants in a fraudulent conveyance action under federal bankruptcy law or Delaware law are the transferor and any transferees." *Trenwick Am. Litigation Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168 (Del. Ch. 2006) *aff'd*, 931 A.2d 438 (Del. 2007).

15

58. In the Amended Complaint, the Trust alleges that five transfers are avoidable. Four of the five transfers were to Manifold Markets. The fifth was to FTX Philanthropy, Inc. *See* Amended Complaint at ¶ 4. None of the alleged transfers were to Ross, either as the initial or subsequent transferee. None of the alleged transfers is the FDU Bonus. It is self-evident that in making his designation in compliance with the FDU Order, Ross did not receive a transfer. Indeed, the Trust acknowledged that upon allowance of the FDU Claim, the $650,000 will go "to the Effective Altruist cause that Rheingans-Yoo designated" – not to Ross himself. Claim Objection at ¶¶ 28-29. The allegation that Ross received the FDU Bonus himself is not plausible.

59. The Trust alleges that "multiple badges of fraud … permeate … the FDU Obligation." Amended Complaint, ¶ 50. Objectively false. The Court already determined the Trust's obligation to pay the FDU Claim. By holding that the FDU Bonus was awarded to Ross as duly awarded compensation, the Court found that the Trust's obligation to pay an EA charity is not fraudulent. *See* Hearing Tr. at 46:2-17.

60. To the extent the Trust argues that "FDU Obligation" is a defined term relating to Ross's designation of Manifold for Charity, and that this particular obligation is fraudulent, the Court is respectfully referred to the foregoing sections that show how the Trust's purported concerns are actually concern trolling. If the Trust had legitimate concerns about Manifold for Charity, Ross addressed them by redesignating the EA charity to 1Day Sooner. There never was a fraud. Even if the Trust subjectively believed there was a fraud, Ross resolved the issue by redesignating the beneficiary. Ross's prompt redesignation to an EA cause that is not litigating with the Trust completely undermines the Trust's fraud allegations.

**III. The recovery causes of action are not plausible.**

61. Because the fraudulent transfer causes of action are subject to dismissal, so are the

16

recovery causes of action under Bankruptcy Code sections 550 and 502. *See In re Daily Bread Winddown, LLC*, Adv. No. 22-50334 (JTD) at *8 (Bankr.D.Del. Nov. 1, 2022) (" Section 550 is not a separate basis."); *In re FBI Wind Down, Inc.*, 614 B.R. 460 (Bankr.D.Del. 2020) (adjudication under section 548 is a "condition precedent" to use of section 550); *In re DHP Holdings II Corp.*, 435 B.R. 264, 273 (Bankr.D.Del. 2010) (section 502 "is not available" absent prerequisite liability requiring turnover of property).

62. Because the Trust cannot allege a fraudulent transfer claim against Ross, its causes of action under sections 502 and 550 are not plausible.

**IV. The equitable subordination cause of action is not plausible.**

63. The Trust's seventh cause of action is not a model of clarity, but it seems to allege that Ross's FDU Claim should be equitably subordinated because Ross, supposedly as opposed to "innocent creditors," took part in "the illegal and fraudulent misappropriation of customer funds." Amended Complaint, ¶ 88. This allegation is conclusory and not entitled to a presumption of truth. The truth is that the Trust cannot state a claim for equitable subordination.

64.   Section 510(c)(1) of the Bankruptcy Code provides the Court with authority to "subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim . . . ." Subordination under this provision is remedial, springing from bankruptcy courts' traditional powers as courts of equity "to undo or to offset any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of bankruptcy results." *See Citicorp Venture Cap., Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 323 F.3d 228, 233 (3d Cir. 2003) (quoting *Burden v. United States*, 917 F.2d 115, 117 (3d Cir. 1990)).It "seeks to re-prioritize the order of allowed claims based on the equities of the case, rather than to allow or disallow the claim in the first instance." *In re Mid-Am. Waste Sys., Inc.*, 284

B.R. 53, 68 (Bankr. D. Del. 2002).

65. There are three required elements of an equitable subordination claim under    section 510(c) of the Bankruptcy Code: (1) "[t]he claimant must have engaged in some type of inequitable conduct;" (2) "[t]he misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant;" and (3) "[e]quitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code]." *In re Winstar Communications, Inc.*, 554 F.3d 382, 411 (3d Cir. 2009). Equitable subordination is a "drastic" and "unusual" remedy that should only be applied in limited circumstances. *In re Zohar III, Corp.*, 639 B.R. 73, 90 (Bankr.D.Del. 2022). "[T]he most important factor in determining if a claimant has engaged in inequitable conduct for the purposes of equitable subordination is whether the claimant was an insider or outsider in relation to the debtor at the time of the act." *Off. Unsecured Creditors' Comm. of Broadstripe, LLC v. Highland Capital Mgmt., L.P. (In re Broadstripe, LLC)*, 444 B.R. 51, 79 (Bankr. D. Del. 2010).

