## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTX TRADING, LTD., *et al*.,<br><br>　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered) |
| FTX RECOVERY TRUST,<br><br>　　　　　　　　Plaintiff,<br><br>　　- against –<br><br>MANIFOLD MARKETS, INC., MANIFOLD FOR CHARITY, INC., ROSS RHEINGANS-YOO, and FTX PHILANTHROPY, INC.,<br><br>　　　　　　　　Defendants. | Adv. Pro. No. 24-50214 (KBO) |

## THE FTX RECOVERY TRUST'S MEMORANDUM OF LAW IN OPPOSITION TO ROSS RHEINGANS-YOO'S MOTION FOR SANCTIONS UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011, 28 U.S.C. § 1927, AND 11 U.S.C. § 105

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ......................................................................................................4

LEGAL STANDARD.............................................................................................................8

ARGUMENT .......................................................................................................................10

I.      THE RECONSIDERATION MOTION IS NOT SANCTIONABLE.............................10

        A.      The Trust Both Presented New Evidence Warranting Reconsideration and
                Identified a Manifest Injustice. .............................................................................10

        B.      Mr. Rheingans-Yoo's Purported "Redesignation" of a New "Charity"
                Does Not Render the Reconsideration Motion Sanctionable. ...............................14

II.     THE AMENDED COMPLAINT IS NOT SANCTIONABLE. ........................................16

        A.      The Trust's Attempt to Avoid the FDU Obligation as Fraudulent Is Not
                Sanctionable.........................................................................................................16

        B.      Mr. Rheingans-Yoo's Subjective Intent Does Not Render the Fraudulent
                Conveyance Claims Sanctionable...........................................................................19

        C.      The Section 502(d) and 550 Claims Are Not Sanctionable...................................20

        D.      The Equitable Subordination Claim Is Objectively Reasonable And
                Therefore Not Sanctionable. .................................................................................21

III.    THIS COURT SHOULD AWARD THE TRUST REASONABLE EXPENSES
        AND ATTORNEYS' FEES INCURRED IN OPPOSING MR. RHEINGANS-
        YOO'S MERITLESS SANCTIONS MOTION. ............................................................24

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adhikari* v. *Daoud & Partners*,
2017 WL 5904782 (S.D. Tex. Nov. 30, 2017) ......................................................24

*In re AmeriServe Food Distrib., Inc.*,
315 B.R. 24 (Bankr. D. Del. 2004) ......................................................................17

*In re Aphton Corp.*,
423 B.R. 76 (Bankr. D. Del. 2010) ......................................................................16

*In re Argus Grp. 1700, Inc.* v. *Steinman*,
1997 WL 87623 (E.D. Pa. Feb. 20, 1997) ............................................................9

*In re Art Inst. of Phila. LLC*,
2022 WL 18401591 (Bankr. D. Del. Jan. 12, 2022)..............................................18

*In re Autobacs Strauss, Inc.*,
473 B.R. 525 (Bankr. D. Del. 2012) ....................................................................21

*In re Bernard L. Madoff Inv. Sec. LLC*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014)..................................................................23

*Blattman* v. *Siebel*,
2017 WL 10604023 (D. Del. July 31, 2017) ........................................................24

*In re Broadstripe, LLC*,
444 B.R. 51 (Bankr. D. Del. 2010) ......................................................................21

*In re Cambridge Indus. Holdings, Inc.*,
2006 WL 516764 (D. Del. Mar. 2, 2006) .............................................................17

*Campaign Registry, Inc.* v. *Tarone*,
2024 WL 3105524 (S.D.N.Y. June 24, 2024) ......................................................15

*Cresci* v. *Gyess*,
2019 WL 1529964 (D.N.J. Apr. 8, 2019) .............................................................16

*In re Del. Valley Lift Truck Inc.*,
640 B.R. 342 (Bankr. E.D. Pa. 2022) ....................................................................9

*Doering* v. *Union Cnty. Bd. of Chosen Freeholders*,
857 F.2d 191 (3d Cir. 1988)..................................................................................8

*Dura Sys., Inc.* v. *Rothbury Invs., Ltd.*,
886 F.2d 551 (3d Cir. 1989).................................................................8

*Farmers Co-op. Co.* v. *Comm'r*,
822 F.2d 774 (8th Cir. 1987) ...........................................................12

*In re FBI Wind Down, Inc.*,
614 B.R. 460 (Bankr. D. Del. 2020) .................................................20

*Fellheimer, Eichen & Braverman, P.C.* v. *Charter Techs., Inc.*,
57 F.3d 1215 (3d Cir. 1995)...............................................................9

*In re FTX Trading Ltd.*,
2024 WL 4562675 (Bankr. D. Del. Oct. 23, 2024) .......................18, 20

*In re FTX Trading Ltd.*,
2025 Bankr. LEXIS 2773 (Bankr. D. Del. Oct. 27, 2025)........20, 22, 23

*Gaiardo* v. *Ethyl Corp.*,
835 F.2d 479 (3d Cir. 1987)...........................................................8, 9

*In re Grasso*,
490 B.R. 500 (Bankr. E.D. Pa. 2013) ...............................................11

*Harsco Corp.* v. *Zlotnicki*,
779 F.2d 906 (3d Cir. 1985).............................................................10

*In re Hodge*,
1992 WL 613691 (Bankr. E.D. Va. June 30, 1992)...........................18

*Howard Hess Dental Lab'ys Inc.* v. *Dentsply Int'l, Inc.*,
602 F.3d 237 (3d Cir. 2010)........................................................10, 13

*In re Lason, Inc.*,
309 B.R. 441 (Bankr. D. Del. 2004) .................................................18

*Mary Ann Pensiero, Inc.* v. *Lingle*,
847 F.2d 90 (3d Cir. 1988).............................................................8, 14

*Max's Seafood Cafe ex rel. Lou-Ann, Inc.* v. *Quinteros*,
176 F.3d 669 (3d Cir. 1999).............................................................10

*In re Maxus Energy Corp.*,
571 B.R. 650 (Bankr. D. Del. 2017) .................................................10

*In re Miller*,
730 F.3d 198 (3d Cir. 2013)...............................................................8

*Mirtech, Inc.* v. *Agrofresh, Inc.*,
    2025 WL 359757 (D. Del. Jan. 31, 2025) ............................................................................25

*Nielsen* v. *Preap*,
    586 U.S. 392 (2019) ............................................................................................................14

*Oliveri* v. *Thompson*,
    803 F.2d 1265 (2d Cir. 1986) ..............................................................................................9

*In re Rhythms NetConnections Inc.*,
    300 B.R. 404 (Bankr. S.D.N.Y. 2003) ...............................................................................17

*Rich* v. *Taser Int'l, Inc.*,
    2012 WL 3155137 (D. Nev. Aug. 2, 2012) .........................................................................25

*Roor Int'l BV* v. *Stinky's Smoke Shop, LLC*,
    2021 WL 5514594 (E.D. Tex. Nov. 24, 2021) ....................................................................25

*In re Schaefer Salt Recovery, Inc.*,
    542 F.3d 90 (3d Cir. 2008) ...................................................................................................9

*Schlaifer Nance & Co.* v. *Estate of Warhol*,
    194 F.3d 323 (2d Cir. 1999) .................................................................................................9

*Smith* v. *Psychiatric Sols., Inc.*,
    750 F.3d 1253 (11th Cir. 2014) .........................................................................................25

*In re Syntax-Brillian Corp.*,
    573 F. App'x 154 (3d Cir. 2014) ........................................................................................19

*In re TE Holdcorp, LLC*,
    2022 WL 951553 (D. Del. Mar. 30, 2022), *aff'd*, 2023 WL 418059 (3d Cir.
    Jan. 26, 2023) .....................................................................................................................15

*Tiger Supplies Inc.* v. *MAV Assocs. LLC*,
    2022 WL 195858 (D.N.J. Jan. 21, 2022) .............................................................................8

