## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (KBO) |
| Debtors. | (Jointly Administered) |
| FTX RECOVERY TRUST, | |
| Plaintiff, | |
| -against- | |
| MANIFOLD MARKETS, INC., MANIFOLD FOR CHARITY, INC., ROSS RHEINGANS-YOO, and FTX PHILANTHROPY, INC., | Adv. Pro. No. 24-50214 (KBO) |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## ROSS RHEINGANS-YOO'S MOTION TO DISMISS

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 3

LEGAL STANDARD ............................................................................................................ 5

ARGUMENT ........................................................................................................................ 6

I.  THE AMENDED COMPLAINT STATES A CLAIM FOR AVOIDANCE OF THE FDU OBLIGATION UNDER FEDERAL AND DELAWARE LAW ............................ 6

    A.  The Amended Complaint Plausibly Seeks to Avoid a Pre-Petition Obligation ...... 7

    B.  The Court Has Not Ruled on Whether the FDU Obligation Is Fraudulent ............ 8

    C.  Mr. Rheingans-Yoo Is a Proper Party to the Amended Complaint ....................... 9

II.  THE AMENDED COMPLAINT STATES A CLAIM FOR RECOVERY OF THE FDU OBLIGATION AND DISALLOWANCE OF THE FDU CLAIM ........................ 10

III.  THE AMENDED COMPLAINT STATES A CLAIM FOR EQUITABLE SUBORDINATION ........................................................................................................ 11

    A.  The Amended Complaint Plausibly Alleges that Mr. Rheingans-Yoo Is an Insider of the Debtors ............................................................................................ 11

        1.  The Amended Complaint Alleges Facts Supporting that Mr. Rheingans-Yoo Is a Statutory Insider ......................................................... 12

        2.  The Amended Complaint Alleges Facts Supporting that Mr. Rheingans-Yoo Is Also a Non-Statutory Insider ...................................... 13

    B.  The Amended Complaint Alleges that Mr. Rheingans-Yoo Engaged in Inequitable Conduct ............................................................................................. 14

    C.  The Amended Complaint Adequately Alleges that Mr. Rheingans-Yoo's Misconduct Unfairly Advantaged Him and Injured the Trust and Its Creditors .. 15

CONCLUSION .................................................................................................................... 17

-i-

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alston* v. *Wenerowicz*,
  167 F. Supp. 3d 714 (E.D. Pa. 2016) .......................................................................5

*In re AmeriServe Food Distrib., Inc.*,
  315 B.R. 24 (Bankr. D. Del. 2004) .........................................................................2

*In re Art Inst. of Phila. LLC*,
  2022 WL 18401591 (Bankr. D. Del. Jan. 12, 2022) ................................................7

*In re Bernard L. Madoff Inv. Sec. LLC*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014) ...............................................................15, 16

*Black* v. *Montgomery Cnty.*,
  835 F.3d 358 (3d Cir. 2016)....................................................................................5

*Boyle* v. *City of Philadelphia*,
  2018 WL 994218 (E.D. Pa. Feb. 20, 2018) .............................................................5

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)..................................................................................6

*In re FTX Trading Ltd.*,
  2024 WL 4562675 (Bankr. D. Del. Oct. 23, 2024) ........................................2, 8, 10

*In re FTX Trading Ltd.*,
  2025 Bankr. LEXIS 2773 (Bankr. D. Del. Oct. 27, 2025)..........................10, 14, 16

*In re Gibson*,
  308 B.R. 763 (Bankr. N.D. Tex. 2002)....................................................................8

*Glob. Network Commc'ns, Inc.* v. *City of New York*,
  458 F.3d 150 (2d Cir. 2006)....................................................................................6

*Green* v. *Poorman*,
  2020 WL 4201854 (D. Del. July 22, 2020) .............................................................5

*He Depu* v. *Yahoo! Inc.*,
  950 F.3d 897 (D.C. Cir. 2020) ...............................................................................16

*Hedges* v. *United States*,
  404 F.3d 744 (3d Cir. 2005)....................................................................................5

*In re Hodge*,
    1992 WL 613691 (Bankr. E.D. Va. June 30, 1992)......................................................8

*Johns Hopkins Univ.* v. *454 Life Scis. Corp.*,
    183 F. Supp. 3d 563 (D. Del. 2016) ............................................................................5

*Laborers' Int'l Union* v. *Foster Wheeler Corp.*,
    26 F.3d 375 (3d Cir. 1994)..........................................................................................5

*In re Lason, Inc.*,
    309 B.R. 441 (Bankr. D. Del. 2004) ...........................................................................8

*In re Locke Mill Partners*,
    178 B.R. 697 (Bankr. M.D.N.C. 1995) ......................................................................12

*In re Matthieson*,
    63 B.R. 56 (D. Minn. 1986) ........................................................................................8

*MicroStrategy Inc.* v. *Bus. Objects Ams.*,
    238 F. App'x 605 (Fed. Cir. 2007) ...........................................................................13

*In re Mid-Am. Waste Sys., Inc.*,
    284 B.R. 53 (Bankr. D. Del. 2002) ...........................................................................15

*In re Millennium Lab Holdings II, LLC*,
    2019 WL 1005657 (Bankr. D. Del. Feb. 28, 2019) ....................................................6

*Philip A. Templeton, M.D., P.A.* v. *EmCare, Inc.*,
    868 F. Supp. 2d 333 (D. Del. 2012) ............................................................................6

*In re Raytrans Holding, Inc.*,
    573 B.R. 121 (Bankr. D. Del. 2017) ..........................................................................12

