**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>FTX TRADING, LTD., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered) |
| FTX RECOVERY TRUST,<br><br>Plaintiff,<br><br>- against –<br><br>MANIFOLD MARKETS, INC., MANIFOLD FOR CHARITY, INC., ROSS RHEINGANS-YOO, and FTX PHILANTHROPY, INC.,<br><br>Defendants. | Adv. Pro. No. 24-50214 (KBO)<br><br>**Re: Adv. D.I. Nos. 61, 72** |

**REPLY BRIEF IN SUPPORT OF**
**ROSS RHEINGANS-YOO'S MOTION TO DISMISS**

Michael J. Joyce (No. 4563)
**JOYCE, LLC**
1225 King Street, Suite 800
Wilmington, DE 19801
(302) 388-1944
mjoyce@mjlawoffices.com

Scott D. Simon (*pro hac vice*)
**GOETZ PLATZER LLP**
One Penn Plaza, Suite 3100
New York, New York 10119
(212) 695-8100
ssimon@goetzplatzer.com

*Attorneys for Defendant Ross Rheingans-Yoo*

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 4

I. The Amended Complaint should be dismissed as an improper shotgun pleading. .......... 4

II. The Amended Complaint's allegations are barred by release and stipulation .......... 8

III. The Amended Complaint is barred by claim and issue preclusion. .......... 100

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Cases**

*Alameda Research Ltd., et al. v. Platform Life Sciences Inc., et al.*,
Adv. Pro. No. 23-50444 (JTD) .......... 3

*In re Am. Remanufacturers, Inc.*,
No. 07-50967 (KG), 2007 Bankr. LEXIS 4625 (Bankr. D. Del. Aug. 16, 2007),.......... 5

*Arrington v. H.I.G. Capital Mgmt. LLC*,
Adv. Pro. No. 25-50002 (JKS), at 11–12 (Bankr. D. Del. Aug. 13, 2025).......... 5

*Bd. of Trs. of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra*,
983 F.2d 495, 504 (3d Cir. 1992).......... 11

*In re Blackhawk Corp.*,
No. 13-10282(KG), 2016 Bankr. LEXIS 2217 at * 3 (Bankr. D. Del. May 26, 2016) .......... 12

*EDP Med. Computer Sys. v. United States*,
480 F. 2d 621, 625 (2d Cir. 2007).......... 12

*Haskell v. Goldman, Sachs & Co.*, *(In re Genesis Health Ventures, Inc.)*,
324 B.R. 510, 525 (Bankr. D. Del. 2005) .......... 14

*Hynson v. City of Chester Legal Dep't*,
864 F.2d 1026, 1031 n.13 (3d Cir. 1988).......... 5

*Katchen v. Landy*,
382 U.S. 323, 334 (1966).......... 11

*Litwak v. Tomko*,
No. 3:16-CV-00446, 2018 U.S. Dist. LEXIS 74773 at *1, *13 (M.D. Pa. Mar. 19, 2018) .......... 6

*Massey v. Ojaniit*,
759 F.3d 343, 347 (4th Cir. 2014) .......... 9

*OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*,
340 B.R. 510 (Bankr. D. Del. 2006) .......... 6

*Weber v. Henderson*,
33 F. App'x 610, 612 (3d Cir. 2002). .......... 11

*Weiland v. Palm Beach Cnty. Sheriff's Office*,
792 F.3d 1313, 1320 (11th Cir. 2015) .......... 5

*In re WorldCorp, Inc. & WorldCorp Acquisition Corp.*,
No. 99-298 (MFW) at *5 (Bankr. D. Del. Aug. 17, 2000). .......... 9

**Rules**

Fed. R. Civ. P. 8(a)(2) .......... 2, 4, 8

Fed. R. Civ. P. 10(b) .......... 4, 8

## PRELIMINARY STATEMENT

Ross's opening brief asked a simple question: What is Ross's alleged wrongdoing? *See Opening Brief in Support of Ross Rheingans-Yoo's Motion to Dismiss* [D.I. 62 ("Motion")] at p. 2. The question was apt because the Amended Complaint makes no sense. After seventeen pages of exposition irrelevant as to Ross, the Amended Complaint defined an "FDU Bonus" incurred by the Debtors in or around September 2022. *Id.*, ¶ 45. It defined an "FDU Claim" that Ross filed in June 2023 seeking payment of the FDU Bonus. *Id.*, ¶ 46. And it defined an "FDU Obligation" incurred by the Trust. *Id.*, ¶ 46. The Trust defined *FDU Obligation* to mean that Ross "*subsequently [to the June 25, 2025 Hearing] designated* Manifold for Charity as the beneficiary of the $650,000 FDU Bonus." *Id.* The Amended Complaint's plain language seeks to avoid the FDU Obligation – that is, Ross's postpetition designation of Manifold for Charity.

