**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>FTX TRADING, LTD., *et al*.,<br><br>      Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered)<br><br>**Re: D.I. Nos. 32780, 33420** |
| FTX RECOVERY TRUST,<br><br>      Plaintiff,<br><br>      - against –<br><br>MANIFOLD MARKETS, INC., MANIFOLD FOR CHARITY, INC., ROSS RHEINGANS-YOO, and FTX PHILANTHROPY, INC.,<br><br>      Defendants. | Adv. Pro. No. 24-50214 (KBO)<br><br>**Re: Adv. D.I. Nos. 60,71** |

**REPLY IN FURTHER SUPPORT OF ROSS RHEINGANS-YOO'S
<u>MOTION FOR SANCTIONS</u>**

**<u>PRELIMINARY STATEMENT</u>**

The Court should view the Trust's Motion for Reconsideration and Amended Complaint for what they are: sanctionable litigation tactics designed to harass Ross, delay payment of his allowed FDU Bonus, and needlessly increase his litigation costs. *See generally* Sanctions Motion.

The best the Trust can do in opposition [D.I. 71 ("<u>Opposition</u>")] is to falsely accuse Ross and his counsel of lying during the June 25, 2025 hearing before this Court. To level this accusation, the Trust fabricates a distinction without a difference, one whose underlying premise is contradicted by the black letter of the Internal Revenue Code. The Trust ignores the jointly

presented evidence and reveals its concern-trolling as pretense when it refuses to cooperate with good-faith attempts to resolve its purported "concerns" to perpetuate its litigation against Ross.

The Court held that Ross had standing to assert a claim for the FDU Bonus and he timely accepted it. A proper motion for reconsideration would present new evidence that would have changed the Court's findings. The Trust's Motion for Reconsideration strays far from these bounds and lays bare the Trust's vindictive campaign against Ross. It is sanctionable under three separate subsections of Fed. R. Bankr. P. 9011(b). First, it makes factual contentions without evidentiary support. Second, its legal contentions are frivolous and not warranted by law. Third, its pleadings are presented for improper purpose: harassment, delay, and needless increase of litigation costs.

The Motion for Reconsideration contains factual contentions that lack evidentiary support. This is on clearest display in the Trust's assertions that Nishad Singh "currently works as an engineer at Manifold for Charity" and that payment of the FDU Obligation "could be used to pay a salary to Singh . . . who now works at Manifold for Charity." Motion for Reconsideration, ¶¶ 2, 39, 48). This is false. *See* Sanctions Motion at ¶ 59, Sanctions Motion Ross Decl. ¶ 5. The Trust misrepresents its own pleadings when it flip-flops to say Mr. Singh "worked at Manifold for Charity for a period of time." Trust's Reply on Motion for Reconsideration [D.I. 33034], ¶ 2. The Trust's Reply implies the change is minor but it is instead material: The retreat collapses the entire argument for the allegation's relevance.

Another falsehood is the Trust's attempt to distinguish between a charity and a "donor-advised fund at a charity" Opposition at 13. This is a distinction without a difference. *See* Opposition to Motion for Reconsideration, Ross Decl. ¶¶ 7-12. The Trust's argument is premised on its misreading of charitable statute so basic that it must be willful. The Trust cannot be unaware that a donor-advised fund ("DAF") is merely a particular methodology for organizing the activities

of a § 501(c)(3) charity (the "sponsoring organization"). The regulation of DAFs is more stringent

– not less – than the regulation of charities under Internal Revenue Code ("IRC") § 501(c)(3).

Operating a DAF does not lessen the duty of the sponsoring organization to ensure that no part of

a donation inures to the benefit of any private shareholder or individual, including the donor-

advisor. *See* 26 U.S.C. § 4966. Because "no part" of donations to Manifold for Charity can be used

for Ross's personal benefit (regardless of Ross's advice as donor-advisor), the Trust's insincere

concerns about Ross trying to "lin[e] his own pockets" (Opposition at 12) are sanctionable.