66. To adequately plead that a creditor is an insider, a plaintiff must specifically set forth in its complaint facts supporting such a legal conclusion and not merely allege or label the creditor an insider. *See, e.g., Klauder v. Echo/Rt Holdings, LLC (In re Raytrans Holding, Inc.),* 573 B.R. 121, 132 (Bankr. D. Del. 2017) (finding that plaintiff did not carry its burden because it merely recited the word insider and neither provided facts nor gave evidence to establish whether defendants were statutory or non-statutory insiders) Section 101(31)(B) of the Bankruptcy Code enumerates several categories of insiders, including, as relevant to this proceeding, a "person in control of the debtor[.]" 11 U.S.C. 101(31)(B)(iii). For a creditor to constitute a person in control, and thus be a statutory insider, a finding of "actual control (or its close equivalent) is necessary." Winstar, 554 F.3d at 396. This requires "day-to-day control, rather than some monitoring or

exertion of influence regarding financial transactions in which the creditor has a direct stake." *Id.* at 396 n.5 (citation omitted); *see also Off. Comm. of Unsecured Creditors of Radnor Holdings Corp. v. Tennenbaum Cap. Partners, LLC (In re Radnor Holdings Corp.),* 353 B.R. 820, 840-41 (Bankr. D. Del. 2006) (determining that creditor's activities, such as monitoring the debtor's business and attending board meetings, were insufficient to show that the creditor exercised day-to-day control over the debtor's business affairs and dictated the debtor's business); *United States v. State St. Bank & Trust Co.*, 520 B.R. 29, 81 (Bankr.D.Del. 2014) (same). The creditor must "control the company so as to dictate corporate policy and disposition of corporate assets without limits." *Ra*dnor, 353 B.R. at 841 (emphasis in original) (quoting Gray v. Manklow (In re Optical Techs., Inc.), 252 B.R. 531, 539 (M.D. Fla. 2000), aff'd, 246 F.3d 1332 (11th Cir. 2001)); *see also Off. Comm. of Unsecured Creditors v. Credit Suisse First Bos. (In re Exide Techs., Inc.),* 299 B.R. 732, 743 (Bankr. D. Del. 2003) ("Lending institutions have been found to be insiders when exerting dominion and control, or, when they exercise sufficient authority over the corporate debtors so as to unquantifiably dictate corporate policy and the disposition of assets." (citation and internal quotation marks omitted)) In essence, the "day-to-day control" must be over decision making rather than other less significant aspects of the debtor's business and operations. *See In re M. Paolella & Sons, Inc.,* 161 B.R. 107, 118–19 (E.D. Pa. 1993), aff'd, 37 F.3d 1487 (3d Cir. 1994) (affirming bankruptcy court determination that secured lender was not an insider where the secured lender did not participate in debtor's management, determine its operating decisions, or have a presence on its board, but rather debtor's principal controlled debtor and made key decisions); *Meeks v. Bank of Rison (In re Armstrong)*, 231 B.R. 746, 750 (Bankr. E.D. Ark. 1999) (finding that bank, which required the debtor to submit frequent reports on receivables, invoices, and operations, received all payments on the receivables, had the power to endorse checks, and

obtain concessions from the debtor, was not an insider because there was no control of the day-to-day decision making).

67. Here, The Trust admits that Ross was not an insider of the Debtors. When the Trust defines "FTX Insiders" in the Amended Complaint, the list is "Bankman-Fried, Singh, Wang, and Ellison," but not Ross. *Id*. at ¶ 15. Because Ross is not an insider, then under this Court's ruling in *United States v. State St. Bank & Tr. Co.*, 520 B.R. 29, 87 (Bankr.D.Del. 2014), "the circumstances supporting [an equitable subordination] claim are few and far between." The facts here do not come close to supporting an equitable subordination claim against Ross.

68. Where, as here, a non-insider creditor exercises contractual rights, it does not engage in inequitable conduct. *See Citicorp Venture Capital*, 323 F.3d at 235 ("the pursuit of one's legal rights may not be grounds for equitable subordination."). The Court already allowed Ross's FDU Claim because his Employment Agreement gave the Debtors discretion to award him a bonus and then the Debtors awarded him the FDU Bonus. *See* Hearing Tr. at 46:4-7 ("I do believe that the claim was part of his bonus, as indicated by the subsequent memorandum of Mr. Bankman-Fried, outlining the terms of the discretionary bonus approved by the company."). Thus, Ross's pursuit of his FDU Bonus is contractual, not inequitable.