*United States* v. *Johnman*,
    948 F.3d 612 (3d Cir. 2020) ...............................................................................................15

*United States ex rel. Morgan* v. *Champion Fitness, Inc.*,
    2019 WL 693254 (C.D. Ill. Feb. 19, 2019) ........................................................................24

*Vitalis* v. *Sun Constructors, Inc.*,
    2024 WL 4298921 (D.V.I. Sept. 25, 2024) ..........................................................................9

*Wartsila NSD N. Am., Inc.* v. *Hill Int'l, Inc.*,
    315 F. Supp. 2d 623 (D.N.J. 2004) ....................................................................................24

*In re Zohar III, Corp.*,
    639 B.R. 73 (Bankr. D. Del. 2022), *aff'd*, 620 F. Supp. 3d 147 (D. Del. 2022)...............21, 22

*Zuk* v. *E. Pa. Psychiatric Inst. of the Med. Coll. of Pa.*,
    103 F.3d 294 (3d Cir. 1996)........................................................................................9

**Statutes**

11 U.S.C. § 31(E)........................................................................................................21

11 U.S.C. § 105(a) ........................................................................................................9

11 U.S.C. § 544(b) ......................................................................................................18

11 U.S.C. § 548(a)(1)(A) ............................................................................................18

11 U.S.C. § 548(a)(1)(B) ............................................................................................18

28 U.S.C. § 1927 ..........................................................................................................9

**Other Authorities**

Fed. R. Bankr. P. 9011...........................................................................................8, 24

Fed. R. Civ. P. 11 Advisory Committee Notes to 1993 Amendment ...........................24

Fed. R. Civ. P. 19......................................................................................................20

## PRELIMINARY STATEMENT[1]

The Court should view Mr. Rheingans-Yoo's Sanctions Motion for what it is: a litigation tactic designed to deter the Trust from pursuing valid claims and to divert attention from Mr. Rheingans-Yoo's own misconduct and that of his counsel.

The Sanctions Motion argues that the Trust's Motion for Reconsideration and Amended Complaint should fail on the merits, but does nothing to explain how they are *sanctionable*—because they are not. *See, e.g.*, Sanctions Mot. ¶ 7 (arguing that "the Trust cannot be successful here as to Ross" and that the Trust's equitable subordination claim is "subject to dismissal"); ¶ 49 (describing the standard necessary to "obtain relief under Rule 59(b)" and arguing that the Trust cannot meet that standard); ¶ 74 ("The truth is that the Trust cannot state a claim . . . .").[2]  The accusations of misconduct leveled against the Trust in the Sanctions Motion are particularly ironic given the repeated misrepresentations that Mr. Rheingans-Yoo's counsel made to the Court concerning the FDU Claim.

As this Court is aware, at the June 25, 2025 hearing on Mr. Rheingans-Yoo's FDU Claim, Mr. Rheingans-Yoo's counsel repeatedly represented to the Court that Mr. Rheingans-Yoo did not personally seek to be paid the $650,000 FDU Claim.  *See* Hearing Tr. 32:11-12 ("[I]t's not our position that Ross should be paid this FDU claim."); *id.* at 39:14-16 ("Ross does not seek to

---

[1]    Terms not defined herein shall have the same meaning as used in the *Debtors' Objection to Proof of Claim Filed By Ross Rheingans-Yoo* [D.I. 3409], the *Reply of FTX Recovery Trust in Further Support of Debtors' Objection to Ross Rheingans-Yoo's Claim* [D.I. 30712], and the *Motion for Reconsideration or to Modify Order Allowing Rheingans-Yoo's FDU Claim* (the "Reconsideration Motion") [D.I. 31846].  The Trust refers to *Ross Rheingans-Yoo's Motion for Sanctions* [D.I. 32780; Adv. D.I. 60] as the "Sanctions Motion."

[2]    Indeed, entire sections of the Sanctions Motion are identical, or nearly identical, to sections of Mr. Rheingans-Yoo's *Opposition to the Trust's Reconsideration Motion* [D.I. 32779] ("Reconsideration Opposition" or "Reconsideration Opp.") and *Motion to Dismiss the Amended Complaint* ("Dismissal Motion" or "Dismissal Mot.") [Adv. D.I. 62].  *Compare* Sanctions Mot. ¶¶ 4-5, *with* Reconsideration Opp. ¶¶ 7-8; *compare* Sanctions Mot. ¶¶ 14-15, *with* Reconsideration Opp. ¶¶ 13-14; *compare* Sanctions Mot. ¶ 19, *with* Reconsideration Opp. ¶ 17; *compare* Sanctions Mot. ¶¶ 49-50, *with* Reconsideration Opp. ¶¶ 60-62; *compare* Sanctions Mot. ¶¶ 65-72, *with* Dismissal Mot. ¶ 55-62.

be paid that money, but Ross has the property right to direct the Debtor to pay that money."). The Court relied on those representations in allowing the FDU Claim. *See id.* at 46:15-17 ("Mr. [Rheingans-]Yoo has indicated that he is not seeking to receive payment of the claim; he would like it directed to the charity."). Mr. Rheingans-Yoo then designated Manifold for Charity as the beneficiary of the FDU Claim. The Trust's investigation of Manifold for Charity, however, revealed that Mr. Rheingans-Yoo serves as a director for Manifold for Charity and is eligible to receive payments for his service. The Trust also discovered that Manifold for Charity had ultimately received a pre-petition avoidable transfer from the Debtors, and that the Debtors had already filed an adversary proceeding seeking to avoid that fraudulent transfer from a related entity.

After the Trust filed the Amended Complaint and Motion for Reconsideration, the Trust learned in a call with Mr. Rheingans-Yoo's counsel that Mr. Rheingans-Yoo actually intended to transfer the $650,000 to an *account in his own name* at Manifold for Charity—not to an account controlled by Manifold for Charity—which would enable Mr. Rheingans-Yoo to direct those funds as he wished (including to an entity he controls). That revelation directly contradicts prior representations counsel for Mr. Rheingans-Yoo made to the Court. It also explains why Mr. Rheingans-Yoo's counsel was so coy during the June 25 hearing about what charity Mr. Rheingans-Yoo would designate as the beneficiary of the FDU Claim: Mr. Rheingans-Yoo was scheming to deposit the money into an account in his own name and from which he could direct future transfers in a deceitful attempt to circumvent this Court's oversight over Trust assets. *See* Hearing Tr. 38:10-39:11 ("THE COURT: Let me ask you this: Why haven't you designated the charity . . . Why don't we know who this alleged charity would be? I have concerns about

that. . . . [MR. SIMON:] It's just, procedurally, we were baffling over whether the [FDU Claim] was allowable.").

The Sanctions Motion conspicuously omits this material misrepresentation. Instead, the Sanctions Motion points the finger at the Trust and argues that the Trust is "actually concern trolling." Sanctions Mot. ¶ 70. Putting aside Mr. Rheingans-Yoo's misrepresentations and improper attempt to litigate the merits of the Reconsideration Motion and the Amended Complaint in the context of the Sanctions Motion, the Sanctions Motion still fails. The Reconsideration Motion and the Amended Complaint are objectively reasonable and brought for *bona fide* purposes. Contrary to Mr. Rheingans-Yoo's arguments, the Trust identified new evidence that warrants reconsideration of the Court's July 9 Order allowing the FDU Claim, including the identity of the beneficiary of the FDU Claim, and the attempt to pay the FDU Claim to an account in Mr. Rheingans-Yoo's name. Reconsideration is further warranted to prevent the obvious manifest injustice that would result from allowing Mr. Rheingans-Yoo to direct a $650,000 "donation" into an account in his name (and potentially thereafter to an entity he controls) despite having represented to the Court that he did not intend to "be paid that money." There is nothing patently frivolous or vexatious about seeking reconsideration based on these alarming facts, especially because the Court *explicitly directed* the parties to raise disputes regarding the designated beneficiary with the Court. *See* Hearing Tr. 46:22-25.