*Reynolds* v. *Wagner*,
    128 F.3d 166 (3d Cir. 1997).......................................................................................13

*In re Ryan*,
    100 B.R. 411 (Bankr. N.D. Ill. 1989) .........................................................................8

*In re Syntax-Brillian Corp.*,
    573 F. App'x 154 (3d Cir. 2014) .................................................................................9

*In re TSIC, Inc.*,
    428 B.R. 103 (Bankr. D. Del. 2010) ........................................................................6, 7

*United States* v. *Young*,
    2012 WL 3614608 (W.D. Pa. Aug. 21, 2012) ..........................................................13

*In re USDigital, Inc.*,
  461 B.R. 276 (Bankr. D. Del. 2011) ...................................................................15

*In re Zohar III, Corp.*,
  639 B.R. 73 (Bankr. D. Del. 2022), *aff'd*, 620 F. Supp. 3d 147 (D. Del. 2022).............. *passim*

**Statutes**

6 Del. C. § 1304(a)........................................................................................7

11 U.S.C. § 101(2)(B)...................................................................................13

11 U.S.C. § 101(31)(B)............................................................................11, 12

11 U.S.C. § 510(c) ........................................................................................11

11 U.S.C. § 548........................................................................................2, 7, 9

**Other Authorities**

Fed. R. Bankr. P. 7019 ..................................................................................10

Fed. R. Civ. P. 12(b)(6)...............................................................................5, 6

Fed. R. Civ. P. 19 ...........................................................................................9

Local Rule 7007-2(a)(iv) ................................................................................5

# PRELIMINARY STATEMENT[1]

Ross Rheingans-Yoo and Samuel Bankman-Fried operated a sham Bahamian non-profit entity that they used to make investments in lifesciences companies. These investments were funded by commingled and misappropriated assets from FTX Group customers in connection with Mr. Bankman-Fried's well-publicized fraudulent scheme to expand his influence, obfuscate malfeasance, and project a falsely positive public image. Mr. Rheingans-Yoo was compensated for his work for the sham non-profit entity through an unrelated entity—Debtor Alameda Research (Bahamas) Ltd. Although Mr. Rheingans-Yoo performed no actual work for that entity, he negotiated with Mr. Bankman-Fried to receive, on top of a personal $650,000 cash bonus for his purported "work," the ability to direct an additional $650,000 to an Effective Altruist-driven "cause" of his choosing (the "FDU Obligation").

Before Mr. Rheingans-Yoo selected an Effective Altruist-driven "cause" to receive the $650,000, however, the FTX Group collapsed. Mr. Rheingans-Yoo then filed a claim in these Chapter 11 Cases, arguing that he retained an interest in the $650,000 FDU Obligation and therefore had standing to assert a claim on behalf of a then-unspecified beneficiary. After briefing the issue, the Court allowed Mr. Rheingans-Yoo's claim.

Through the Amended Complaint, the Trust seeks to avoid the $650,000 FDU Obligation as fraudulent and to subordinate Mr. Rheingans-Yoo's claim based on his inequitable conduct. In an attempt to escape liability, Mr. Rheingans-Yoo asserts arguments that are contrary to applicable law and that fail when tested against the well-pled allegations in the Amended Complaint [Adv. D.I. 38]. The Court should deny the Dismissal Motion for three primary reasons.

---

[1] Terms not defined herein shall have the same meaning as used in the *Debtors' Objection to Proof of Claim Filed By Ross Rheingans-Yoo* [D.I. 3409], the *Reply of FTX Recovery Trust in Further Support of Debtors' Objection to Ross Rheingans-Yoo's Claim* [D.I. 30712], and the *Motion for Reconsideration or to Modify Order Allowing Rheingans-Yoo's FDU Claim* (the "Reconsideration Motion") [D.I. 31846].

*First*, Mr. Rheingans-Yoo's argument that the Trust must allege a pre-petition *transfer* is directly contrary to the Bankruptcy Code and well-established precedent, which allow a trustee to avoid "any obligation" incurred by a debtor, regardless of whether a pre-petition transfer occurred.  *See* 11 U.S.C. § 548 ("The trustee may avoid any transfer . . . *or any obligation* . . . incurred by the debtor . . . ." (emphasis added)); *see also, e.g.*, *In re FTX Trading Ltd.*, 2024 WL 4562675, at *15 (Bankr. D. Del. Oct. 23, 2024).  Further, while the Court previously determined that Mr. Rheingans-Yoo has standing to assert the FDU Claim on behalf of a third-party beneficiary, the Court did not, contrary to Mr. Rheingans-Yoo's representations, determine whether the FDU Obligation was fraudulently incurred.

*Second*, because the Trust states a claim to avoid the fraudulent FDU Obligation, the Trust also states a claim to recover and disallow that obligation.  *In re FTX Trading Ltd.*, 2024 WL 4562675, at *15; *see also In re AmeriServe Food Distrib., Inc.*, 315 B.R. 24, 34 (Bankr. D. Del. 2004).

*Third*, Mr. Rheingans-Yoo cannot defeat the Trust's subordination claim by falsely asserting that the Trust has admitted that Mr. Rheingans-Yoo is not an insider and insisting that the Court's allowance of the FDU Claim necessarily means Mr. Rheingans-Yoo engaged in no inequitable conduct.  Mr. Rheingans-Yoo's claim may be equitably subordinated where, as here, Mr. Rheingans-Yoo engaged in inequitable conduct that unfairly advantaged him, or that injured the Trust and its creditors.  Negotiating an entitlement to a $650,000 bonus from an entity one does not work for, thereby depriving *bona fide* creditors of the benefit of those funds, is inequitable conduct that warrants subordination.  The "bonus" here was not compensation for services performed, but rather another example of how Mr. Bankman-Fried disguised the use of customer

funds to camouflage payments and their true source of funding so as not to risk uncovering the fraud. Mr. Rheingans-Yoo was an active participant in this scheme through this "bonus."