If there were any doubt that *FDU Obligation* refers to Ross's postpetition designation of Manifold for Charity, the Amended Complaint follows its definition of that term with three paragraphs of innuendo, irrelevant allegations, and falsehoods that all allege postpetition conduct (Am. Compl., ¶¶ 47-49) to be the "badges of fraud recognized by bankruptcy law" (*id.*, ¶ 50) that are necessary predicates to avoidance. The Amended Complaint alleges no prepetition badges of fraud that relate to the FDU Obligation. Given the Trust's own framing of the avoidance allegations in terms of Ross's postpetition conduct, the Motion properly focused on the Amended Complaint's failure to state a claim for avoidance of the postpetition FDU Obligation.

In a desperate attempt to avoid dismissal, the Trust's opposition [D.I. 72, ("Opposition")] switches its definition of *FDU Obligation* to mean the bonus obligation incurred prepetition in or around September 2022. *Cf.* Am. Compl., ¶¶ 45-46 with Opposition, ¶ 1. The Opposition – filled with innuendo, irrelevant allegations, conclusory statements, and falsehoods as to Ross's

prepetition conduct – is revisionist history. The Trust's attempt to gaslight the Court about what the Trust *actually* alleged highlights the importance of Fed. R. Civ. P. 8(a)(2)'s requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The meritless relief the Trust sought in the Amended Complaint was to avoid Ross's postpetition designation of Manifold for Charity, not anything that occurred prepetition.

But even if the Court parses the Amended Complaint to find that it put Ross on notice that the Trust seeks to avoid a prepetition obligation, the Trust's Opposition has not pointed to where it made a short and plain statement of *why* the prepetition obligation to pay the FDU Bonus is avoidable. The Amended Complaint's allegations about Manifold for Charity and Ross's postpetition designation are irrelevant and could not notify Ross about why the Trust believes that its prepetition obligation to pay the FDU Bonus is avoidable. The Trust's allegations about Ross's prepetition conduct (*see* Am. Compl. at ¶¶ 9, 16, 44) evidence no badges of fraud. The Trust's misrepresentation that the Amended Complaint is well-pled as to a prepetition obligation is objectively false. The Motion should be granted and the Amended Complaint dismissed as to Ross.

Furthermore, the Amended Complaint should be dismissed as to Ross with prejudice without leave to amend because amendment would be futile. The Opposition now asserts two allegations as to badges of fraud regarding the prepetition bonus. *See* Opposition at p. 1 (describing Latona Biosciences Group ("Latona") to be a "sham Bahamian non-profit entity" and Ross's compensation "for his work for the sham non-profit entity through an unrelated entity – Debtor Alameda Research (Bahamas) Ltd."). However, the allegations about Ross's employment and compensation are contradicted by the *Stipulation of Undisputed Facts Relating to Ross Rheingans-Yoo's FDU Claim* [D.I. 29218, "Stipulated Facts"]).[1] And the Trust's claims at law and in equity

[1] The Stipulated Facts are annexed as **Exhibit A**.