A second prong of Rule 9011(b) is implicated because the Motion for Reconsideration is

not warranted by law. Ross's designation of Manifold for Charity is not new evidence that would

have changed the Court's decision granting the FDU Claim. The Trust's conclusory contention

that "the designation of Manifold for Charity . . . is material to the analysis of the FDU Claim"

(Motion for Reconsideration, ¶ 46) does not create relevance where there is none. The identity of

the designee was immaterial to the findings of law that (1) the FDU Bonus is Ross's employment

compensation and (2) he timely accepted the bonus. Those were the only issues the Trust placed

before the Court. The Trust moves to reconsider without providing new evidence material to *these

issues*. Its baseless legal contentions cannot be warranted by existing law and are sanctionable.

Satisfying a third, independent prong for sanctions under Rule 9011, the Motion for

Reconsideration is intended to increase Ross's litigation costs. If it were not so intended, then

Ross's voluntary redesignation of the FDU beneficiary from Manifold for Charity to 1Day Sooner

– a separate 501(c)(3) EA charity that does not sponsor DAFs and where Ross is not a director –

resolves the Trust's purported "concerns." The Trust refuses the redesignation. *See* Opposition at

p. 19. This refusal – purportedly based on the tortured grammatical distinction between definite

and indefinite articles (*see id.* at p. 14) – is incompatible with the Trust's professions of good faith

and establishes that the Trust (and its counsel) continues to multiply proceedings, thereby increasing costs to Ross and the FTX victims in whom the Trust professes to care. It is evidence that the Trust does so willfully. The Trust correctly identifies the high standard for sanctions under Rule 9011(b)(1). *See* Opposition at pp. 8-9. Here, however, the Trust's own behavior surpasses it.

The Amended Complaint is worse. It asserts claims that were released and contradict a jointly submitted stipulation. The Amended Complaint as to Ross is precluded by law; there are no grounds to raise its subject matter that are not so barred. It, too, is unsupported by existing law and so completely without merit as to require a conclusion that it was filed for an improper purpose.

The Stipulation of Undisputed Facts Relating to Ross Rheingans-Yoo's FDU Claim [D.I. 29218, ("Stipulated Facts")] contains the Trust's agreement that Ross's Employment Agreement was valid and enforceable. It memorializes that Ross could be seconded by Alameda to the FTX Foundation and paid by an entity other than Alameda. And it records the Trust's own assertion that the FDU Claim is "primarily legal in nature" Stipulated Facts at 8 FN 5. The Trust cannot now argue that Ross's valid employment and compensation pursuant to that employment is fraudulent.

The Debtors, in privity with the Trust, previously alleged that Ross aided and abetted Sam Bankman-Fried's misdeeds in his employment for Latona. *See* the Trust's Amended Complaint [D.I. 73 ("Latona Complaint")] in the adversary proceeding captioned *Alameda Research Ltd., et al. v. Platform Life Sciences Inc., et al.*, Adv. Pro. No. 23-50444 (JTD) ("Latona Adversary Proceeding") at ¶ 10. Those claims were settled and released "unconditionally and irrevocably" in May 2024. Latona Adversary Proceeding D.I. 106 ("Latona Settlement"). The Latona Settlement bars those claims as *res judicata* so they fail as a matter of law. They are likewise barred by the doctrine of issue preclusion, as this Court necessarily decided the validity and non-fraudulent nature of Ross's employment when it allowed the FDU Claim.

## **ARGUMENT**

### **I.  The Motion for Reconsideration is sanctionable.**

    a.  <u>The Motion for reconsideration presents no new evidence material to its argument.</u>

The Trust's request for reconsideration is premised on Ross's designation of Manifold for Charity after the Court allowed Ross's FDU Claim. *See* Opposition at pp. 10-11 (citing *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237 (3d Cir. 2010)). The Motion for Reconsideration is sanctionable not because Manifold for Charity's designation was available before the decision, but because the Trust has no basis to object to Manifold for Charity at all. The Trust's own citation to *Howard Hess* is instructive. There, the Third Circuit observed that the District Court denied a motion for reconsideration because the movant failed to show that the evidence sought to be introduced "would be relevant." *Id.* at 251. Ross's designation of Manifold for Charity may be new evidence, but the Trust has not explained the necessary "significance of the new evidence." *Plisco v. Union R. Co.*, 379 F.2d 15, 16 (3d Cir. 1967). Nor could it.