69. Nor is it inequitable for Ross to have selected an EA cause to receive the FDU Bonus. Doing so was required by the terms of the Bonus Memo: "you get another $650k of directed grants to *any* EA-driven cause if you want" *See* Ross Decl. Ex. C at 2 (emphasis added). Ross selecting an EA cause was also required by the FDU Order allowing Ross's $650,000 claim and distributing it "to the Effective-Altruism-driven charity identified by counsel for Rheingans-Yoo…" .....*Id*. at 2. Ross complied with his Employment Agreement, the Bonus Memo, and the FDU Order. There is no inequitable conduct.

20

70. There is also no injury to creditors[14] or unfair advantage to Ross. The Court allowed the FDU Claim, requiring the Trust to distribute $650,000 to an EA cause. .....*See Zohar III*, 639 B.R. at 107-108 n. 222 ("alleged inequitable post-petition conduct … is unsupported" where Court approved it. "Accordingly, there was no harm."). The Trust refuses to accept that its Claim Objection was overruled.

71. The Trust's belief that EA is Bad does not alter the undeniable fact that the Debtors agreed, by issuing the Bonus Memo, to donate these funds to an EA cause. The Court allowed the FDU Claim. Ross redesignated the beneficiary to 1Day Sooner to avoid this litigation, but the Trust refused even though the Trust has not paid the claim. Paying the FDU Bonus to 1Day Sooner will not harm creditors because the Court held that Ross's FDU Bonus is allowable.

72. The Trust's assertion that payment of an allowed claim to a non-insider in accordance with contractual terms is inequitable or harmful to creditors is not plausible.

**V. Leave to amend should be denied.**

73. Should the Trust seek to further amend the Amended Complaint in response to this Motion, leave should be denied.

74. Federal Rule 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Grant or denial of leave to amend is in the discretion of the Court. *See Dole v. Arco Chem. Co.,* 921 F.2d 484, 486 (3d Cir. 1990). Among the grounds that could justify a denial of leave to amend are: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by virtue of allowing the amendment; and (5) futility. *Foman v. Davis*, 371

---

[14] Given the Debtors' approved plan of reorganization paying all general unsecured creditors 100 cents on the dollar plus interest, it seems impossible for creditors to be injured by the Trust paying the FDU Claim. The Motion for Reconsideration does not describe how they could.

U.S. 178, 182 (1962); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."). Futility means that "the complaint, as amended, would fail to state a claim upon which relief could be granted."   ; *Burlington*, 114 F.3d at 1434; *Stanziale v. Richards, Layton & Finger, P.A. (In re EP Liquidation, LLC)*, 583 B.R. 304, 313 (Bankr. D. Del. Apr. 9, 2018) In assessing "futility," a court applies the same standard of legal sufficiency under Federal Rule 12(b)(6) and may properly deny leave to amend where the amendment would not withstand a motion to dismiss. *See Id*; *Charys Liquidating Trust v. Hades Advisors, LLC (In re Charys Holding Co., Inc.)*, 443 B.R. 638, 643 (Bankr. D. Del. Jan. 20, 2011).

75. Ross was first sued by the Debtors in July 2023. After that case was settled, the Trust objected to Ross' claim on the grounds that he lacked standing to assert it and did not timely accept it – not that the claim, if allowed, would be fraudulent or objectionable because the charitable contribution would go to an EA cause. The Trust has litigated against Ross for more than two years. Significant time, effort, and resources of not only Ross but of this Court have been expended on the Trust's meritless vendetta. It is difficult to imagine the Trust bringing forth any information that has not already been (or should have been) included. Moreover, the Trust has already amended the complaint. The Trust made minimal changes to its substance outside of adding additional allegations against Ross that are subject to dismissal.

76. While leave to amend is typically granted liberally, Ross respectfully submits that doing so here would be futile and potentially abusive to Ross and this Court.

## **CONCLUSION**

The Trust's claims against Ross, in addition to not being plausible, are also harassing and sanctionable. That the Trust refused to withdraw the Amended Complaint, particularly after Ross voluntarily redesignated the charitable beneficiary to 1Day Sooner, is causing needless increase in the cost of this litigation. Ross is contemporaneously filing a motion under Rule 9011 of the Federal Rules of Bankruptcy Procedure, 28 U.S.C. § 1927, and 11 U.S.C. § 105 to recover his costs in defending against the Trust's frivolous claims.

Dated: September 26, 2025
      Wilmington, DE

                         */s/Michael J. Joyce*
                         Michael J. Joyce (No. 4563)
                         **JOYCE, LLC**
                         1225 King Street, Suite 800
                         Wilmington, DE 19801
                         Telephone: (302) 388-1944
                         mjoyce@mjlawoffices.com

                         -and-

                         Scott D. Simon (admitted *pro hac vice*)
                         **GOETZ PLATZER LLP**
                         One Penn Plaza, Suite 3100
                         New York, NY 10119
                         Telephone: (212) 695-8100
                         ssimon@goetzplatzer.com