Mr. Rheingans-Yoo's attempt to mischaracterize the Trust's Amended Complaint as sanctionable similarly fails. The Amended Complaint pleads plausible fraudulent transfer claims to avoid the *pre-petition obligation* to pay the $650,000 to a charity. Mr. Rheingans-Yoo's purported redesignation of the beneficiary of the FDU Claim (*after* the Trust caught him in his lie) does not change that outcome. Neither Mr. Rheingans-Yoo's dissatisfaction that the Trust is

entitled to pursue avoidance of the FDU Obligation regardless of what entity is the designated beneficiary, nor his irrelevant insistence that he "did nothing wrong," warrants sanctions. Sanctions Mot. ¶ 17.  Because the Amended Complaint pleads plausible avoidance claims, the Trust's claims for recovery, disallowance, and subordination are objectively colorable, and Mr. Rheingans-Yoo's attempt to litigate the merits of those claims in the Sanctions Motion should be rejected.

## **STATEMENT OF FACTS**

In 2021, Samuel Bankman-Fried formed the FTX Foundation, Inc. to make donations and grants to Effective Altruist causes.[3]  The FTX Foundation claimed on its website that it "works to save lives, prevent suffering and build a flourishing future."  Am. Compl. ¶ 35. In reality, very few of the FTX Foundation's donations directly benefitted the needy.  *Id.*  Its largest donations went to associates of Bankman-Fried and others in the Effective Altruism movement. *Id.*  The FTX Foundation's donations were intentionally designed to burnish Bankman-Fried's public image as a do-gooder even as he orchestrated one of the largest fraudulent schemes in U.S. history.  *Id.*

In early 2022, Mr. Rheingans-Yoo moved into Bankman-Fried's $30 million penthouse in the Bahamas to begin working on Bankman-Fried's purported philanthropic initiatives—first, at the FTX Foundation, and later, as a director at Latona Biosciences Group ("Latona").  Latona was a sham Bahamian non-profit entity that Bankman-Fried and Mr. Rheingans-Yoo used to make investments, funded entirely by Alameda, in lifesciences companies

---

[3]      The FTX Foundation, Inc. was a non-profit, non-stock corporation incorporated in Delaware on February 1, 2022. On July 1, 2022, FTX Foundation, Inc. filed with the Delaware Secretary of State a Restated Certificate of Incorporation changing its name to FTX Philanthropy, Inc.  For simplicity, the Trust will refer to the FTX Foundation, Inc. and its successor FTX Philanthropy, Inc. collectively as the "FTX Foundation."

that they "prefer[red] not [] be disclosed on Bahamian entity [Alameda's] balance sheet."  Am. Compl. ¶¶ 9, 44.

Although Mr. Rheingans-Yoo worked for Latona ("an entity under the umbrella of the FTX Foundation 'brand'"), Mr. Rheingans-Yoo was nominally employed by Debtor Alameda Research (Bahamas) Ltd. as a Trader & Investment Associate, despite performing no actual work for that entity.  *Id*. ¶ 45.  On or about September 1, 2022, Bankman-Fried created and shared a Google document with Mr. Rheingans-Yoo (the "Bonus Memo"), wherein Bankman-Fried promised Mr. Rheingans-Yoo, on top of a personal cash bonus for his purported "work" for Alameda Research (Bahamas) Ltd., that Mr. Rheingans-Yoo could "get another $650k of directed grants to any EA [Effective Altruist]-driven cause if you want."  *Id*.  Mr. Rheingans-Yoo never informed anyone at the FTX Group prior to the commencement of these Chapter 11 Cases that he had designated "an EA-driven cause to receive the $650,000" directed grant.  *Id*.

On June 29, 2023, Mr. Rheingans-Yoo filed a non-customer claim numbered 5166, and a duplicative claim numbered 89710, against Alameda Research (Bahamas) Ltd., requesting payment of the $650,000 directed grant (the "FDU Claim").  The Trust objected to the FDU Claim, and following a hearing on the Trust's objection, on June 25, 2025, the Court allowed the FDU Claim, determining that Mr. Rheingans-Yoo had standing to assert the claim, and a "personal interest" in the bonus.  Hearing Tr. 46:2-4.

Following the allowance of Mr. Rheingans-Yoo's FDU Claim, counsel for Mr. Rheingans-Yoo informed the Trust via e-mail that Mr. Rheingans-Yoo had designated Manifold

for Charity as the recipient of the $650,000 FDU Claim.  Wheeler Decl. ¶ 2.[4]  The e-mail included a link to wire transfer instructions for a bank account in the name of Manifold for Charity.  *Id.*

The Trust immediately identified Manifold for Charity as the "charitable arm" of Manifold Markets, an entity against which the Trust had already commenced an adversary proceeding to recover fraudulent transfers.  The Trust also identified that Mr. Rheingans-Yoo shared undisclosed connections to Manifold for Charity, including that Mr. Rheingans-Yoo serves as a director of Manifold for Charity's Board.  Moreover, according to Manifold for Charity's publicly available bylaws, members of its Board of Directors may be eligible for compensation for their service.  *See* Reconsideration Mot. ¶¶ 36-41.

As the Court had instructed it to do, the Trust raised these issues concerning the designated beneficiary by filing the Reconsideration Motion on July 23, 2025.  *See* Hearing Tr. 46:22-25 ("If there's dispute, with respect to . . . the charity that is designated; that issue is not before me today and I would entertain the dispute, if there is one.").  Contemporaneously, the Trust filed the Amended Complaint, seeking to avoid, *inter alia*, the FDU Obligation, and to subordinate the FDU Claim based on Mr. Rheingans-Yoo's inequitable conduct.

Following the filing of the Reconsideration Motion and Amended Complaint, the Trust had a video meeting with counsel for Mr. Rheingans-Yoo on August 8, 2025.  Wheeler Decl. ¶ 3.  During the August 8 call, counsel for Mr. Rheingans-Yoo revealed, only after very direct questions from counsel for the Trust, that the $650,000 would be paid into Mr. Rheingans-Yoo's account at Manifold for Charity.  *Id.*  Counsel for the Trust stated that the Court's July 9 Order did not allow payment to an account in Mr. Rheingans-Yoo's name.  *Id.* ¶ 4.

---

[4]    Plaintiff relies on the *Declaration of Stephanie G. Wheeler* filed in connection with the Reconsideration Motion.  [D.I. 33035].

On August 14, 2025, after having revealed his misrepresentations to the Court, counsel for Mr. Rheingans-Yoo sent an e-mail to counsel for the Trust stating that Mr. Rheingans-Yoo was "chang[ing] his designation from Manifold for Charity" and "hereby designate[d] a different Effective Altruism charity: 1DaySooner, Inc." as the beneficiary of the FDU Claim. Wheeler Decl. ¶ 5. Counsel for Mr. Rheingans-Yoo demanded that the Trust "confirm by noon on Monday, August 18, 2025, that the debtors have accepted the changed beneficiary and will withdraw the motion to reconsider and dismiss the amended adversary complaint as to Ross." *Id.* Counsel for the Trust responded on August 15, 2025 that the "Court's July 9 order does not permit Rheingans-Yoo to substitute another charity for the one he originally designated," and stated that the Trust would not withdraw either filing. Wheeler Decl. ¶ 6.