Mr. Rheingans-Yoo's Dismissal Motion is meritless and should be denied in its entirety.

## STATEMENT OF FACTS

In 2021, Samuel Bankman-Fried formed the FTX Foundation, Inc. (the "FTX Foundation") to make donations and grants to Effective Altruist causes.[2] Am. Compl. ¶ 34 [Adv. D.I. 38]. The FTX Foundation claimed on its website that it "works to save lives, prevent suffering and build a flourishing future." *Id.* ¶ 35. In reality, very few of the FTX Foundation's donations directly benefitted the needy. *Id.* Instead, its largest donations went to associates of Mr. Bankman-Fried and others in the Effective Altruism movement. *Id.* The FTX Foundation's donations were intentionally designed to burnish Mr. Bankman-Fried's public image as a do-gooder even as he orchestrated one of the largest fraudulent schemes in U.S. history. *Id.* In early 2022, Mr. Rheingans-Yoo, having previously worked with Mr. Bankman-Fried at Jane Street Capital and lived with him in Hong Kong, moved into Mr. Bankman-Fried's $30 million penthouse in the Bahamas to begin working on Mr. Bankman-Fried's purported philanthropic initiatives—first, at the FTX Foundation, and later, as a director at Latona Biosciences Group ("Latona"). *Id.* ¶ 44. Latona was a sham Bahamian non-profit entity that Mr. Bankman-Fried and Mr. Rheingans-Yoo used to make investments, funded entirely by Alameda, in lifesciences companies that they "prefer[red] not [] be disclosed on Bahamian entity [Alameda's] balance sheet." *Id.*

---

[2]    The FTX Foundation was a non-profit, non-stock corporation incorporated in Delaware on February 1, 2022. On July 1, 2022, FTX Foundation filed with the Secretary of State of the State of Delaware a Restated Certificate of Incorporation changing its name to FTX Philanthropy, Inc. For simplicity, the Trust will refer to the FTX Foundation and its successor FTX Philanthropy collectively as the "FTX Foundation."

Although Mr. Rheingans-Yoo worked for Latona ("an entity under the umbrella of the FTX Foundation 'brand'"), Mr. Rheingans-Yoo was nominally employed by Debtor Alameda Research (Bahamas) Ltd. as a Trader & Investment Associate, despite performing no actual work for that entity. *Id.* ¶ 45. On or about September 1, 2022, Mr. Bankman-Fried created and shared a Google document with Mr. Rheingans-Yoo (the "Bonus Memo") wherein Mr. Bankman-Fried promised Mr. Rheingans-Yoo that, on top of a personal cash bonus for his purported "work" for Alameda Research (Bahamas) Ltd., Mr. Rheingans-Yoo could "get another $650k of directed grants to any EA [Effective Altruist]-driven cause if you want." *Id.*

On June 29, 2023, Mr. Rheingans-Yoo filed a non-customer claim numbered 5166, and a duplicative claim numbered 89710, against Alameda Research (Bahamas) Ltd., requesting payment of the $650,000 FDU Claim. *Id.* ¶ 46. The Trust objected to the FDU Claim, and following a hearing on the Trust's objection, on June 25, 2025, the Court allowed the FDU Claim, determining that Mr. Rheingans-Yoo had standing to assert the claim and a "personal interest" in the bonus. Hearing Tr. 46:2-4.

Mr. Rheingans-Yoo subsequently designated Manifold for Charity as the beneficiary of the FDU Claim. Am. Compl. ¶ 46. The Trust immediately identified Manifold for Charity as the "charitable arm" of Manifold Markets, an entity against which the Trust had already commenced an adversary proceeding to recover fraudulent transfers. *See* Am. Compl. ¶ 8. The Trust also identified that Mr. Rheingans-Yoo shared undisclosed connections with Manifold for Charity, including that Mr. Rheingans-Yoo serves as a director on Manifold for Charity's Board. Am. Compl. ¶¶ 47-49. Moreover, according to Manifold for Charity's publicly available bylaws, members of its Board are eligible for compensation for their service. *See* Am. Compl. ¶ 48.

On July 23, 2025, the Trust filed its Amended Complaint.  On September 26, 2025, Mr. Rheingans-Yoo filed his *Motion to Dismiss* [Adv. D.I. 61] and *Opening Brief in Support of Ross Rheingans-Yoo's Motion to Dismiss* (the "<u>Dismissal Motion</u>") [Adv. D.I. 62].  The Dismissal Motion was accompanied by the *Declaration of Ross Rheingans-Yoo in Opposition to FTX Recovery Trust's Motion for Reconsideration or to Modify Order Allowing FDU Claim* (the "<u>Rheingans-Yoo Declaration</u>"), as well as five exhibits thereto [Adv. D.I. 62-1 *et seq.*].[3]

## LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Black* v. *Montgomery Cnty.*, 835 F.3d 358, 364 (3d Cir. 2016).  On a motion to dismiss, "the issue is not whether [the] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Boyle* v. *City of Philadelphia*, 2018 WL 994218, at *4 (E.D. Pa. Feb. 20, 2018).  "The defendant bears the burden of showing that no claim has been presented."  *Hedges* v. *United States*, 404 F.3d 744, 750 (3d Cir. 2005).  Further, "an issue is waived unless a party raises it in its opening brief."  *Laborers' Int'l Union* v. *Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994).