relating to Ross's prepetition employment at Latona were released by settlement. *See* Judge Dorsey's *Order (A) Authorizing the Debtors To Enter Into the Settlement Stipulations With Settling Defendants and (B) Approving The Settlement Stipulations* in the adversary proceeding captioned *Alameda Research Ltd., et al. v. Platform Life Sciences Inc., et al.*, Adv. Pro. No. 23-50444 (JTD) ("Latona Adversary Proceeding") at Latona Adversary Proceeding D.I. 106 ("Latona Settlement").[2] The Opposition's newly introduced allegation that Ross's work for Latona operated as a sham to the detriment of the Debtors fails because the Debtors released Ross for precisely that claim in the Latona Settlement. And the Opposition's newly introduced allegation that it was fraudulent, inequitable, or an exchange for less than reasonably equivalent value for Ross to be compensated by Debtor Alameda Research (Bahamas) Ltd. ("Alameda") for work he performed while assigned on secondment to Latona is belied by the Stipulated Facts. Whatever "significant concerns" the Trust may have had about Ross's work for Latona (June 25, 2025 hearing transcript ("Transcript"))[3] at 39:21 – 40:5), the Trust released them "unconditionally and irrevocably." Latona Settlement, ¶ 10. Those "concerns" cannot support a fraudulent transfer claim now.

Finally, the Amended Complaint must be dismissed under claim and issue preclusion. All elements of claim preclusion are present: final judgments on the merits, in a prior action between the same parties or their privies, and a subsequent action based on the same underlying facts. The Latona Settlement and allowance of Ross's claim are final judgments. The Trust is in privity with the Debtors. And given the Trust's insistence that the alleged fraud relates to Ross's prepetition employment rather than his postpetition designation of Manifold for Charity, the Trust could have objected to Ross's FDU Claim on those grounds before, but it did not. Issue preclusion also bars

[2] The Latona Settlement is annexed as **Exhibit B**. The Latona Settlement was fully consummated on July 12, 2024, when the Debtors filed a *Voluntary Notice of Dismissal with Prejudice* as to Latona and Ross. *See* Latona Adversary Proceeding D.I. 118 ("Notice of Dismissal"). The Notice of Dismissal is annexed as **Exhibit C**.

[3] The Transcript is annexed as **Exhibit D**.

the claims because the Court implicitly relied upon the *non*-fraudulent nature of Ross's employment and bonus when it allowed the FDU Claim. *Res judicata* and issue preclusion prevent the Trust from litigating Ross's employment claim again.

## ARGUMENT

### I. The Amended Complaint should be dismissed as an improper shotgun pleading.

The Trust's November 2024 complaint in this adversary proceeding [D.I. 1, ("Original Complaint")] sought to avoid $508,000 that FTX Philanthropy transferred to Manifold Markets, Inc. The Trust's Amended Complaint shoehorned Ross and a bunch of allegations about Ross and Manifold for Charity into the pleading. The Trust thereby ran afoul of Rule 8(a)(2), which states that pleadings "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Moreover, Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." By dumping new allegations against Ross into an existing pleading focused on avoiding transfers to Manifold Markets, Inc., the Trust filed a "shotgun pleading."

The United States Court of Appeals for the Third Circuit has criticized "the all too common shotgun pleading approach" to complaints. *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988). Requiring a plaintiff to plead facts with specificity has a twofold purpose: first, to weed out at an early stage frivolous claims, and second, to provide defendants with sufficient notice of the claims asserted. *See id*. Courts in this District cite with approval the decision in *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). There, the United States Court of Appeals for the Eleventh Circuit defined shotgun pleadings to include a complaint "containing multiple counts where each count adopts the allegations of all preceding counts" and that is "replete with conclusory, vague, and immaterial facts not obviously connected

to any particular cause of action." The Amended Complaint is deficient in both regards.

Here, as in *In re Am. Remanufacturers, Inc.*, No. 07-50967 (KG), 2007 Bankr. LEXIS 4625 (Bankr. D. Del. Aug. 16, 2007), the allegations in the Amended Complaint "do nothing more than parrot the statutory elements of a fraudulent transfer under the Bankruptcy Code." *Id.* The Amended Complaint "fails to make any specific allegations as to why the alleged fraudulent transfers were for less than reasonably equivalent value."[4] *Id.* Moreover, Counts One through Five are pled against "all defendants" even though the facts giving rise to the avoidance claims against Manifold Markets, Inc. are distinct from those alleged against Ross. *See* *Arrington v. H.I.G. Capital Mgmt. LLC*, Adv. Pro. No. 25-50002 (JKS), at 11–12 (Bankr. D. Del. Aug. 13, 2025) (dismissing because complaint "impermissibly lumps the defendants together"). The result is that this is a "typical shotgun complaint" where the counts "contain irrelevant factual allegations and legal conclusions." *Id.* at 13 (citing *OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510 (Bankr. D. Del. 2006).