The Trust objected to the FDU Claim on the ground that Ross lacked standing to assert it because the FDU Claim would be paid to a charity. Yet the Trust's focus in the Motion for Reconsideration is the false claim that Ross "(mis)represented to the Court that he would not seek to pay himself and instead sought to pay a charity (not a [DAF] at a charity for which he served as a director, and from which he could pay an entity he controlled)." Opposition at 13. The Trust falsely implies that Ross argued for allowance of the FDU Claim because it would support a charity that eschews DAFs, and not a charity on which Ross serves on the board of directors. *See id.* at 14 ("the Court relied on these (mis)representations in allowing the FDU Claim to be paid to a charity"). That is false. Ross's actual position was "The Court should allow the wage claim because I have standing to assert it." *See* June 25, 2025 hearing transcript ("Transcript") at 32:11-14 (Ross

"is asserting the claim because he has a right, a property right, a wage right to direct payment to a charity that he designates"). The Court considered the papers and oral argument, then ruled that Ross indeed had a property right in the FDU Bonus because it was employment compensation: "I do believe that the claim was part of his bonus, as indicated by the subsequent memorandum of Mr. Bankman-Fried, outlining the terms of the discretionary bonus approved by the company." Transcript at 46:4-7. The Court did not rule that the FDU Bonus was part of Ross's compensation because Ross represented that beneficiary would be organized in a certain way. In fact, the Court overruled the Trust's objection to the claim *notwithstanding* that it would be paid to an EA charity.

The upshot is that the identity of Manifold for Charity as the beneficiary could not have changed the Court's analysis of the two issues in the claim objection, namely whether Ross had standing and whether he timely accepted the bonus. Because the legal contentions of the Motion for Reconsideration have no possibility of success, the Trust is subject to sanctions.

b. The Motion for Reconsideration's contention of "manifest injustice" is frivolous.

Likewise sanctionable is the Trust's baseless assertion that paying the FDU Bonus to Manifold for Charity would result in a manifest injustice. *See* Opposition at p. 13. Unlike the "myriad 'charities' " (*id.*) from which the Trust has recovered fraudulent transfers, Manifold for Charity is a proper recipient under the Bonus Memo because it is "any EA-driven cause." *Id.* at 3. The Trust's argument that "[v]ictims of the FTX fraud" (Opposition at 13) are injured by Ross receiving his FDU Bonus employment compensation is as frivolous as it would be as an objection to any other wage claim. Yet, in good faith, Ross redesignated 1Day Sooner as the beneficiary.

c. The Opposition improperly introduces immaterial new arguments and evidence on reply.

Having no response except a bad-faith refusal to the redesignation, the Trust moves the goalposts. Now, the Trust argues that a donation to Manifold for Charity is equivalent to the Trust

paying the FDU Bonus directly to Ross because Manifold for Charity would hold the funds in an account in Ross's name. This argument is frivolous, also for two reasons.

First, when the Trust sought reconsideration on July 23, 2025, the motion was devoid of any "account in Ross's name" argument because it was not until August 8, 2025 when Ross's counsel discussed with Trust counsel that Manifold for Charity is a DAF. The Trust could not have been concerned on July 24, 2025 that the FDU Bonus would be paid to an account in Ross's name, since the conversation occurred on August 8, 2025. The Trust knows that its contention that the funds are going to Ross rather than an EA charity on the basis of the August 8 conversation is a frivolous one because its own Opposition says that the Sanctions Motion should be decided on the evidence at the time the offending pleading was filed, not what came after. *See* Opposition at p. 14 (citing *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988)). The Opposition's purported "concerns" about an "account in Ross's name" are not warranted by existing law.

Second, even if the Court considers the new argument submitted on reply, it is patently false. The Trust betrays its ignorance when it argues that "a donor-advised fund is obviously not an 'EA cause' or itself a 'charity.' " Trust's reply on Motion for Reconsideration [D.I. 33034] at 7. In fact, Manifold for Charity is a nonprofit that organizes certain of its projects with DAFs that accept statutorily limited, non-binding advice from donor-advisors. The Trust acknowledged that Vanguard Charitable similarly sponsors donor-advised funds. *Id*. at p. 8. Like Vanguard Charitable, Manifold for Charity is chartered under 26 U.S.C. § 501(c)(3) and bound by 26 U.S.C. § 4967, which provides that even otherwise-permissible grants cannot confer more than an incidental benefit on the donor. That is, a donor cannot receive a return benefit from donating. Under § 4967(a), a donor who does so would suffer a 125% tax. The upshot is that if Ross, as the Trust baldly asserts, really were donating to Manifold for Charity for his own benefit, he would

open himself up to liability for a tax 125% of the amount of the FDU Bonus. Given Ross's

charitable history – he has donated over $700,000 of his own money since 2014, not counting the

FDU Bonus, and mostly to DAFs – the Court need not countenance the Trust's wild speculation

that Ross designated Manifold for Charity just to risk nearly a million dollars in penalty taxes.