On August 21, 2025, counsel for Mr. Rheingans-Yoo sent a letter notifying the Trust that Mr. Rheingans-Yoo would seek sanctions if the Reconsideration Motion and Amended Complaint were not withdrawn, and attached a draft sanctions motion. On September 11, 2025, the Trust responded to Mr. Rheingans-Yoo's letter and draft motion, explaining the *bona fide* purposes of the pleadings, and stating that the Trust would not agree to withdraw the filings. Wheeler Decl. ¶ 7; Ex. 3. On September 18, 2025, counsel for Mr. Rheingans-Yoo sent another letter stating that Mr. Rheingans-Yoo still intended to pursue sanctions, but sought an additional four weeks to respond to the pleadings so the Trust could "properly consider whether to withdraw the pleadings." Wheeler Decl. ¶ 8; Ex. 4. On September 22, 2025, the Trust responded and stated that it would not withdraw the pleadings. Wheeler Decl. ¶ 9; Ex. 5. On September 26, 2025, Mr. Rheingans-Yoo opposed the Reconsideration Motion, moved to dismiss the Amended Complaint, and filed the Sanctions Motion.

## **LEGAL STANDARD**

A court may sanction a party pursuant to Federal Rule of Bankruptcy Procedure 9011 only in the most "exceptional circumstance." *Dura Sys., Inc.* v. *Rothbury Invs., Ltd.*, 886 F.2d 551, 556 (3d Cir. 1989); *see also In re Miller*, 730 F.3d 198, 204 n.4 (3d Cir. 2013) ("Bankruptcy Rule 9011 is the equivalent sanctions rule to Rule 11 . . . and cases decided pursuant to [Rule 11 also] apply to Rule 9011."). Sanctions are warranted only where a claim or motion is "patently unmeritorious or frivolous." *Dura Sys., Inc.*, 886 F.2d at 556. A pleading does not violate Rule 9011 if its legal contentions are "warranted by existing law" and its factual contentions either have evidentiary support or are "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Bankr. P. 9011. The standard for imposing sanctions is "stringent" because sanctions: "1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes . . . 2) tend to spawn satellite litigation counter-productive to efficient disposition of cases . . . and 3) increase tensions among the litigating bar and between [the] bench and [the] bar." *Doering* v. *Union Cnty Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988).

Rule 9011 "should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories." *Mary Ann Pensiero, Inc.* v. *Lingle*, 847 F.2d 90, 94 (3d Cir. 1988). Moreover, Rule 9011 is an inappropriate vehicle for resolving the merits of factual and legal claims. *See Gaiardo* v. *Ethyl Corp.*, 835 F.2d 479, 485 (3d Cir. 1987); *see also Tiger Supplies Inc.* v. *MAV Assocs. LLC*, 2022 WL 195858, at *1 (D.N.J. Jan. 21, 2022). "[W]hen issues are close, the invocation of Rule [90]11 borders on the abusive," and the misuse of Rule 9011 as a "tactic of intimidation and harassment" can also "invite retribution from courts." *Gaiardo*, 835 F.2d at 483, 485. Ultimately, sanctions are warranted "only when it is patently clear that a claim

has absolutely no chance of success." *Oliveri* v. *Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) (internal citations and quotation marks omitted).

The standard for sanctions under 28 U.S.C. § 1927 is higher still. Sanctions pursuant to Section 1927 are not warranted unless *clear and convincing evidence* establishes that an attorney has (i) multiplied proceedings; (ii) in an unreasonable and vexatious manner; (iii) thereby increasing the costs of the proceedings. *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008); *Vitalis* v. *Sun Constructors, Inc.*, 2024 WL 4298921, at *6 (D.V.I. Sept. 25, 2024) (collecting cases) Moreover, before imposing sanctions under Section 1927, the Court must find that the objectionable conduct was undertaken willfully in bad faith. *Zuk* v. *E. Pa. Psychiatric Inst. of the Med. Coll. of Pa.*, 103 F.3d 294, 297-98 (3d Cir. 1996); *Gaiardo*, 835 F.2d at 484; *see also In re Argus Grp. 1700, Inc.* v. *Steinman*, 1997 WL 87623, at *2 (E.D. Pa. Feb. 20, 1997) ("[T]he imposition of [Section] 1927 sanctions is a power which the courts should exercise only in instances of a serious and studied disregard for the orderly process of justice." (internal citations and quotation marks omitted)). "[B]ad faith may be inferred only if actions are so completely without merit as to *require* the conclusion that they must have been undertaken for some improper purpose such as delay." *Schlaifer Nance & Co.* v. *Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (emphasis added).

Section 105 allows bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). However, as with Section 1927, "a finding of bad faith or willful misconduct must be explicit to award monetary sanctions" pursuant to Section 105. *In re Del. Valley Lift Truck Inc.*, 640 B.R. 342, 366 (Bankr. E.D. Pa. 2022); *see also Fellheimer, Eichen & Braverman, P.C.* v. *Charter Techs., Inc.*, 57 F.3d 1215, 1225 (3d Cir. 1995).

## ARGUMENT

## I.    THE RECONSIDERATION MOTION IS NOT SANCTIONABLE.

The Reconsideration Motion is objectively reasonable, and the Trust believed at the time of filing—and continues to believe—that the Reconsideration Motion is well supported by both the facts and the law.  The Reconsideration Motion was not filed with an intent to improperly multiply proceedings or harass Mr. Rheingans-Yoo.  Rather, the Trust invoked the very procedure that this Court had contemplated and authorized for resolving issues about the designated beneficiary:  "If there's dispute, with respect to . . . the charity that is designated . . . I would entertain the dispute, if there is one."  *See* Hearing Tr. 46:22-25.  As demonstrated below, Mr. Rheingans-Yoo does not carry his heavy burden to establish with admissible evidence that the Reconsideration Motion is patently frivolous or vexatiously brought.

### A.    The Trust Both Presented New Evidence Warranting Reconsideration and Identified a Manifest Injustice.

The Trust moved for reconsideration pursuant to Federal Rule of Civil Procedure 59 and Federal Rules of Bankruptcy Procedure 3008 and 9023.  Reconsideration Mot. ¶ 1.  Under Rule 59, a party may seek relief from an order when, *inter alia*, new evidence becomes available, or there is a need to prevent manifest injustice.  *See, e.g.*, *Harsco Corp.* v. *Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985); *In re Maxus Energy Corp.*, 571 B.R. 650, 654 (Bankr. D. Del. 2017); *Max's Seafood Cafe ex rel. Lou-Ann, Inc.* v. *Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

"[N]ew evidence in this context means evidence that a party could not earlier [have] submit[ted] to the court because that evidence was not previously available."  *Howard Hess Dental Lab'ys Inc.* v. *Dentsply Int'l, Inc.*, 602 F.3d 237, 252 (3d Cir. 2010).  Manifest injustice is an error "that is direct, obvious, and observable," and reconsideration is warranted where the record is "so

patently unfair and tainted that the error is manifestly clear to all who view it." *In re Grasso*, 490 B.R. 500, 527 (Bankr. E.D. Pa. 2013).

Mr. Rheingans-Yoo's assertion that the Trust has not identified any new evidence that was unavailable before the June 25, 2025 Hearing on the FDU Claim is incorrect. *See* Sanctions Mot. ¶¶ 45-50. At the time of the Hearing, neither the Trust nor the Court knew the identity of the designated beneficiary of the $650,000 FDU Claim because counsel for Mr. Rheingans-Yoo refused to disclose that information, even in response to the Court's questions. Hearing Tr. 38:10-14 ("Let me ask you this: Why haven't you designated the charity? . . . Why don't we know who this alleged charity would be? I have concerns about that."). Only in a July 2, 2025 e-mail to the Trust's counsel—*i.e.*, after the Court had allowed the FDU Claim—did Mr. Rheingans-Yoo first identify Manifold for Charity as the designated beneficiary of the FDU Claim. Wheeler Decl. ¶ 2; Ex. 1. Thereafter, the Trust promptly investigated Manifold for Charity and identified that Mr. Rheingans-Yoo serves as a director of that entity's Board, that the entity had received an avoidable pre-petition transfer from the Debtors, and that the Trust was actively litigating against a related entity.[5] Mr. Rheingans-Yoo's failure to disclose that he intended to designate a beneficiary on whose Board he sits and that had received avoidable pre-petition transfers from the FTX Group raised significant concerns for the Trust. For example, the Trust was concerned that Mr. Rheingans-Yoo's position as a director could result in him receiving compensation derived from the FDU Bonus in accordance with Manifold for Charity's bylaws.[6] Reconsideration Mot. ¶¶ 39, 47.