---

[3]     The Rheingans-Yoo Declaration and its over 200 pages of exhibits improperly seek to dispute the Amended Complaint's well-pled allegations and to introduce factual contentions of Mr. Rheingans-Yoo's own.  *See generally* Rheingans-Yoo Decl.; Rheingans-Yoo Decl., Exs. A-E; *Alston* v. *Wenerowicz*, 167 F. Supp. 3d 714, 719 n.32 (E.D. Pa. 2016) ("[T]he Court cannot consider declarations in ruling on a motion to dismiss.").  Because most of these documents "were not included or referenced in the complaint, the Court cannot consider them on a Rule 12(b)(6) motion to dismiss."  *Green* v. *Poorman*, 2020 WL 4201854, at *3 (D. Del. July 22, 2020).  Moreover, by incorporating by reference into his brief Exhibit B to the Rheingans-Yoo Declaration, Mr. Rheingans-Yoo violates this Court's Local Rule 7007-2(a)(iv), which limits opening briefs to thirty pages where a party does not seek leave of Court.  *See Johns Hopkins Univ.* v. *454 Life Scis. Corp.*, 183 F. Supp. 3d 563, 572 (D. Del. 2016) (parties may not incorporate documents by reference "in order to evade the Court's page limits").

For purposes of Rule 12(b)(6), the Court "look[s] to the complaint and attached exhibits." *Philip A. Templeton, M.D., P.A.* v. *EmCare, Inc.*, 868 F. Supp. 2d 333, 338 (D. Del. 2012). The Court may also consider a document outside of the pleadings if the document is "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted). It is not permissible on a Rule 12(b)(6) motion, however, to rely on extrinsic evidence to "make a finding of fact that controvert[s] the plaintiff's own factual assertions set out in its complaint." *Glob. Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (emphasis omitted).

## ARGUMENT

### I.     THE AMENDED COMPLAINT STATES A CLAIM FOR AVOIDANCE OF THE FDU OBLIGATION UNDER FEDERAL AND DELAWARE LAW.

Mr. Rheingans-Yoo moves to dismiss for failure to state a claim the Trust's actual and constructive fraudulent conveyance claims (together, the "Avoidance Claims") seeking to avoid the FDU Obligation. To state a claim for avoidance of an actual fraudulent obligation under federal and Delaware law, the Trust need only allege that the obligation was incurred with the actual intent to hinder, delay, or defraud the Debtors' present or future creditors. *In re Millennium Lab Holdings II, LLC*, 2019 WL 1005657, at *2 (Bankr. D. Del. Feb. 28, 2019). To state a claim for avoidance of a constructive fraudulent obligation, the Trust merely must allege that the obligation "was incurred for less than reasonably equivalent value" and that "the debtor was or thereby became insolvent." *In re TSIC, Inc.*, 428 B.R. 103, 109 (Bankr. D. Del. 2010).

In his Motion, Mr. Rheingans-Yoo does not dispute that the FDU Obligation was incurred with an intent to hinder, delay, or defraud creditors. Nor does Mr. Rheingans-Yoo dispute that the Debtors failed to receive reasonably equivalent value for that obligation or were insolvent when it was incurred. Instead, Mr. Rheingans-Yoo argues (1) the Trust may not avoid pre-petition

obligations where no pre-petition transfer occurred; (2) this Court has held the FDU Obligation is not fraudulent; and (3) Mr. Rheingans-Yoo is not a proper defendant because he did not receive a fraudulent transfer.

Each of Mr. Rheingans-Yoo's arguments is unsupported by the Amended Complaint's well-pled allegations and the law. *First*, it is black-letter law that a *transfer* is not necessary for an *obligation* to be avoided. *Second*, in allowing the FDU Claim, the Court did not rule on whether the FDU Obligation was incurred fraudulently—it ruled only that Mr. Rheingans-Yoo had standing to assert the FDU Claim. *Third*, Mr. Rheingans-Yoo has extensively litigated that he has both a property right in the FDU Obligation and standing to enforce that obligation against the Trust, which makes him a required party in this Adversary Proceeding.

A.      **The Amended Complaint Plausibly Seeks to Avoid a Pre-Petition Obligation.**

Mr. Rheingans-Yoo contends that the Trust must allege "a transfer that took place prior to the petition date" and therefore cannot seek to avoid the FDU Obligation. Dismissal Mot. ¶¶ 55-56. However, Mr. Rheingans-Yoo's argument that the Trust must allege a pre-petition *transfer* to state a fraudulent conveyance claim conflicts with the Bankruptcy Code's express language that "[t]he trustee may avoid any transfer . . . *or any obligation* . . . incurred by the debtor." 11 U.S.C. § 548 (emphasis added). It similarly conflicts with the Delaware Uniform Fraudulent Transfer Act's application to "transfer[s] made *or obligation*[s] incurred by a debtor." 6 Del. C. § 1304(a) (emphasis added). Indeed, this Court has observed that whether "the incurrence of [a] debt" is avoidable is a separate inquiry from whether any resulting transfer is avoidable. *See, e.g.*, *In re Art Inst. of Phila. LLC*, 2022 WL 18401591, at *18 n.109 (Bankr. D. Del. Jan. 12, 2022); *In re TSIC, Inc.*, 428 B.R. at 115.