Courts in the Third Circuit have also dismissed shotgun complaints with prejudice where, as here, they are riddled with conclusory allegations. *See*, *e.g.*, *Litwak v. Tomko*, No. 3:16-CV-00446, 2018 U.S. Dist. LEXIS 74773 at *1, *13 (M.D. Pa. Mar. 19, 2018). The Trust baldly labels Ross's employment for Latona a "sham." Amended Complaint, ¶ 44. To the contrary, that the Trust subsequently clawed back as property of the estate funds Latona donated and invested indicates that Ross faithfully performed his duties to research and direct charitable grants and life science investments. Relying, as the Trust does in its Opposition, "on repetition" – stating that

---

[4] Contrary to the Trust's naked assertion, Ross indeed "dispute[d] that the Debtors failed to receive reasonably equivalent value for [the FDU] obligation." Opposition at 6. Ross argued throughout the Opening Brief that the Trust cannot claim that Ross's employment or the FDU Bonus were fraudulent because the Trust stipulated that Ross's Employment Agreement was valid, enforceable, and fully integrated. Ross's employment was reasonably equivalent value for his employment compensation. *See* Opening Brief at pp. 2, 3, 6.

Latona was a "sham" at least five times (*see* Opposition at pp. 1, 3, 13, 14) – does not "allege a cognizable claim." *Litwak v. Tomko*, 2018 U.S. Dist. LEXIS at 14 (dismissing complaint with prejudice for repeating the conclusory label "sham" without alleging related facts). The Trust repeats "sham" ad nauseum, but the truth is that there are no allegations that Ross participated in the underlying FTX fraud, that he controlled which FTX affiliate paid his salary, or that he did anything other than diligently perform the work assigned by his supervisor at Latona until FTX collapsed. Such claims would be frivolous and the Trust knows it.

Most egregiously, the Amended Complaint never provides a short and plain statement of what the Trust is seeking to avoid. The Amended Complaint defined *FDU Obligation* to mean Ross "subsequently" – that is, *after* the Court overruled the Trust's claim objection on June 25, 2025 – "designat[ing] Manifold for Charity as the beneficiary of the $650,000 FDU Bonus." *Id.* at ¶ 46. The plain language of the Amended Complaint states that the Trust sought to avoid Ross's *postpetition* designation of Manifold for Charity, not his employment claim for the FDU Bonus. The Amended Complaint's emphasis on Ross designating Manifold for Charity is why the Motion properly focused on the Trust's inability to state an avoidance claim based on Ross's postpetition designation of Manifold for Charity: The Trust explicitly defined and described what it sought to avoid as Ross's *postpetition* beneficiary choice, not his prepetition employment bonus.

But even if the Court parses the contradictory Amended Complaint and finds it sufficiently put Ross on notice that the Trust seeks to avoid an obligation incurred pre-petition, the Trust still has not pointed to where in the Amended Complaint it made a short and plain statement of *why* the identified pre-petition obligation is avoidable. After defining *FDU Obligation* to mean Ross's postpetition designation of Manifold for Charity, the Amended Complaint's next three paragraphs contain the Trust's concern-trolling that "there are material connections between Manifold for

Charity and key individuals connected to these Chapter 11 cases" and how Ross's position as a Manifold for Charity director purportedly "empowers him to direct the FDU Bonus to line his own pockets at the expense of FTX creditors" and a bunch of false or immaterial innuendo about who worked at Manifold for Charity and where it hosts a conference, and who it once considered for – but did not add to – its board of directors. *Id.* at ¶¶ 47-49. These allegations are mere innuendo, and in any event they all relate to Ross's *postpetition* designation of Manifold for Charity, not anything that happened prepetition to purportedly make the FDU Bonus avoidable. Because Ross had not designated the beneficiary until after the FDU Claim was allowed, the Trust's allegations about Manifold for Charity are irrelevant. They could not put Ross on notice of why the Trust believes that its prepetition obligation to pay the FDU Bonus is avoidable.