Contrary to the Opposition and in line with the Internal Revenue Code, a charity-sponsored

DAF is indeed a project of that charity and a DAF cannot allow Ross to personally benefit from

his donations. The Trust's "weak grasp" of the law applying to charities "caused it to pursue a

course of conduct which was not warranted by existing law and compelled [Ross] to expend time

and money in needless litigation." *Zuk v. Eastern Pa. Psychiatric Inst. of the Medical College*, 103

F.3d 294, 300 (3d Cir. 1996) (imposing sanction).

d.  The Trust's refusal to resolve its "concerns" evinces its improper purpose.

The only manifest injustice presented on the Motion for Reconsideration is the Trust's

insistence on litigating insincere "concerns" about Manifold for Charity while refusing to accept a

redesignation to a charity with none of those concerns. What could be a more "needless increase

in the cost of litigation" (Fed. R. Bankr. P. 9011(b)) than the Trust refusing to accept a resolution

that completely addresses its stated concerns? What proper purpose can motivate such a refusal?

The Opposition attempts to argue that the Trust's conduct between its filing the Motion to

Reconsider and the filing of the Sanctions Motion is unavailable as a badge of its intent. *See*

Opposition at p. 14. This argument is ridiculous. FRBP Rule 9011(c)(2)(A-B) provides that

opposing counsel be provided 21 days' notice of a movant's intention to seek sanctions, precisely

to give the non-movant an opportunity to correct their conduct in light of movant's claims and

argument. It is incoherent to argue the non-movant's subsequent conduct should be analyzed as if

the non-movant were ignorant of the sanction motion's content. The Trust's refusal after receiving

notice of the Sanctions Motion requires the conclusion that its pleadings remain uncorrected for some improper purpose, and are thus sanctionable. Finally, the Trust cannot be heard to argue that its conduct is blameless because it would have accepted the redesignation but for its honest belief that this Court sought to bar it from doing so by using the word "the" rather than "a." The Trust deceives this Court to pretend this grammatical confusion.

## II. The Amended Complaint is sanctionable.

   a. <u>The avoidance claims against Ross are barred by release and stipulation</u>.

Ross and the Debtors executed the Latona Settlement. This is incapable of dispute. Trust counsel admitted that the Trust released Ross from claims relating to Latona:

> This all arises out of what was a substantial piece of fraudulent transfer litigation. What [Ross] was doing, we had significant concerns, we had serious allegations about what Latona, itself, what all these charitable donations that were coming out of this entity were doing. We did claw those amounts back. **There were settlements. So the merits of our allegations were never adjudicated by the Court, because we managed to settle those claims consensually, okay**.

Transcript at 39:21 – 40:5.

The Latona Settlement released Ross from "any and all claims, counterclaims, demands, liabilities, suits, debts, costs, expenses, and causes of action, at law or in equity" related to the Latona Adversary Proceeding. Latona Settlement, pp. 8-9. The only carveout was for "obligations under or claim for breach of" the Latona Settlement. *Id.* at 9. Consequently, the Trust's claim relating to the purported "sham" Latona "is precluded unless it is somehow deemed to have arisen under the [Latona Settlement]." *In re WorldCorp, Inc. & WorldCorp Acquisition Corp.*, No. 99-298 (MFW) at *5 (Bankr. D. Del. Aug. 17, 2000).