---

[5]     Contrary to Mr. Rheingans-Yoo's suggestion, he did not disclose to the Trust or the Court his position as a director of Manifold for Charity simply by posting about it on his "public website." *See* Sanctions Mot. ¶ 19.

[6]     Mr. Rheingans-Yoo's contention that Manifold for Charity has not yet "paid its directors for their service," *see* Sanctions Mot. ¶ 58, comes nowhere close to making the Trust's reasonable belief sanctionable. The mere "fact

Mr. Rheingans-Yoo's conduct since the filing of the Reconsideration Motion and the Amended Complaint have only confirmed that the Trust's concerns were entirely justified. During an August 8, 2025 call, counsel for Mr. Rheingans-Yoo revealed that Mr. Rheingans-Yoo intended to transfer the $650,000 FDU Bonus into an account *in Mr. Rheingans-Yoo's name* at Manifold for Charity, rather than an account in the name of and controlled by Manifold for Charity. Wheeler Decl. ¶¶ 3-4. This admission confirmed the Trust's belief that Mr. Rheingans-Yoo's designation of Manifold for Charity reflected an intent to "lin[e] his own pockets and those of his friends at the expense of FTX creditors." Reconsideration Mot. ¶ 47. Indeed, counsel's admission that Mr. Rheingans-Yoo intended to direct the $650,000 "donation" to his own account (from which he could pay an entity he controls) confirms that the Sanctions Motion is not a legitimate filing, but rather a transparent effort to divert attention from Mr. Rheingans-Yoo's own misconduct, which itself warrants judicial scrutiny.

In addition, the revelation that Mr. Rheingans-Yoo intended to deposit the $650,000 into an account in his name contradicted representations that Mr. Rheingans-Yoo's counsel had made to this Court. *See* Hearing Tr. 32:11-12 ("[I]t's not our position that Ross should be paid this FDU claim."); *id.* at 39:14-16 ("Ross does not seek to be paid that money, but Ross has the property right to direct the Debtor to pay that money."). The Court relied on those (mis)representations in allowing the FDU Claim, notwithstanding its concerns that Mr. Rheingans-Yoo had refused to identify the intended beneficiary. *See id.* at 46:15-17 ("Mr. [Rheingans-]Yoo has indicated that he is not seeking to receive payment of the claim; he would like it directed to the charity."); *id.* at 38:10-14. Because the Trust learned of Mr. Rheingans-Yoo's designation,

---

that [a] right may not have been exercised in a specific instance does not mean that the right does not exist or will not be exercised at some point in the future." *Farmers Co-op. Co.* v. *Comm'r*, 822 F.2d 774, 779 n.8 (8th Cir. 1987).

omissions and misrepresentations only *after* the Court had allowed the FDU Claim, it was impossible for the Trust to have submitted them as evidence beforehand. *See Howard Hess Dental Lab'ys Inc.*, 602 F.3d at 252 ("new evidence" is "evidence that a party could not earlier submit to the court because that evidence was not previously available").

The Trust also reasonably identified a manifest injustice that would result if this Court permits Mr. Rheingans-Yoo to designate Manifold for Charity as the beneficiary, or to designate a replacement beneficiary. The Court must consider the larger context of these Chapter 11 Cases in determining whether a manifest injustice warrants reconsideration. *See* Reconsideration Mot. ¶¶ 4-5. As detailed in the Reconsideration Motion, the Trust has expended "significant efforts to recover fraudulent transfers from myriad 'charities' that were little more than outposts" for Bankman-Fried and his associates. *Id.* ¶ 46. And the Trust's investigation of Manifold for Charity revealed that the FDU Claim is effectively an extension of Bankman-Fried's fraud. The unearthing of the extensive connections between Manifold for Charity and the FTX Group is significant, because when considered alongside Mr. Rheingans-Yoo's lack of candor with the Court and the clear risk of self-dealing, there can be no doubt that Mr. Rheingans-Yoo's designation of Manifold for Charity and his intent to transfer the $650,000 into an account in his own name present a manifest injustice. Victims of the FTX fraud should be the beneficiaries of these funds, not Mr. Rheingans-Yoo.

Mr. Rheingans-Yoo's alternative argument that his employment agreement and the Bonus Memo do not "require[] Ross to designate an EA charity where . . . he would not be paid" is pretense. *See* Sanctions Mot. ¶ 58. The terms of those documents do not alter the fact that Mr. Rheingans-Yoo (mis)represented to the Court that he would not seek to pay himself and instead sought to pay a charity (not a donor-advised fund at a charity for which he served as a director,

and from which he could pay an entity he controlled).  Nor does it change the fact that the Court relied on these (mis)representations in allowing the FDU Claim to be paid to a charity.  Nor does it change that Mr. Rheingans-Yoo is shamelessly taking monies from FTX victims.

Because the Trust has discovered and raises new evidence, and seeks to address a manifest injustice, the Trust's Reconsideration Motion is objectively reasonable and is not sanctionable.

**B.      Mr. Rheingans-Yoo's Purported "Redesignation" of a New "Charity" Does Not Render the Reconsideration Motion Sanctionable.**

Mr. Rheingans-Yoo cannot cure his misconduct and misrepresentations to the Court by purporting to redesignate another charity as the beneficiary of the FDU Claim.  As an initial matter, and as discussed above, Mr. Rheingans-Yoo only "redesignated" the beneficiary of the FDU Claim *after* the Trust filed its Reconsideration Motion.  "Redesignation" after the fact does not render the Trust's Reconsideration Motion frivolous *at the time it was filed*, which is the relevant time period for Rule 9011 sanctions.  *See Mary Ann Pensiero, Inc.*, 847 F.2d at 95 ("[A] proper Rule [90]11 analysis should focus on the circumstances that existed at the time counsel filed the challenged paper.  Imposing a continuing duty on counsel to amend or correct a filing based on after-acquired knowledge is inconsistent with the Rule." (internal citation omitted)).

In addition, Mr. Rheingans-Yoo lacks the authority to unilaterally redesignate the beneficiary of the FDU Claim.  This Court's July 9 Order permitted distribution to "*the* Effective Altruism-driven charity" that Mr. Rheingans-Yoo designated in writing.  July 9 Order ¶ 3 (emphasis added).  It did not permit distribution to, for example, "*an* Effective Altruism-driven charity."  *See Nielsen* v. *Preap*, 586 U.S. 392, 408 (2019) ("[G]rammar and usage establish that 'the' is 'a function word . . . indicat[ing] that a following noun or noun equivalent is definite or has been previously specified by context.'" (quoting Merriam-Webster's Collegiate Dictionary

-14-

1294 (11th ed. 2005)); *United States* v. *Johnman*, 948 F.3d 612, 618 (3d Cir. 2020) ("As an indefinite article, 'a' or 'an' 'implies that the thing referred to is nonspecific.'" (quoting *Indefinite Article*, New Oxford American Dictionary (3d ed. 2010)).  Mr. Rheingans-Yoo cannot impose on the Trust his own interpretation of the Court's July 9 Order and then deem as sanctionable the Trust's refusal to agree with it.  *See In re TE Holdcorp, LLC*, 2022 WL 951553, at *10 (D. Del. Mar. 30, 2022) (bankruptcy court is "the proper venue for interpreting and enforcing its own orders"), *aff'd*, 2023 WL 418059 (3d Cir. Jan. 26, 2023).