Tellingly, Mr. Rheingans-Yoo admits that the FDU Obligation arises out of "a *prepetition* discretionary bonus which required the Debtors to make a $650,000 donation to an EA

cause."  Dismissal Mot. ¶ 29 (emphasis added).  Nevertheless, Mr. Rheingans-Yoo attempts to circumvent the Amended Complaint's well-pled allegation that the Debtors incurred the FDU Obligation "[o]n or about September 1, 2022," *see* Am. Compl. ¶ 45, by asserting that because he selected the beneficiary of the FDU Claim after the petition date, the underlying FDU Obligation cannot be considered "a prepetition transfer."  Dismissal Mot. ¶ 56.

However, as this Court has previously held in these Chapter 11 Cases, a pre-petition obligation does not need to result in pre-petition transfers to be avoidable.  *See In re FTX Trading Ltd.*, 2024 WL 4562675, at *15 (Bankr. D. Del. Oct. 23, 2024).  Indeed, "it is well settled that where an obligation to pay a debt arises prepetition, but the debt becomes due postpetition, that debt is prepetition for purposes of the Bankruptcy Code."  *In re Hodge*, 1992 WL 613691, at *2 (Bankr. E.D. Va. June 30, 1992) (quoting *In re Ryan*, 100 B.R. 411, 415 (Bankr. N.D. Ill. 1989)); *see also In re Lason, Inc.*, 309 B.R. 441, 445 (Bankr. D. Del. 2004).  That is true even where certain details regarding the resulting payments—here, the ultimate beneficiary—are not determined until after the petition date.  *Cf. In re Matthieson*, 63 B.R. 56, 59 (D. Minn. 1986) ("Where an obligation exists prior to bankruptcy, it is irrelevant that the exact amount of liability will not be determined until after the bankruptcy petition was filed."); *In re Gibson*, 308 B.R. 763, 770 (Bankr. N.D. Tex. 2002).  The Amended Complaint therefore states a claim to avoid a pre-petition obligation regardless of whether a transfer has occurred.

### B.    The Court Has Not Ruled on Whether the FDU Obligation Is Fraudulent.

Mr. Rheingans-Yoo asserts in conclusory fashion that the well-pled allegation that the FDU Obligation was created with fraudulent intent is "[o]bjectively false."  Dismissal Mot. ¶ 59.  But Mr. Rheingans-Yoo does not actually dispute that the FDU Obligation was incurred fraudulently, including as a result of an employment bonus negotiated directly with Mr. Bankman-Fried for purported work for a Debtor affiliate that only nominally employed him.  *See* Am. Compl.

¶ 45.  Instead, Mr. Rheingans-Yoo argues "the Court found that the Trust's obligation to pay an EA charity is not fraudulent."  Dismissal Mot. ¶ 59.  The Court made no such finding.  To the contrary, the Court accepted the Trust's representations that it reserved the right to challenge any transfers or obligations as fraudulent, *see* Hearing Tr. 40:14-41:10, and held that the allowance of the FDU Claim "shall [not] be deemed . . . a waiver of the Trust's rights under the Bankruptcy Code or any other applicable law."  July 9 Order ¶ 5.  Thus, Mr. Rheingans-Yoo's claim that the Court has previously held that the FDU Obligation was not incurred fraudulently is false.[4]  Because Mr. Rheingans-Yoo does not otherwise dispute that the FDU Obligation was incurred with an intent to hinder, delay, or defraud creditors, or for less than reasonably equivalent value, the Amended Complaint states a claim to avoid the FDU Obligation.

### C.    Mr. Rheingans-Yoo Is a Proper Party to the Amended Complaint.

Mr. Rheingans-Yoo also contends that even if the Trust may avoid the FDU Obligation as fraudulent, the Trust may not do so *as to him* because he did not "receive[] the alleged fraudulent transfer."  *See* Dismissal Mot. ¶ 57.  But Mr. Rheingans-Yoo again ignores that the Amended Complaint does not seek the avoidance as to him of any particular *transfer* resulting from the FDU Obligation; instead the Amended Complaint seeks to avoid the FDU Obligation itself.  Not only does the Bankruptcy Code expressly acknowledge "obligee[s]" as defendants in avoidance actions, *see* 11 U.S.C. § 548(c), but the Federal Rules of Civil Procedure *require* Mr. Rheingans-Yoo be named as a defendant because he has "claim[ed] an interest relating to the

---

[4]     Mr. Rheingans-Yoo also asserts that "[e]ven if the Trust subjectively believed there was a fraud, [Mr. Rheingans-Yoo] resolved the issue by redesignating the beneficiary."  Dismissal Mot. ¶ 60.  Mr. Rheingans-Yoo's reliance on events that postdate the filing of the Amended Complaint is improper, *see supra* n.1, but in any event, Mr. Rheingans-Yoo's post-petition actions do not have any bearing on whether the FDU Obligation was incurred fraudulently before the petition date.  *See In re Syntax-Brillian Corp.*, 573 F. App'x 154, 161 (3d Cir. 2014) ("Neither the Bankruptcy Code nor Delaware law refers to the intent of the obligee defendant as a factor in determining whether a specific obligation is fraudulent and therefore avoidable.").

subject of the action and is so situated that disposing of the action in [his] absence may . . . impair or impede [his] ability to protect the interest."  Fed. R. Civ. P. 19; *see also* Fed. R. Bankr. P. 7019.

Mr. Rheingans-Yoo has extensively argued that the FDU Obligation is compensation owed to him and that he "has a right, a property right, a wage right to direct payment to a charity that he designates," as well as standing to enforce the FDU Obligation against the Trust.  Hearing Tr. 32:1-2, 32:12-14.  Mr. Rheingans-Yoo has further asserted that he has a "personal interest in the FDU Bonus" and retains a "property interest in his donation[]" until any resulting transfer has been made.  Dismissal Mot. ¶¶ 29, 44.  Thus, Mr. Rheingans-Yoo has argued that his interest in the FDU Obligation means the Trust is obligated *to him* to make a transfer to a third-party beneficiary.  He cannot now be heard to deny that this interest makes him a proper defendant in an action to avoid that obligation.