The Trust tries to deceive the Court when it claims, citing Amended Complaint ¶ 45, that the Amended Complaint contains a "well-pled allegation that the Debtors incurred the *FDU Obligation* '[o]n or about September 1, 2022.' " Opposition at 8 (emphasis added). Paragraph 45 does nothing of the sort. It defines $650,000 in directed grants to any EA Cause as the FDU *Bonus*. Yet the Trust now proclaims that the Amended Complaint does not seek to avoid the FDU Bonus – Ross's employment compensation – but instead the FDU Obligation. The Trust did not even define *FDU Obligation* to mean that Ross "*subsequently designated Manifold for Charity as the beneficiary of the $650,000 FDU Bonus*" until the next paragraph. *Id.*, ¶ 46 (emphasis added). Thus, the Trust's argument that Amended Complaint ¶ 45 is well-pled as to the FDU Obligation is objectively false. The Trust's willingness to make misrepresentations, even as to the content of its own Amended Complaint, in furtherance of its vendetta against Ross could not be more evident.

The Amended Complaint should be dismissed as to Ross under Rules 8(a)(2) and 10(b). For the reasons that follow, the Court should dismiss the Amended Complaint with prejudice and

without leave to amend because amendment would be futile.

**II. The Amended Complaint's allegations are barred by release and stipulation.**

Ross and the Debtors executed the Latona Settlement. This is incapable of dispute. Trust counsel admitted that the Trust released Ross from claims relating to Latona in a colloquy during the June 25, 2025 oral argument on the objection to claim:

> This all arises out of what was a substantial piece of fraudulent transfer litigation. What [Ross] was doing, we had significant concerns, we had serious allegations about what Latona, itself, what all these charitable donations that were coming out of this entity were doing. We did claw those amounts back. **There were settlements. So the merits of our allegations were never adjudicated by the Court, because we managed to settle those claims consensually, okay**.

Transcript at 39:21 – 40:5.

The Latona Settlement released Ross from "any and all claims, counterclaims, demands, liabilities, suits, debts, costs, expenses, and causes of action, at law or in equity" related to the Latona Adversary Proceeding. Latona Settlement, pp. 8-9. The only carveout was for "obligations under or claim for breach of" the Latona Settlement. *Id.* at 9. Consequently, the Trust's claim relating to the purported "sham" Latona "is precluded unless it is somehow deemed to have arisen under the [Latona Settlement]." *In re WorldCorp, Inc. & WorldCorp Acquisition Corp.*, No. 99-298 (MFW) at *5 (Bankr. D. Del. Aug. 17, 2000).

The Latona Complaint alleged, just as the Trust does here, that "Latona was a sham non-profit company organized in the Bahamas." Latona Complaint, ¶ 5. The Latona Complaint further alleged that "the FTX Foundation and Latona took over $71 million of commingled funds from Alameda and FTX accounts to make investments in and donations to life sciences companies for Bankman-Fried's personal aggrandizement." *Id.* Compare those allegations to the Amended Complaint: "Latona was a sham Bahamian non-profit entity that Bankman-Fried and Rheingans-Yoo directed that made investments, funded entirely by Alameda, in lifesciences companies." *Id.*

at ¶ 44. The allegations are substantially identical. Because the Debtors released claims that Ross knowingly assisted Bankman-Fried's breach of fiduciary duties in connection with Latona (*see* Latona Complaint, ¶¶ 166-175), the Trust cannot now allege that Ross conspired with Bankman-Fried to breach fiduciary duties by awarding Ross a fraudulent bonus based on his work for Latona.

Again, Trust counsel admitted: "There were settlements." Whatever "significant concerns" (Transcript, 39:21 – 40:5) the Trust may have had about Ross's work for Latona were released "unconditionally and irrevocably." Latona Settlement, ¶ 10. There is no allegation in the Amended Complaint that Ross breached the Latona Settlement. Therefore, released claims about Ross's work for Latona cannot support a fraudulent transfer claim now.

The Trust likewise cannot claim that Ross's compensation by Alameda while he worked for Latona was a badge of fraud. Courts need not accept allegations that contradict matters properly subject to judicial notice. *See* *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). Here, the Trust and Ross agreed to the Stipulated Facts. The Court can take judicial notice of them. When it does, the Court will see that the Trust's claim in the Amended Complaint that Ross was compensated by Alameda (*see* Opposition at p. 1) is false. It is belied by paragraph 46 of the Stipulated Facts, which provides that Ross's salary and cash bonus "were paid from bank accounts of non-Debtor FTX Digital Markets Ltd." Additionally, paragraph 21 of the Stipulated Facts describes "Final Ross Terms" – the Google Document that formed the basis for Ross's employment with the Debtors. Final Ross Terms acknowledged that Ross's compensation would be paid "from whatever entity operationally convenient." The Employment Agreement provides that Ross could be seconded to work for "an affiliate of [Alameda], or for any other entity as [Alameda] may request." Stipulated Facts, ¶¶ 26-27. None of this was concealed or misrepresented.