The Latona Complaint alleged, just as the Trust does here, that "Latona was a sham non-profit company organized in the Bahamas." Latona Complaint, ¶ 5. The Latona Complaint further alleged that "the FTX Foundation and Latona took over $71 million of commingled funds from

Alameda and FTX accounts to make investments in and donations to life sciences companies for Bankman-Fried's personal aggrandizement." *Id.* Compare those allegations to the Amended Complaint: "Latona was a sham Bahamian non-profit entity that Bankman-Fried and Rheingans-Yoo directed that made investments, funded entirely by Alameda, in lifesciences companies." *Id.* at ¶ 44. The allegations are essentially identical. The Debtors released claims that Ross knowingly assisted Bankman-Fried's breach of fiduciary duties in connection with Latona (*see* Latona Complaint, ¶¶ 166-175), and the Trust cannot now allege that Ross conspired with Bankman-Fried to breach fiduciary duties by awarding Ross a fraudulent bonus based on his work for Latona.

Again, Trust counsel admitted: "There were settlements." Whatever "significant concerns" (Transcript, 39:21 – 40:5) the Trust may have had about Ross's work for Latona were released "unconditionally and irrevocably." Latona Settlement, ¶ 10. Released claims about Ross's work for Latona cannot support a fraudulent transfer claim now, so the pleading is sanctionable.

The Trust likewise cannot claim that Ross's compensation by Alameda while he worked for Latona was a badge of fraud. Courts need not accept allegations that contradict matters properly subject to judicial notice. *See Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). Here, the Stipulated Facts were agreed by the Trust and Ross and filed in this Court. The Court can take judicial notice of them. Ross's work for Latona cannot be a badge of fraud because the Trust stipulated that it was not. We have established that the Trust relies on scare quotes to prop up feeble legal arguments.[1] Here, the Trust puts scare quotes around Ross's *work* for the Debtors in a futile attempt to avoid the Trust's concession that Ross's Employment Agreement with Alameda is "enforceable according to its terms." Stipulated Facts, ¶ 31. The Trust's prior stipulation that

---

[1] *See FTX Recovery Trust's Motion For Reconsideration or to Modify Order Allowing Rheingans-Yoo's FDU Claim* [Main Case D.I. 31846] at ¶¶ 1, 2, 3, 4, 5, etc., placing scare quotes around the words *charitable and charity and charities* even as the Trust vigorously admits that Manifold for Charity is an effective altruist cause.

Ross's Employment Agreement with Alameda is enforceable precludes the Trust's argument now

that Ross's work for the Debtors pursuant to that Employment Agreement was an avoidable fraud.

Because that argument is precluded as a matter of law, it is sanctionable under Rule 11.

b.  The equitable subordination claim is barred by release and stipulation.

The Opposition correctly asserts that whether a creditor's claim should be subordinated is

a fact-intensive inquiry. The Trust, however, declined discovery as to the circumstances of the

FDU Bonus by asserting that factual inquiry was unnecessary. The Trust advised the Court in the

Latona Settlement that it would object to fact discovery into the FDU Claim because it was

"primarily legal in nature." *Id.*, ¶ 8 FN 5. The Trust cannot now be heard to argue that a fact-

intensive inquiry is needed.

c.  The Amended Complaint is barred by the doctrines of *res judicata* and issue preclusion.

*Res judicata*, also known as claim preclusion, "gives dispositive effect to a prior judgment

if a particular issue, although not litigated, could have been raised in the earlier proceeding." *Bd.*

*of Trs. of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 504 (3d

Cir. 1992). This equitable doctrine requires: "(1) a final judgment on the merits in a prior suit

involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause

of action." *Id.* (citation omitted). The Supreme Court has noted that the normal rules of *res judicata*

apply to the decisions of the bankruptcy courts. See *Katchen v. Landy*, 382 U.S. 323, 334 (1966).

Here, there are two prior judgments precluding the Amended Complaint against Ross. The

first is the Latona Settlement. The Third Circuit has concluded on a number of occasions that a

settlement agreement constitutes a final judgment on the merits. *See, e.g., Weber v. Henderson*,

33 F. App'x 610, 612 (3d Cir. 2002). The Latona Settlement released Ross from anything related

to the "Adversary Claims," defined in the Latona Settlement to mean claims that FTX and Alameda

made fraudulent transfers through Latona, and that Ross aided and abetted Bankman-Fried's breach of fiduciary duties. Latona Settlement at 3. The Debtors alleged in the Latona Complaint that Ross "knew that [Latona's] transactions with the Lifesciences Defendants did not provide and had virtually no prospect of providing Alameda with reasonably equivalent value, and that Bankman-Fried personally benefited from the transactions." *Id.*, ¶ 169. The Latona Settlement precludes any claim by the Trust that Ross engaged in wrongdoing because he directed "a sham Bahamian non-profit entity that Bankman-Fried and [Ross] used to make investments, funded entirely by Alameda." Opposition at 4 (quoting Amended Complaint ¶¶ 9, 44).