Moreover, in the July 9 Order, the Court expressly reserved jurisdiction to address any disputes about the designation of the beneficiary and expressly conferred upon the Trust the right "to evaluate and object to the Designated Beneficiary"—which is the basis of the Reconsideration Motion.  *See* July 9 Order ¶¶ 3, 8; *see also* Hearing Tr. 46:22-25 ("If there's dispute, with respect to . . . the charity that is designated; that issue is not before me today and I would entertain the dispute, if there is one.").  Mr. Rheingans-Yoo's *ipse dixit* that "[t]he Trust has no right to object to the distribution of the FDU claim to an EA charity" thus flies in the face of the July 9 Order.  Sanctions Mot. ¶ 14.

*       *       *

Having now been caught both withholding and misrepresenting key information to the Court and the Trust, Mr. Rheingans-Yoo cannot be heard to cry foul when the Trust seeks to present this evidence in accordance with the Court's instructions.  *Cf. Campaign Registry, Inc.* v. *Tarone*, 2024 WL 3105524, at *1 n.1 (S.D.N.Y. June 24, 2024) ("The motion is denied simply on the basis that it seeks to strike a document whose submission the Court invited.").  Nor does Mr. Rheingans-Yoo even attempt to offer any affirmative evidence to satisfy his high burden for sanctions.  If Mr. Rheingans-Yoo disagrees with the legal sufficiency of the Trust's evidence, then

his proper recourse is to oppose the Reconsideration Motion—which he has done—not to seek sanctions. The Court should not dignify Mr. Rheingan-Yoo's explicit attempt to "chill[] legitimate advocacy." *Cresci* v. *Gyess*, 2019 WL 1529964, at *4 (D.N.J. Apr. 8, 2019); *see also In re Aphton Corp.*, 423 B.R. 76, 96 (Bankr. D. Del. 2010) ("[Rule 9011] is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." (internal citations and quotation marks omitted)).[7]

## II.   THE AMENDED COMPLAINT IS NOT SANCTIONABLE.

The Sanctions Motion's scattershot arguments that the Amended Complaint is sanctionable likewise fail. The Sanctions Motion repeatedly argues that the Amended Complaint fails to state a claim, and that Mr. Rheingans-Yoo is therefore entitled to sanctions. *See, e.g.*, Sanctions Mot. ¶ 72 ("Because the Trust cannot allege a fraudulent transfer claim against Ross, its causes of action under sections 502 and 550 are sanctionable."); *id.* ¶ 74 ("The truth is that the Trust cannot state a claim for equitable subordination"). But the Sanctions Motion misunderstands the Amended Complaint and applicable law, fails to articulate any cognizable basis for sanctions, and improperly seeks to litigate the merits of the Amended Complaint in a collateral proceeding. This Court should deny the Sanctions Motion with respect to the Amended Complaint.

### A.   The Trust's Attempt to Avoid the FDU Obligation as Fraudulent Is Not Sanctionable.

The Court's July 9 Order determined that the Bonus Memo created a pre-petition obligation for the FTX Group to pay $650,000 to the Effective Altruism-driven charity designated

---

[7]   Mr. Rheingans-Yoo also argues that the Reconsideration Motion's request for alternative relief is itself sanctionable because, he contends, the Trust "baldly claims" that the FDU Claim is a "fraudulent conveyance" as part of its request for alternative relief. Sanctions Mot. ¶ 22. But the Sanctions Motion entirely omits (a) that the Trust stated that it would be "*seek[ing]*" in its contemporaneously-filed Amended Complaint "*to avoid as a fraudulent conveyance* the obligation under the FDU Claim," and (b) that the Amended Complaint provides further allegations supporting its argument. *See* Reconsideration Mot. ¶ 51 (emphasis added).

by Mr. Rheingans-Yoo, and that Mr. Rheingans-Yoo therefore held a valid claim against the Trust. *See* Hearing Tr. 46:2-4 (finding that Mr. Rheingans-Yoo has "personal interests in the FDU and the bonus"); July 9 Order ¶ 3. The Court explicitly recognized, however, that the Trust could seek to avoid that obligation if the FDU Claim were allowed. *See* Hearing Tr. 40:14-41:10. Furthermore, the July 9 Order explicitly reserved the Trust's "rights under the Bankruptcy Code or any other applicable law." July 9 Order ¶ 5. The Sanctions Motion's assertion that the allowance of the FDU Claim is "the end of the inquiry" is thus wrong. Sanctions Mot. ¶ 5. Indeed, a trustee does not waive the right to initiate an avoidance action against a creditor to whom objections were made and adjudicated on other grounds. *See In re Cambridge Indus. Holdings, Inc.*, 2006 WL 516764, at *2-3 (D. Del. Mar. 2, 2006); *In re AmeriServe Food Distrib., Inc.*, 315 B.R. 24, 34 (Bankr. D. Del. 2004) ("[Section] 502(d) [does not] prohibit a preference action that is commenced after a claim is allowed."); *In re Rhythms NetConnections Inc.*, 300 B.R. 404, 410 (Bankr. S.D.N.Y. 2003) ("A debtor is not required to assert an avoidable transfer as a counterclaim to a proof of claim . . . .").[8] The Trust's pursuit of a legal pathway preserved by this Court's July 9 Order and applicable precedent is objectively reasonable and not sanctionable.

Contrary to the mischaracterizations in the Sanctions Motion, the Amended Complaint seeks to avoid, *inter alia*, the Debtor's *pre-petition obligation* to Mr. Rheingans-Yoo to pay the FDU Bonus to the designated beneficiary. *See* Am. Compl. ¶¶ 55, 62, 69, 78 (seeking avoidance of pre-petition transfers and the FDU Obligation). Indeed, we now know that this is not a bonus at all but another creative way in which Bankman-Fried and his cohorts funneled cash surreptitiously to various so-called charities to the detriment of customers. The Bankruptcy Code

---

[8]    When counsel for the Trust explained this to counsel for Mr. Rheingans-Yoo prior to his filing this Sanctions Motion, counsel for Mr. Rheingans-Yoo agreed "that a trustee does not waive the right to initiate an avoidance action against a creditor whose claim was objected to and adjudicated on other grounds." Wheeler Decl. Ex. 4, p. 3.

expressly contemplates the avoidance of pre-petition obligations, and is not strictly limited to transfers. *See* 11 U.S.C. §§ 544(b), 548(a)(1)(A), 548(a)(1)(B); *see also In re Art Inst. of Phila. LLC*, 2022 WL 18401591, at *18 n.109 (Bankr. D. Del. Jan. 12, 2022) ("The Bankruptcy Code . . . provide[s] for the possibility that the incurrence of [a] debt might itself be avoidable.").

In addition, as this Court has recognized in these Chapter 11 Cases, a pre-petition obligation remains avoidable even if the resulting payment would not occur until after the petition date. *See In re FTX Trading Ltd.*, 2024 WL 4562675, at *15 (Bankr. D. Del. Oct. 23, 2024). That is consistent with the "well settled [rule] that where an *obligation* to pay a debt arises prepetition, but the debt becomes due postpetition, that debt is prepetition for purposes of the Bankruptcy Code." *In re Hodge*, 1992 WL 613691, at *2 (Bankr. E.D. Va. June 30, 1992) (emphasis added) (citation omitted); *cf. In re Lason, Inc.*, 309 B.R. 441, 445 (Bankr. D. Del. 2004) ("The fact that payments under a contract come due after the bankruptcy filing does not alter the conclusion that the payments are prepetition obligations."). That this Court (and others) have recognized the validity of the very types of claims the Trust is pursuing here forecloses any contention that the pursuit of such claims is sanctionable.