## II.    THE AMENDED COMPLAINT STATES A CLAIM FOR RECOVERY OF THE FDU OBLIGATION AND DISALLOWANCE OF THE FDU CLAIM.

For the same reasons that Mr. Rheingans-Yoo's Dismissal Motion fails as to the Avoidance Claims, Mr. Rheingans-Yoo similarly cannot succeed in dismissing the Trust's claims for recovery and disallowance.  Mr. Rheingans-Yoo makes no independent argument against these claims, instead asserting in conclusory fashion that "[b]ecause the fraudulent transfer causes of action are subject to dismissal, so are the recovery [and disallowance] causes of action under Bankruptcy Code sections 550 and 502."  Dismissal Mot. ¶ 61.  Mr. Rheingans-Yoo therefore does not dispute that these claims may survive if any one of the Avoidance Claims does.  *See id.*  Indeed, this Court has previously held in these Chapter 11 cases that claims for recovery and disallowance are "permitted to proceed" where avoidance claims survive a motion to dismiss.  *In re FTX Trading Ltd.*, 2024 WL 4562675, at *15; *see also In re FTX Trading Ltd.*, 2025 Bankr. LEXIS 2773, at *19 (Bankr. D. Del. Oct. 27, 2025) ("Because Plaintiff's avoidance claims remain, Defendants'

arguments with respect to [Sections 502(d) and 550] are moot."). Because the Avoidance Claims are not subject to dismissal for the reasons discussed in Section I, *supra*, the Amended Complaint states a claim against Mr. Rheingans-Yoo for recovery and disallowance.

## III.   THE AMENDED COMPLAINT STATES A CLAIM FOR EQUITABLE SUBORDINATION.

Mr. Rheingans-Yoo contends that "[t]he truth is that the Trust cannot state a claim for equitable subordination." Dismissal Mot. ¶ 63. Mr. Rheingans-Yoo's arguments in support of that assertion, however, consist of little more than falsehoods and *non sequiturs*.

As Mr. Rheingans-Yoo acknowledges, this Court "may . . . under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim." *See id.* ¶ 64; 11 U.S.C. § 510(c). A plaintiff states a claim for equitable subordination if (1) the defendant "engaged in some type of inequitable conduct," (2) the defendant's misconduct "resulted in injury to the creditors of the bankrupt or conferred an unfair advantage" on the defendant, and (3) equitable subordination would "not be inconsistent with the provisions of the Bankruptcy Code." *In re Zohar III, Corp.*, 639 B.R. 73, 90 (Bankr. D. Del. 2022) (Owens, J.) (citation modified), *aff'd*, 620 F. Supp. 3d 147 (D. Del. 2022). This inquiry varies depending on whether the defendant is an "insider" of the Debtors or not. *Id.* at 91. Mr. Rheingans-Yoo does not contest that equitable subordination would be consistent with the Bankruptcy Code, and instead insists that the Amended Complaint does not adequately plead the first two factors if the Court considers him a non-insider. *See* Dismissal Mot. ¶¶ 67-72. Each of his contentions lacks merit.

### A.   The Amended Complaint Plausibly Alleges that Mr. Rheingans-Yoo Is an Insider of the Debtors.

As Mr. Rheingans-Yoo recognizes, the showing a plaintiff must make to succeed on an equitable subordination claim is lower where the defendant is an insider. *See id.* ¶¶ 65, 67;

*see also In re Zohar III*, 639 B.R. at 91.  For purposes of equitable subordination, a defendant may

be either a statutory or non-statutory insider.  *In re Zohar III*, 639 B.R. at 92.  A "statutory insider"

is one that meets the definition of "insider" under Section 101(31)(B) of the Bankruptcy Code, and

a "non-statutory insider" is one with a "close relationship" with the Debtors and "transactions [that

are] not conducted [at] arms' length."  *Id.* at 91-92.

      The Amended Complaint plausibly alleges facts giving rise to the inference that

Mr. Rheingans-Yoo is both a statutory and non-statutory insider.  To avoid this conclusion, Mr.

Rheingans-Yoo disingenuously argues that the Amended Complaint's use of the defined term

"FTX Insiders" to describe the facts underlying these Chapter 11 cases somehow amounts to an

"admi[ssion] that [Mr. Rheingans-Yoo] [i]s not an insider."  *See* Dismissal Mot. ¶ 67 (citing Am.

Compl. ¶ 15).  Mr. Rheingans-Yoo, however, tangles himself in his own web, conceding that the

relevant inquiry is not whether the Trust has "merely allege[d] or label[ed] the creditor an insider,"

but whether the Trust has "set forth in its complaint facts supporting such a legal conclusion."  *Id.*

¶ 66 (citing *In re Raytrans Holding, Inc.*, 573 B.R. 121, 132 (Bankr. D. Del. 2017)).  The Trust

has done so here.

### 1.     The Amended Complaint Alleges Facts Supporting that Mr. Rheingans-Yoo Is a Statutory Insider.

      "Section 101(31)(B) of the Bankruptcy Code enumerates several categories of

insiders . . . ."  *In re Zohar III*, 639 B.R. at 91-92.  As relevant here, these categories include

"director[s] of the debtor" and "person[s] in control of the debtor."  *See* 11 U.S.C. § 101(31)(B).