As importantly, Ross's work for Latona cannot be a badge of fraud because the Trust

stipulated that it was not. We have established that the Trust relies on scare quotes to prop up feeble legal arguments.[5] Here, the Trust puts scare quotes around Ross's *work* for the Debtors in a futile attempt to avoid the Trust's concession that Ross's Employment Agreement with Alameda is "enforceable according to its terms." Stipulated Facts, ¶ 31. The Trust also admitted that the Debtors had discretion to award Ross a bonus. *Id.* at ¶ 28. Final Ross Terms explained that any discretionary bonus paid to Ross would be "distributed as a 50/50 split between cash and 'foundation direction units (FDU).' " *Id.* at ¶ 21. The Trust stipulated that the Debtors in their discretion awarded Ross a bonus (*id.*, ¶¶ 38-41) half in cash and half in FDUs. *Id.* The Trust allowed and paid the cash portion of Ross's bonus without objecting on the ground of fraud.

So how can it be that the discretionary bonus Ross earned for his employment under a valid and enforceable Employment Agreement is allowable as to the half that was paid in cash but fraudulent as to the half that Ross negotiated to give to charity? It is the same discretionary bonus; either Ross earned the whole thing through valid employment, or his entire employment was a fraud. The Trust cannot have it both ways. Paying the cash portion was an admission that Ross's employment and bonus were not a fraud. In any event, the Trust's prior stipulation that Ross's Employment Agreement with Alameda is enforceable precludes the Trust's argument now that Ross's work for the Debtors pursuant to that Employment Agreement was an avoidable fraud.

**III. The Amended Complaint is barred by claim and issue preclusion.**

*Res judicata*, also known as claim preclusion, "gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding." *Bd. of Trs. of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 504 (3d

---

[5] *See FTX Recovery Trust's Motion For Reconsideration or to Modify Order Allowing Rheingans-Yoo's FDU Claim* [Main Case D.I. 31846] at ¶¶ 1, 2, 3, 4, 5, etc., placing scare quotes around the words *charitable and charity and charities* even as the Trust vigorously admits that Manifold for Charity is an effective altruist cause.

Cir. 1992). This equitable doctrine requires: "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." *Id*. (citation omitted). The Supreme Court has noted that the normal rules of *res judicata* apply to the decisions of the bankruptcy courts. See *Katchen v. Landy*, 382 U.S. 323, 334 (1966).

Here, there are two prior judgments precluding the Amended Complaint against Ross. The first is the Latona Settlement. The Third Circuit has concluded on a number of occasions that a settlement agreement constitutes a final judgment on the merits. *See, e.g., Weber v. Henderson*, 33 F. App'x 610, 612 (3d Cir. 2002). The Latona Settlement released Ross from anything related to the "Adversary Claims," defined in the Latona Settlement to mean claims that FTX and Alameda made fraudulent transfers through Latona, and that Ross aided and abetted Bankman-Fried's breach of fiduciary duties. Latona Settlement at 3. The Debtors alleged in the Latona Complaint that Ross "knew that [Latona's] transactions with the Lifesciences Defendants did not provide and had virtually no prospect of providing Alameda with reasonably equivalent value, and that Bankman-Fried personally benefited from the transactions." *Id.*, ¶ 169. The Trust now argues[6] that the Amended Complaint alleges the same thing: Latona was "funded by commingled and misappropriated assets from FTX Group customers in connection with Mr. Bankman-Fried's well-publicized fraudulent scheme…" Opposition at 1. The Latona Settlement precludes any claim by the Trust that Ross engaged in wrongdoing because he "directed 'a sham Bahamian non-profit entity' that made Debtor-funded investments behind closed doors." Opposition at 14 (quoting Amended Complaint ¶¶ 44-45).[7]

---

[6] The Amended Complaint does not actually allege that the *FDU Obligation* relates to prepetition conduct.