The second prior judgment precluding the Amended Complaint against Ross is the Court's order overruling the Trust's objection to Ross's employment claim. "[A]llowed proofs of claim are equivalent to a final judgment and 'a bankruptcy court order allowing an uncontested proof of claim constitutes a 'final judgment' and thus a predicate for *res judicata*.' " *In re Blackhawk Corp.*, No. 13-10282(KG), 2016 Bankr. LEXIS 2217 at * 3 (Bankr. D. Del. May 26, 2016) (citing *EDP Med. Computer Sys. v. United States*, 480 F. 2d 621, 625 [2d Cir. 2007])). Logically, if an order allowing an uncontested proof of claim is a final judgment predicate for *res judicata*, then, as here, an order allowing a contested proof of claim after full briefing and a hearing is one, too.

In the briefing and at the June 25, 2025 hearing, Ross argued – and the Trust acknowledged the argument – that the FDU Bonus is employment compensation. *See* Transcript at 24:11-18. Trust counsel admitted that the only "question" was "whether or not" Ross timely "accepted" the FDU Bonus. *Id.* Following oral argument, the Court allowed Ross's FDU Claim and ruled that the FDU Bonus was employment compensation: "I do believe that the claim was part of his bonus, as indicated by the subsequent memorandum of Mr. Bankman-Fried, outlining the terms of the discretionary bonus approved by the company." *Id.* at 46:4-7.

In the Opposition, the Trust loudly proclaims that the Amended Complaint "seeks to avoid … *a pre-petition obligation*." *Id.* at 17 (emphasis in original). The Trust says with no evidence at all that the FDU Bonus was "another creative way in which Bankman-Fried and his cohorts funneled cash surreptitiously to various so-called charities to the detriment of customers." *Id.* But this is nothing new. The Trust could have objected to Ross's FDU claim on the ground that his employment by Latona was a "sham" or that the FDU Bonus was fraudulent because it would direct Debtor funds to an EA cause. It did not do so. Ross could not have been entitled to an employment bonus if his underlying compensation was a fraud. The Court allowed his claim for that bonus. The non-fraudulent nature of Ross's employment and the allowance of his FDU Bonus is now a final judgment and predicate for *res judicata*.

The Trust relies overmuch on its argument that the Trust reserved a right to "seek to avoid" the FDU Bonus if the FDU Claim were allowed. Opposition at 17. (citing Transcript, 40:14-41:10). The Trust's characterization is misleading. Yes, the Court stated at the hearing: "I guess all rights reserved, if I were to allow the claim." Transcript at 40:8 – 41:6. But although the Court let the Trust reserve its rights, the Court did not thereby authorize a challenge to Ross's underlying employment as fraudulent. The distinction is a material one. A reservation of rights "does not preserve any right to bring claims that would be otherwise barred … It does not provide [the Trust] an affirmative right to relitigate claims barred by *res judicata*." *Haskell v. Goldman, Sachs & Co., (In re Genesis Health Ventures, Inc.)*, 324 B.R. 510, 525 (Bankr. D. Del. 2005).

Here, all three elements of *res judicata* are present. First, the Latona Settlement and the FDU Order overruling the Trust's objection to Ross's FDU Claim are final judgments on the merits. Second, both judgments involve Ross and the Debtors/Trust. And third, the Amended Complaint is a suit brought after entry of the Latona Settlement and FDU Order that raises the

same claims asserted in the Latona Adversary Proceeding and could have been raised in the objection to claim sequence. If the Trust sought to void its obligation under the Employment Agreement to pay Ross an awarded discretionary bonus on the basis of fraud, it was required to do so when it objected to Ross's FDU Claim.

The Trust contends that the FDU Order is not *res judicata* because "a trustee does not waive the right to initiate an avoidance action against a creditor to whom objections were made and adjudicated on other grounds." Opposition at 17. The Trust's cases do not support its position.