Mr. Rheingans-Yoo also argues that the Trust's attempt to avoid the FDU Obligation is sanctionable because *he* did not receive any fraudulent *transfer*. *See* Sanctions Mot. ¶¶ 67-68. However, the Trust seeks to avoid a fraudulent *obligation*—the obligation to pay $650,000 to an EA charity of his choosing. As Mr. Rheingans-Yoo acknowledges, this Court recognized at the June 25, 2025 hearing that the FDU Obligation "was awarded to [him]" as part of "a prepetition discretionary bonus which required the Debtors to make a $650,000 donation to an EA cause." *Id.* ¶¶ 32, 69. Mr. Rheingans-Yoo further argues that he has a "personal interest in the FDU Bonus." *Id.* ¶ 32. It is thus reasonable for the Trust to sue Mr. Rheingans-Yoo to avoid

an obligation that he concedes was "awarded" to him as part of a bonus payment in which he retains a "personal interest."

> **B.    Mr. Rheingans-Yoo's Subjective Intent Does Not Render the Fraudulent Conveyance Claims Sanctionable.**

The Sanctions Motion's insistence that Mr. Rheingans-Yoo "did nothing wrong" is entirely irrelevant.  Sanctions Mot. ¶ 17; *see also id.* ¶ 12.  What Mr. Rheingans-Yoo did (or did not) do is beside the point for purposes of the fraudulent conveyance claims.  It is black-letter law that where an obligation is challenged, it is the obligor's intent (here, Bankman-Fried's)—not the obligee's—that is the focus of the inquiry.  *See In re Syntax-Brillian Corp.*, 573 F. App'x 154, 161 (3d Cir. 2014) ("Neither the Bankruptcy Code nor Delaware law refers to the intent of the obligee defendant as a factor in determining whether a specific obligation is fraudulent and therefore avoidable.").

Mr. Rheingans-Yoo's repeated assertion that his purported "redesignation" of the beneficiary of the FDU Claim—over three weeks after the Amended Complaint was filed—somehow cures any fraudulent intent and makes "[t]he Trust's continued prosecution of the Amended Complaint . . . sanctionable" is fundamentally misplaced.  *See* Sanctions Mot. ¶ 70.  The Trust does not contend that the FDU Obligation is avoidable because Mr. Rheingans-Yoo designated as the beneficiary an entity on whose Board he sits, or because of its other post-petition connections to the FTX Group.  Instead, the Trust contends that Bankman-Fried created the FDU Obligation with fraudulent intent *pre-petition*.  *See, e.g.*, Am. Compl. ¶¶ 35, 44-45, 50, 54-55, 62, 69, 78; *see also* Reconsideration Mot. ¶ 23.  Accordingly, even if Mr. Rheingans-Yoo *could* redesignate the beneficiary of the FDU Claim, the Trust would still be entitled to continue to pursue its claim against Mr. Rheingans-Yoo, as the obligation on which the claim is based would remain fraudulent.  The Trust, therefore, is not unjustifiably multiplying proceedings—the same number

of proceedings would exist whether Mr. Rheingans-Yoo designated Manifold for Charity or any other entity as the beneficiary. *See* Fed. R. Civ. P. 19 (party must be joined to action where "that person claims an interest relating to the subject of the action"); Hearing Tr. 32:11-14 ("[MR. SIMON]: He is asserting the claim because he has a right, a property right, a wage right, to direct the payment to a charity that he designates."); *id.* at 46:2-4 ("[THE COURT]: I do find that the claimant has standing to assert this claim, given his personal interests in the FDU and the bonus."). Mr. Rheingans-Yoo's dissatisfaction that the FDU Obligation is implicated in more than one proceeding cannot justify the extraordinary step of imposing sanctions here.

### C. The Section 502(d) and 550 Claims Are Not Sanctionable.

Because the Trust has pled an objectively colorable basis for its fraudulent conveyance claims, the Trust also objectively has pled reasonable claims for disallowance under Sections 502(d) and 550. This Court has previously held in these Chapter 11 Cases that where fraudulent conveyance claims survive a motion to dismiss, causes of action under Sections 502(d) and 550 are "permitted to proceed." *See In re FTX Trading Ltd.*, 2024 WL 4562675, at *15; *see also In re FBI Wind Down, Inc.*, 614 B.R. 460, 502 (Bankr. D. Del. 2020); *see also In re FTX Trading Ltd.*, 2025 Bankr. LEXIS 2773, at *19 (Bankr. D. Del. Oct. 27, 2025) ("Because Plaintiff's avoidance claims remain, Defendant's arguments with respect to [Section 502(d) and 550] are moot."). Indeed, the Sanctions Motion concedes that the Section 502(d) and 550 causes of action are not sanctionable where, as here, the Trust alleges a claim against Ross under Section 548. Sanctions Mot. ¶¶ 71-72. Accordingly, because the Trust has reasonably alleged fraudulent conveyance claims against Mr. Rheingans-Yoo, the Section 502(d) and 550 claims are not sanctionable.

**D.    The Equitable Subordination Claim Is Objectively Reasonable And Therefore Not Sanctionable.**

The Amended Complaint's equitable subordination claim under Section 510(c) is likewise not sanctionable.  A party states a claim for equitable subordination if "(a) the defendant engaged in some type of inequitable conduct; (b) the misconduct caused injury to the creditors or conferred an unfair advantage on the defendant; and (c) equitable subordination of the claim is consistent with bankruptcy law." *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 583 (Bankr. D. Del. 2012).  Whether "a creditor's claim should be subordinated is a fact-intensive inquiry," *id.*, and it depends in part on "'whether the claimant was an insider or outsider in relation to the debtor at the time of the act.'"  *In re Broadstripe, LLC*, 444 B.R. 51, 79 (Bankr. D. Del. 2010) (quoting *In re Mid-Am. Waste Sys., Inc.*, 284 B.R. 53, 69 (Bankr. D. Del. 2002)).

The Sanctions Motion incorrectly asserts that "[t]he Trust admits that [Mr. Rheingans-Yoo] was not an insider of the Debtors," attempting to contort the Amended Complaint's use of the defined term "FTX Insiders" into a binding admission that the FTX Group had no other insiders.  Sanctions Mot. ¶ 76 (citing Am. Compl. ¶ 15).  The Amended Complaint defined "FTX Insiders" in connection with its general factual allegations; it does not purport to define "FTX Insiders" as all "insiders" within the broad definition that applies to equitable subordination claims.[9]  *See* Am. Compl. ¶¶ 15, 87-89.  Regardless, Mr. Rheingans-Yoo has previously admitted that he "was the director of an FTX affiliate called 'Latona BioScience'" and that "Latona was one of the charitable arms of FTX," Hearing Tr. 38:19-22, which under 11 U.S.C.

---

[9]    In any event, the relevant inquiry is not whether the Amended Complaint "merely allege[s] or label[s] the creditor an insider," but whether Plaintiff has "specifically set forth in its complaint facts supporting such a legal conclusion." *In re Zohar III, Corp.*, 639 B.R. 73, 91 (Bankr. D. Del. 2022) (Owens, J.), *aff'd*, 620 F. Supp. 3d 147 (D. Del. 2022).

§ 31(E) makes him an insider.  11 U.S.C. § 31(E) (insider includes "affiliate, or insider of an affiliate as if such affiliate were the debtor").

The Sanctions Motion further ignores that, even if Mr. Rheingans-Yoo does not meet the Bankruptcy Code's statutory definition of "insider," "a creditor can be a non-statutory insider if there is a close relationship between the debtor and the creditor and something other than closeness suggests that their transactions were not conducted [at] arms' length." *In re Zohar III*, 639 B.R. at 92.  This standard is satisfied, for example, where the creditor has the "ability to coerce the debtor into transactions not in its best interest." *Id.* at 92-93.  Indeed, in denying a motion to dismiss, this Court stated that the term "insider" "must be flexibly applied on a case-by-case basis," and held that allegations the defendant was held out as the Chief Marketing Officer of the FTX Group, signed contracts on behalf of FTX US, and drafted one-sided agreements between his companies and the FTX Group were sufficient to plead that he was an insider. *In re FTX Trading Ltd.*, 2025 Bankr. LEXIS 2773, at *17-19.