Additionally, "insider[s] of an affiliate" are treated "as if such affiliate were the debtor."  *Id.*

§ 101(31)(E).  The Bankruptcy Code's definition of "affiliate" is in turn "broad enough to

encompass the situation . . . in which the members of a non-profit corporation . . . are entitled to

vote on the election of directors and on other matters involving the property and affairs of the

corporation." *In re Locke Mill Partners*, 178 B.R. 697, 701 (Bankr. M.D.N.C. 1995) (discussing 11 U.S.C. § 101(2)(B)).  As the Amended Complaint alleges, Mr. Rheingans-Yoo was, together with Mr. Bankman-Fried, a director of Latona, "a sham Bahamian non-profit entity . . . that made investments, funded entirely by Alameda, in lifesciences companies that Bankman-Fried and Rheingans-Yoo 'prefer[red] not [] be disclosed on Bahamian entity [Alameda's] balance sheet.'" Am. Compl. ¶ 44 (alterations in original).  Mr. Rheingans-Yoo therefore both held a position as a director of a Debtor affiliate and had "day-to-day control . . . over decision making."  *See In re Zohar III*, 639 B.R. at 92.  Thus, the Amended Complaint alleges a basis for treating Mr. Rheingans-Yoo as a statutory insider.[5]

### 2. The Amended Complaint Alleges Facts Supporting that Mr. Rheingans-Yoo Is Also a Non-Statutory Insider.

Unsurprisingly, Mr. Rheingans-Yoo's brief fails to mention that even if a creditor does not meet the statutory definition, "a creditor can be a non-statutory insider if there is a close relationship between the debtor and the creditor and something other than closeness suggests that their transactions were not conducted [at] arms' length."  *Id.*  This may include facts "illustrating the creditor's ability to coerce the debtor into transactions not in its best interest."  *Id.*  Indeed, in denying a motion to dismiss, this Court stated that the term "insider" "must be flexibly applied on a case-by-case basis," and held that allegations the defendant was held out as the Chief Marketing Officer of the FTX Group, signed contracts on behalf of FTX US, and drafted one-sided

---

[5]     Mr. Rheingans-Yoo dedicates more than a page of his Dismissal Motion to explaining the Bankruptcy Code's definition of "insider," *see* Dismissal Mot. ¶ 66, but "the problem with his argument is that he does not apply any facts to that law."  *United States* v. *Young*, 2012 WL 3614608, at *6 (W.D. Pa. Aug. 21, 2012).  In fact, Mr. Rheingans-Yoo never argues that this legal standard is unsatisfied, instead resting only on his false claim that "[t]he Trust admits that [Mr. Rheingans-Yoo] [i]s not an insider."  Dismissal Mot. ¶ 67.  It is well established that "[t]he recitation of the applicable law . . . does not prevent the waiver of an argument unless that recitation is accompanied by an explanation of how the law applies to the facts of the particular case."  *MicroStrategy Inc.* v. *Bus. Objects Ams.*, 238 F. App'x 605, 610 (Fed. Cir. 2007); *see also Reynolds* v. *Wagner*, 128 F.3d 166, 178 (3d Cir. 1997) ("[A]n argument consisting of no more than a conclusory assertion such as the one made here (without even a citation to the record) will be deemed waived.").

agreements between his companies and the FTX Group were sufficient to plead that he was an insider. *In re FTX Trading Ltd.*, 2025 Bankr. LEXIS 2773, at *17-18. Here, Mr. Rheingans-Yoo had both the requisite relationship with the Debtors and the ability to coerce the Debtors into ventures detrimental to their interests. For example, Mr. Rheingans-Yoo had a longstanding professional relationship and personal friendship with Mr. Bankman-Fried, was Mr. Bankman-Fried's roommate in two countries, was a director of a Debtor affiliate, and was nominally employed by a Debtor affiliate (but admittedly performed no actual work for that entity). *See* Am. Compl. ¶¶ 44-45. Additionally, while at Latona, Mr. Rheingans-Yoo worked with Mr. Bankman-Fried to make Debtor-funded investments that the two intended to hide from Alameda's balance sheets. *Id.* ¶ 44. The Amended Complaint therefore plausibly alleges that Mr. Rheingans-Yoo is a non-statutory insider.

**B.     The Amended Complaint Alleges that Mr. Rheingans-Yoo Engaged in Inequitable Conduct.**

Because the Amended Complaint adequately alleges that Mr. Rheingans-Yoo is an insider, the Trust need allege "only unfair conduct," "because a claim arising from the dealings between a debtor and an insider is to be rigorously scrutinized." *In re Zohar III*, 639 B.R. at 91 (internal quotation marks omitted). This unfair conduct may include violations of "the rules of fair play and good conscience." *Id.* (internal quotation marks omitted). The Trust has alleged such conduct here: Mr. Rheingans-Yoo (1) directed "a sham Bahamian non-profit entity" that made Debtor-funded investments behind closed doors, (2) negotiated a fraudulent obligation from a Debtor to compensate him for work that he did not perform for that entity, and (3) negotiated this obligation directly with Mr. Bankman-Fried, who was his close friend and roommate. Am. Compl. ¶¶ 44-45.