[7] The Trust cannot be heard to argue that dismissal is premature because its claims about the "sham" Latona should be fleshed out by discovery. The Trust advised the Court in the Latona Settlement that it would *object* to fact discovery into the FDU claim because the claim was "primarily legal in nature." *Id*, ¶ 8 FN 5. The Trust agreed in the Stipulated Facts that the resolution of the FDU claim "turns solely on legal issues." *Id.* ¶ 12.

The second prior judgment precluding the Amended Complaint against Ross is the Court's order overruling the Trust's objection to Ross's employment claim. "[A]llowed proofs of claim are equivalent to a final judgment and 'a bankruptcy court order allowing an uncontested proof of claim constitutes a 'final judgment' and thus a predicate for *res judicata*.' " *In re Blackhawk Corp.*, No. 13-10282(KG), 2016 Bankr. LEXIS 2217 at * 3 (Bankr. D. Del. May 26, 2016) (citing *EDP Med. Computer Sys. v. United States*, 480 F. 2d 621, 625 [2d Cir. 2007])). Logically, if an order allowing an uncontested proof of claim is a final judgment predicate for *res judicata*, then, as here, an order allowing a contested proof of claim after full briefing and a hearing is one, too.

In the briefing and at the June 25, 2025 hearing, Ross argued – and the Trust acknowledged the argument – that the FDU Bonus is employment compensation. *See* Transcript at 24:11-18:

> THE COURT: It's not abundantly clear to me why you don't think it would be a valid claim, because under -- isn't the theory that it is part of his bonus compensation?
>
> MR. GLUECKSTEIN: His theory is that it's part of his bonus compensation, right.
>
> THE COURT: Okay.
>
> MR. GLUECKSTEIN: The question is whether or not the bonus compensation offer was, in fact, accepted.

Trust counsel admitted that the only "question" was "whether or not" Ross timely "accepted" the FDU Bonus. *Id.* Following oral argument, the Court allowed Ross's FDU Claim and ruled that the FDU Bonus was employment compensation: "I do believe that the claim was part of his bonus, as indicated by the subsequent memorandum of Mr. Bankman-Fried, outlining the terms of the discretionary bonus approved by the company." *Id.* at 46:4-7.

In the Opposition, the Trust loudly proclaims that the Amended Complaint "plausibly seeks to avoid a pre-petition obligation," one that arose "[o]n or about September 1, 2022." *Id.* at 7-8. The Trust defines the obligation as the "result of an employment bonus [Ross] negotiated directly

with Mr. Bankman-Fried for purported work for a Debtor affiliate that only nominally employed him." *Id.* at 8 (citing Amended Complaint ¶ 45). Again, the Trust admits that the FDU Bonus was employment compensation. The asserted basis for disallowing Ross's claim is that Ross worked for Latona while having an employment agreement with Alameda. *Id.* But this is nothing new. The Trust could have objected to Ross's FDU claim on the ground that his employment by Latona was a "sham" or that the FDU Bonus was fraudulent because it would direct Debtor funds to an EA cause. It did not do so. Ross could not have been entitled to an employment bonus if his underlying employment was a fraud. The Court allowed Ross's claim for that bonus. The non-fraudulent nature of Ross's employment and bonus is now a final judgment and predicate for *res judicata*.

The Trust relies overmuch on its argument that "the Court accepted the Trust's representations that it reserved the right to challenge any transfers or obligations as fraudulent." Opposition at 9 (citing Transcript, 40:14-41:10). The Trust's characterization is misleading. The actual colloquy is not as clear-cut as the Trust implies:

> MR. GLUECKSTEIN: If this money had been paid out in the period we're talking about, if on September 2nd, the claimant had designated the charity and FTX had made the payment, this $650,000 would have been subject to the same clawback as all the other payments that were subject to that litigation and otherwise.
>
> THE COURT: Well, you would have asserted that.
>
> MR. GLUECKSTEIN: We would have asserted that.
>
> THE COURT: Right. That's not fact or law.
>
> MR. GLUECKSTEIN: It's not fact.
>
> THE COURT: The fact is that you would have tried to claw back.
>
> MR. GLUECKSTEIN: And I –
>
> THE COURT: But that's not the facts we have before us.
>
> MR. GLUECKSTEIN: Well, I think it would raise an interesting question if it was

paid out now, whether we still retain those claims because I think –

THE COURT: Absolutely.