The Trust first cites *Caliolo v. Saginaw Bay Plastics, Inc. (In re Cambridge Indus. Holdings, Inc.)*, No. 03-1009 (GMS), 2006 U.S. Dist. LEXIS 7939 (D. Del. Mar. 2, 2006) (*see* Opposition at 17), It is true that the District Court in *Caliolo* held that it "cannot be countenanced" to turn a trustee's failure to use § 502(d) into a § 547 waiver. *Id.* at *10. But the record here is more robust: The Trust did not merely fail to use § 502. It litigated Ross's FDU Claim and lost.

Moreover, the District Court in *Caliolo* distinguished *Caliolo v. TKA Fabco Corp. (In re Cambridge Indus. Holdings)*, Nos. 00-1919, 00-1921, 02-3405, 2003 Bankr. LEXIS 577 (Bankr. D. Del. Apr. 2, 2003) ("*TKA Fabco*"), where the court reasoned that a subsequent preference action should be barred on the principles of claim preclusion. *Caliolo* explains that "the *TKA Fabco* court did not analyze the elements of claim preclusion in any meaningful way." Therefore, the *Caliolo* court "express[ed] no opinion regarding that aspect of *TKA Fabco*." *Id.* at 12. This is essential because in *TKA Fabco*, Judge King said that "principles of fairness do not permit sandbagging" by objecting to and obtaining a ruling on a claim and then "after the claim objection has been resolved, commencing an adversary proceeding alleging that the creditor received an avoidable preference." *Id.* at *5-6. Therefore, "the principles of claim preclusion apply" to the FDU Order allowing Ross's claim, "whether or not relitigation of the claim raises the same issues as the earlier

14

claim." *Id.* at 6 (citing *In re Continental Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002)).

The Trust also cites *AmeriServe Food Distrib., Inc. v. Transmed Foods, Inc. (In re AmeriServe Food Distrib., Inc.)*, 315 B.R. 24 (Bankr. D. Del. 2004) (*see* Opposition at p. 17). *AmeriServe* is easily distinguishable because in that case "there ha[d] been no objection to Transmed's claim." *Id.* at 34. *AmeriServe* does not stand for the principle, as the Trust asserts, that a trustee that objects to a creditor's claim and loses can bring a successive adversary proceeding to declare the claim avoidable. Likewise, in *Rhythms NetConnections Inc. v. Cisco Sys. (In re Rhythms NetConnections Inc.)*, 300 B.R. 404 (Bankr. S.D.N.Y. 2003), Cisco Systems, a party in interest, objected to a sale motion and filed a proof of claim. The debtor and Cisco agreed to resolve the objection and allow Cisco's claim. But then the debtor commenced an adversary proceeding seeking to avoid preferential transfers. *Rhythms* did not involve, as here, a fully litigated claim objection and a determination that the objection should be overruled. Here, the record on the claim objection is fulsome and complete. It supports preclusion under *res judicata*.

Issue preclusion also bars the Amended Complaint. Under this doctrine, the second suit is based upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action. *See Baker by Thomas v. GMC*, 522 U.S. 222, 233, n.5 (1998). *See also Eugenia VI Venture Holdings, Ltd. v. Maplewood Holdings LLC (In re AMC Investors, LLC)*, 524 B.R. 62, 78 (Bankr. D. Del. 2015) ("even factual issues that are only implicitly relied upon in reaching a decision can be given preclusive effect"). Here, the Court's judgment that the FDU Claim is allowable was necessarily premised on the validity of Ross's Employment Agreement and the Debtors issuing the Bonus Memo in the course of Ross's employment – facts to which the Trust stipulated. The Trust's attempt to relitigate claims that are precluded is sanctionable.

Dated: November 13, 2025
      Wilmington, DE

*/s/Michael J. Joyce*
Michael J. Joyce (No. 4563)
**JOYCE, LLC**
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 388-1944
mjoyce@mjlawoffices.com

-and-

Scott D. Simon (*pro hac vice*)
**GOETZ PLATZER LLP**
One Penn Plaza, Suite 3100
New York, NY 10119
Telephone: (212) 695-8100
ssimon@goetzplatzer.com

*Attorneys for Ross Rheingans-Yoo*