Regardless, the Trust's equitable subordination claim is well-founded whether Mr. Rheingans-Yoo is ultimately deemed an "insider" or not.  The Amended Complaint alleges—and Mr. Rheingans-Yoo concedes—that he negotiated the FDU Bonus directly with Bankman-Fried and that the bonus purportedly arose from an agreement with an entity by which he was only nominally employed and for which he performed no actual work.  Am. Compl. ¶ 45.  Further, Mr. Rheingans-Yoo knew through his position at Latona and his ties to the FTX Foundation that Bankman-Fried routinely disguised transfers as "charitable" contributions.  *See id.* ¶ 44.  Indeed, many of those transfers were little more than a pretense to enrich Bankman-Fried's acquaintances—among them, Mr. Rheingans-Yoo.  *See In re FTX Trading Ltd.*, 2025 Bankr. LEXIS 2773, at *18 (analyzing equitable subordination "[i]n the context of this unique case and

the non-traditional manner in which the FTX Group functioned."). The Amended Complaint further alleges that Mr. Rheingans-Yoo has in bad faith violated Section 548 of the Bankruptcy Code, Am. Compl. ¶¶ 45, 51-55, which itself provides the requisite conduct needed to equitably subordinate a non-insider's claim. *See In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 117, 158 (Bankr. S.D.N.Y. 2014).[10]

Mr. Rheingans-Yoo's gratuitous argument that "it seems impossible for creditors to be injured by the Trust paying the FDU Claim" when general unsecured creditors will receive "100 cents on the dollar plus interest" is most egregious. *See* Sanctions Mot. ¶ 79 n.15. Mr. Rheingans-Yoo ignores that customers and general unsecured creditors still have not been made whole, as this Court recently recognized. *See In re FTX Trading Ltd.*, 2025 Bankr. LEXIS 2773, at *6-7 ("Distribution on claims is in its early stages and projections regarding recoveries are subject to change. Moreover, while it is true that some creditors may receive full payment on their allowed claims under the Plan, others are projected to receive far less"); *see also Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404], Ex. A, §§ 4, 5 (describing distribution waterfall and funding); *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Affiliated Debtors and Debtors-in-Possession* [D.I. 19143] ("Disclosure Statement") § 1.G. If they are, the Trust would still have governmental creditors that have voluntarily subordinated their claims of billions of dollars, as well as additional statutorily subordinated creditors. Disclosure Statement § 1.G.

---

[10]    Mr. Rheingans-Yoo appears to argue that even if his conduct were inequitable, there can be no injury to creditors or unfair advantage to him where a claim objection has been overruled. *See* Sanctions Mot. ¶ 79. The sole case that Mr. Rheingans-Yoo cites actually discusses a settlement agreement and not a claim objection. *See id.* (citing *In re Zohar III*, 639 B.R. at 108 n.222). Regardless, Mr. Rheingans-Yoo's discussion of post-petition inequitable conduct again willfully ignores that the FDU Obligation was created pre-petition. *See supra*, at 18-20. Mr. Rheingans-Yoo further disregards that his receipt of a fraudulent obligation "injured the estate as a whole" because "this money would have been available for distribution to the other [creditors]" if Mr. Rheingans-Yoo had not received the obligation. *See In re Bernard L. Madoff*, 515 B.R. at 160.

The Trust has a duty to each of these creditors, and Mr. Rheingans-Yoo may not seek sanctions based on a patently false argument that they have not been harmed.

*    *    *

At bottom, Mr. Rheingans-Yoo's arguments in favor of sanctions turn on an erroneous interpretation of the law and facts—not whether the Trust's claims are patently frivolous. However, it is black-letter law that Rule 9011 "is not an appropriate vehicle for resolving legal or factual disputes, or addressing the strength or merits of a claim." *Blattman* v. *Siebel*, 2017 WL 10604023, at *2 (D. Del. July 31, 2017) (internal citation and quotation marks omitted). If Mr. Rheingans-Yoo would like "to test the legal sufficiency or efficacy of allegations in the pleadings," then "other motions are available for th[at] purpose[]." Fed. R. Civ. P. 11 Advisory Committee Notes to 1993 Amendment. Thus, even if Mr. Rheingans-Yoo's arguments were colorable—and they are not—they cannot carry his high burden to justify sanctions under Rule 9011, Section 1927, or Section 105.

## III.   THIS COURT SHOULD AWARD THE TRUST REASONABLE EXPENSES AND ATTORNEYS' FEES INCURRED IN OPPOSING MR. RHEINGANS-YOO'S MERITLESS SANCTIONS MOTION.

Because Mr. Rheingans-Yoo's Sanctions Motion is meritless, the Court should award the Trust "the reasonable expenses and attorney's fees incurred in . . . opposing the motion." Fed. R. Bankr. P. 9011(c)(2)(C). "[T]here is no requirement . . . that the movant's conduct be found worthy of sanction for fees to be appropriate where the non-movant prevails." *United States ex rel. Morgan* v. *Champion Fitness, Inc.*, 2019 WL 693254, at *7 (C.D. Ill. Feb. 19, 2019) (internal citation and quotation marks omitted). Instead, there merely must "be something negative" in Mr. Rheingans-Yoo's conduct. *Adhikari* v. *Daoud & Partners*, 2017 WL 5904782, at *8 (S.D. Tex. Nov. 30, 2017); *see also Wartsila NSD N. Am., Inc.* v. *Hill Int'l, Inc.*, 315 F. Supp. 2d 623, 630 (D.N.J. 2004) (awarding fees where motion's allegations were "untenable, misplaced,

inappropriate for a Rule 11 motion, or simply inexplicable"); *Mirtech, Inc.* v. *Agrofresh, Inc.*, 2025 WL 359757, at *5 (D. Del. Jan. 31, 2025).  Courts have found it particularly appropriate to grant fees where, as here, the sanctions motion attempts to litigate the merits of the underlying dispute. *See, e.g.*, *Smith* v. *Psychiatric Sols., Inc.*, 750 F.3d 1253, 1261 (11th Cir. 2014) (proper to grant fees where movant "filed her Rule 11 motion to address the merits of [nonmovants'] arguments"); *Rich* v. *Taser Int'l, Inc.*, 2012 WL 3155137, at *3 (D. Nev. Aug. 2, 2012) (awarding fees where motion was "composed almost entirely of arguments that Plaintiffs ha[d] not produced evidence of essential elements of their claims"); *Roor Int'l BV* v. *Stinky's Smoke Shop, LLC*, 2021 WL 5514594, at *3 (E.D. Tex. Nov. 24, 2021) (granting fees where motion, *inter alia*, "lacked merit" and "reiterated arguments made in prior motions").   Here, Mr. Rheingans-Yoo raises unmeritorious arguments that are largely duplicative of the baseless arguments he makes in his Dismissal Motion and in his Reconsideration Opposition.  *See supra* at 2 n.2.  The Court should therefore award the Trust the reasonable expenses and fees incurred in opposing the Sanctions Motion.   Equally, Mr. Rheingans-Yoo's counsel should be held accountable for his misrepresentations to this Court.

## **CONCLUSION**

For all of the foregoing reasons, the Court should deny the Sanctions Motion in its entirety and award the Trust reasonable expenses and fees incurred in opposing the Sanctions Motion and such other relief with respect to counsel for Mr. Rheingans-Yoo's counsel as the Court deems appropriate.

Dated:  October 30, 2025
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Richard S. Cobb (No. 3157)
Matthew B. McGuire (No. 4366)
Howard W. Robertson, IV (No. 6903)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:  landis@lrclaw.com
        cobb@lrclaw.com
        mcguire@lrclaw.com
        robertson@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Stephanie G. Wheeler (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Email:  wheelers@sullcrom.com
        gluecksteinb@sullcrom.com

*Counsel for the FTX Recovery Trust*