Even if Mr. Rheingans-Yoo were not an insider, however, the Amended Complaint would still plausibly allege that Mr. Rheingans-Yoo engaged in inequitable conduct warranting subordination because there is "[e]vidence of more egregious conduct such as fraud, spoilation or overreaching," including as a participant in Mr. Bankman-Fried's fraudulent scheme. *In re Zohar III*, 639 B.R. at 91. For instance, Mr. Rheingans-Yoo's receipt of a bonus as a result of employment with an entity for which he performed no actual work indicates he received a fraudulent conveyance in bad faith, which constitutes inequitable conduct. *See In re Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 117, 158 (Bankr. S.D.N.Y. 2014).[6]

**C.    The Amended Complaint Adequately Alleges that Mr. Rheingans-Yoo's Misconduct Unfairly Advantaged Him and Injured the Trust and Its Creditors.**

Inequitable conduct warrants subordination where, as here, "the claimant's inequitable conduct either (i) created some unfair advantage for the claimant or (ii) harmed the debtor or its creditors." *In re Mid-Am. Waste Sys., Inc.*, 284 B.R. 53, 71 (Bankr. D. Del. 2002). In his Dismissal Motion, Mr. Rheingans-Yoo argues that the Court's allowance of the FDU Claim amounts to ratification of his conduct. *See* Dismissal Mot. ¶ 70. However, the sole case that Mr. Rheingans-Yoo cites for the proposition that allowance of a claim precludes a finding of harm for purposes of subordination actually discusses the approval of a settlement agreement, not the allowance of a claim. *Id.* (citing *In re Zohar III*, 639 B.R. at 107-08, 107 n.222). Further, because Mr. Rheingans-Yoo's post-petition misconduct involves a material misrepresentation, it is unclear

---

[6]    Because "there is no distinction between pre-petition and post-petition conduct for purposes of determining whether a claim should be subordinated," *In re USDigital, Inc.*, 461 B.R. 276, 285 n.46 (Bankr. D. Del. 2011), it is also proper to consider the fact that in allowing Mr. Rheingans-Yoo's FDU Claim, the Court expressly relied on Mr. Rheingans-Yoo's misrepresentations to the Court that he did not seek to be paid the FDU Claim. *See* Hearing Tr. 32:11-12, 39:14-16, 46:15-17; *see also* Am. Compl. ¶¶ 46-48. Mr. Rheingans-Yoo may not brush aside these misrepresentations—which resulted in him being able to enforce a $650,000 obligation against the Trust at the expense of other creditors—as the mere "exercise[] [of] contractual rights." *See* Dismissal Mot. ¶¶ 68-69.

how the Court could have ratified conduct of which it was unaware. In any event, the Amended Complaint's well-pled allegations of Mr. Rheingans-Yoo's pre-petition misconduct are sufficient to state a claim. If Mr. Rheingans-Yoo had not received the fraudulent FDU Obligation, "this money would have been available for distribution to the other [creditors]." *See In re Bernard L. Madoff*, 515 B.R. at 160. Mr. Rheingans-Yoo's conduct therefore "injured the estate as a whole." *Id.*

In a last-ditch effort to argue that his misconduct did not harm creditors, Mr. Rheingans-Yoo makes the egregious claim that "[g]iven the Debtors' approved plan of reorganization paying all general unsecured creditors 100 cents on the dollar plus interest, it seems impossible for creditors to be injured by the Trust paying the FDU Claim." Dismissal Mot. ¶ 70 n.14. Mr. Rheingans-Yoo does not—and cannot—explain how the fact that a subset of creditors will receive distributions forecloses the possibility of harm to any other creditor.[7] Mr. Rheingans-Yoo also ignores that in addition to general unsecured creditors—who still have not been made whole—the Trust has other creditors to which it owes the same duties. *See In re FTX Trading Ltd.*, 2025 Bankr. LEXIS 2773, at *6-7 ("Distribution on claims is in its early stages, and projections regarding recoveries are subject to change. Moreover, while it is true that some creditors may receive full payment on their allowed claims under the Plan, others are projected to receive far less"); *see also Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates* [D.I. 26404], Ex. A, §§ 4, 5 (describing distribution waterfall and funding); *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization of FTX*

---

[7]      Mr. Rheingans-Yoo instead attempts to place the burden on the Trust to have predicted this absurd argument and preemptively rebutted it in the Amended Complaint, alleging "[t]he Motion for Reconsideration [sic] does not describe how [creditors] could" be harmed under these circumstances. Dismissal Mot. ¶ 70 n.14. However, "a plaintiff is not required to include in its complaint every argument that might support its general claims." *He Depu* v. *Yahoo! Inc.*, 950 F.3d 897, 904 n.9 (D.C. Cir. 2020).

*Trading Ltd. and Its Affiliated Debtors and Debtors-in-Possession* [D.I. 19143] ("Disclosure Statement") § 1.G.  These creditors include both governmental creditors that have voluntarily subordinated their multi-billion dollar claims and additional statutorily subordinated creditors. Disclosure Statement §1.G.  Mr. Rheingans-Yoo's inequitable conduct should preclude him from recovering before these innocent creditors do.

## CONCLUSION

For all of the foregoing reasons, the Court should deny Mr. Rheingans-Yoo's Dismissal Motion in its entirety.  If the Court grants Mr. Rheingans-Yoo's Dismissal Motion in whole or in part, the Trust respectfully requests leave to replead.

Dated: October 30, 2025
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Richard S. Cobb (No. 3157)
Matthew B. McGuire (No. 4366)
Howard W. Robertson, IV (No. 6903)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:  landis@lrclaw.com
       cobb@lrclaw.com
       mcguire@lrclaw.com
       robertson@lrclaw.com

-and-

**SULLIVAN & CROMWELL LLP**
Stephanie G. Wheeler (admitted *pro hac vice*)
Brian D. Glueckstein (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Email:  wheelers@sullcrom.com
       gluecksteinb@sullcrom.com

*Counsel for the FTX Recovery Trust*