MR. GLUECKSTEIN: -- we would seek to claw those back if it were to be paid out now because it's all arising out of the same circumstances. But I guess –

THE COURT: I guess all rights reserved, if I were to allow the claim.

Transcript at 40:8 – 41:6. Although the Court acknowledged that the Trust reserved its rights, the Court did not thereby authorize a challenge to Ross's underlying employment as fraudulent.

The distinction is a material one. A reservation of rights "does not preserve any right to bring claims that would be otherwise barred … It does not provide [the Trust] an affirmative right to relitigate claims barred by *res judicata*." *Haskell v. Goldman, Sachs & Co.*, *(In re Genesis Health Ventures, Inc.)*, 324 B.R. 510, 525 (Bankr. D. Del. 2005).

Here, all three elements of *res judicata* are present. First, the Latona Settlement and the FDU Order overruling the Trust's objection to Ross's FDU Claim are final judgments on the merits. Second, both judgments involve Ross and the Debtors/Trust. And third, the Amended Complaint is a suit brought after entry of the Latona Settlement and FDU Order that raises the same claims asserted in the Latona Adversary Proceeding and could have been raised in the objection to claim sequence. If the Trust sought to void its obligation under the Employment Agreement to pay Ross an awarded discretionary bonus on the basis of fraud, it was required to do so when it objected to Ross's FDU Claim.

Issue preclusion also bars the Amended Complaint. Under this doctrine, the second suit is based upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action. *See* *Baker by Thomas v. GMC*, 522 U.S. 222, 233, n.5 (1998). *See also* *Eugenia VI Venture Holdings, Ltd. v. Maplewood Holdings LLC (In re AMC Investors, LLC)*, 524 B.R. 62, 78 (Bankr. D. Del. 2015) ("even factual

issues that are only implicitly relied upon in reaching a decision can be given preclusive effect"). Here, the Court's judgment that the FDU Claim is allowable was necessarily premised on the validity of Ross's Employment Agreement and the Debtors issuing the Bonus Memo in the course of Ross's employment – facts to which the Trust stipulated. The Trust's attempt to relitigate claims that are precluded is sanctionable.

## CONCLUSION

Revisionist history cannot defeat a motion to dismiss. The Amended Complaint defined *FDU Obligation* to mean Ross "designated Manifold for Charity as the beneficiary of the $650,000 FDU Bonus" *after* the June 2025 hearing. *Id.* at ¶ 46. The postpetition designation could not affect the validity of Ross's prepetition employment compensation. The Amended Complaint does not plausibly state a claim for avoidance of a prepetition obligation.

Should the Court tolerate the Trust's defective pleading, the claim that Ross worked for a "sham" Latona or participated in Bankman-Fried's fraud was released in the Latona Settlement. The claim that Alameda compensated Ross improperly for work he performed while on assignment to Latona is false and, given Ross Terms stating that the Debtors would pay Ross "from whatever entity operationally convenient," irrelevant. The claim that Ross's employment for Latona was a "sham" and Ross's employment income was a fraud is further belied by the Stipulated Facts, which provide that the Employment Agreement was enforceable.

And, most importantly, the allowance of Ross's FDU Bonus was decided. The Trust could have objected to the FDU Claim on the ground that it should be disallowed due to fraud, but the Trust did not. The Court (at least) implicitly relied on the validity of Ross's employment when allowing the FDU Claim. Both claim and issue preclusion bar the Trust's claims now. Amendment to the Amended Complaint would be futile. It should be dismissed without leave to amend.

Dated: November 13, 2025
Wilmington, DE

*/s/Michael J. Joyce*
Michael J. Joyce (No. 4563)
**JOYCE, LLC**
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 388-1944
mjoyce@mjlawoffices.com

-and-

Scott D. Simon (*pro hac vice*)
**GOETZ PLATZER LLP**
One Penn Plaza, Suite 3100
New York, NY 10119
Telephone: (212) 695-8100
ssimon@goetzplatzer.com

*Attorneys for Defendant Ross Rheingans-Yoo*