IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>FTX TRADING, LTD., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (KBO)<br><br>(Jointly Administered) |
| FTX RECOVERY TRUST,<br><br>Plaintiff,<br><br>- against –<br><br>MANIFOLD MARKETS, INC., MANIFOLD FOR CHARITY, INC., ROSS RHEINGANS-YOO, and FTX PHILANTHROPY, INC.,<br><br>Defendants. | Re: D.I. No. 34487<br><br><br><br>Adv. Pro. No. 24-50214 (KBO)<br><br>Re: Adv. D.I. No. 88 |

**DECLARATION OF SCOTT D. SIMON ATTESTING TO
REASONABLE ATTORNEYS' FEES AND NECESSARY EXPENSES
INCURRED BY ROSS RHEINGANS-YOO IN CONNECTION WITH
<u>FTX RECOVERY TRUST'S SANCTIONABLE CONDUCT</u>**

I, Scott D. Simon, hereby declare under penalty of perjury:

1. I am a member in good standing of the Bar of the State of New York and have been admitted *pro hac vice* to practice before this Court. I am a partner of Goetz Platzer LLP and one of the attorneys representing Ross Rheingans-Yoo ("<u>Ross</u>") in the above-captioned proceedings.

2. I submit this declaration pursuant to the Court's January 21, 2026 *Order (I) Denying FTX Recovery Trust's Motion for Reconsideration or to Modify Order Allowing FDU Claim and (II) Granting Ross Rheingans-Yoo's Motion to Dismiss and Motion for Sanctions Under Federal Rule of Bankruptcy Procedure 9011, 28 U.S.C. § 1927, and 11 U.S.C. § 105* [D.I. 34487] (the "<u>Sanctions Order</u>"), which directed counsel for Ross to attest to the fees and expenses that were

1

reasonably incurred by Ross in connection with seeking dismissal of the FTX Recovery Trust's *First Amended Complaint for Avoidance and Recovery of Transfers Pursuant to 11 U.S.C. §§ 105, 544, 548, and 550 and Del. Code Ann. Tit. 6, § 1304 and 1305, and for Disallowance or Subordination of Claim Pursuant to 11 U.S.C. §§ 502 and 510* [Adv. D.I. 38] (the "First Amended Complaint") and opposing the FTX Recovery Trust's *Motion for Reconsideration or to Modify Order Allowing FDU Claim* [D.I. 31846] (the "Reconsideration Motion").

## Procedural History

3. Ross retained Goetz Platzer LLP, as lead counsel, and Joyce, LLC, as co-counsel, in connection with the above-captioned cases.

4. On July 9, 2025, the Court entered its *Order Allowing Ross Rheingans-Yoo's FDU Claim and Overruling the FTX Recovery Trust's Objection to Ross Rheingans-Yoo's FDU Claim* [D.I. 31312] (the "FDU Order").

5. On July 23, 2025, the FTX Recovery Trust (the "Trust") filed the Reconsideration Motion and the First Amended Complaint, both of which expressed "concerns" with Ross's designation of Manifold for Charity as the recipient of the FDUs.

6. On August 14, 2025, I advised Trust counsel by email that Ross would address the Trust's concerns about Manifold for Charity by voluntarily redesignating the charitable beneficiary to 1Day Sooner.

7. On August 15, 2025, Trust counsel emailed me to flatly refuse Ross's redesignation.

8. On August 21, 2025, I served Trust counsel with a safe harbor letter and draft motion under Federal Rule of Bankruptcy Procedure 9011, demanding the withdrawal of the Reconsideration Motion and First Amended Complaint.

9. The draft motion explained that Ross had resolved the Trust's purported concerns with Ross's designated beneficiary, Manifold for Charity, by voluntarily redesignating the beneficiary to 1Day Sooner. The draft motion further explained that the Trust's rejection of the redesignation was in bad faith and would multiply the proceedings and waste judicial resources.

10. On September 11, 2025, Trust counsel responded by letter, refusing to withdraw the Reconsideration Motion and First Amended Complaint.

11. Trust counsel wrote in its September 11, 2025 letter that Ross's redesignation of the beneficiary was a "red herring" that "does not resolve the Trust's concerns."

12. On September 18, 2025, I again wrote to Trust counsel explaining that Ross's redesignation of the beneficiary was not a red herring but instead the key to the safe harbor letter.

13. My September 18, 2025 letter advised Trust counsel that either the Trust had legitimate concerns about Manifold for Charity that were resolved by Ross redesignating the charity to 1Day Sooner, or the Trust was concern-trolling to deny Ross his earned employment compensation because the Trust did not like the Court's FDU Order overruling the Trust's claim objection.

14. My September 18, 2025 letter offered Trust counsel additional time to consider whether to withdraw the frivolous pleadings.

15. On September 22, 2025, Trust counsel responded by letter, rejecting my offer of additional time to consider whether to withdraw the Reconsideration Motion and First Amended Complaint, and reiterating the Trust's refusal to withdraw them.

16. Accordingly, on September 26, 2025, Ross filed his *Motion for Sanctions Under Federal Rule of Bankruptcy Procedure 9011, 28 U.S.C. § 1927, and 11 U.S.C. § 105* [D.I. 32780, Adv. D.I. 60] (the "<u>Sanctions Motion</u>"), opposition to the Reconsideration Motion [D.I. 32779] and a motion to dismiss the First Amended Complaint [Adv. D.I. 61] (the "<u>Motion to Dismiss</u>").

3

17. On October 10, 2025, the Trust filed a reply in further support of the Reconsideration Motion [D.I. 33034].

18. On October 30, 2025, the Trust filed oppositions to the Sanctions Motion [Adv. D.I. 71] and the Motion to Dismiss [Adv. D.I. 72].

19. On November 13, 2025, Ross filed replies in further support of the Sanctions Motion [Adv. D.I. 75] and Motion to Dismiss [Adv. D.I. 74].

20. On January 20, 2026, the Court held hearings on the Reconsideration Motion, Motion to Dismiss, and the Sanctions Motion. On the record of the hearing, the Court denied the Reconsideration Motion and granted the Motion to Dismiss and the Sanctions Motion.

21. The Court ruled that there was no valid basis for the Trust denying Ross the opportunity to redesignate the charity; that the Amended Complaint's allegations about Ross's conduct were barred by *res judicata* because they were not raised in the Trust's claim objection; and that the Trust's wasteful litigation had harmed the Trust, Ross, and the Court. The transcript of the January 20, 2026 hearing is annexed as **Exhibit 1**.

22. On January 21, 2026, the Court entered the Sanctions Order directing Ross's counsel to file this declaration.

**Attestation of Fees and Expenses**

23. Ross incurred **$111,868.07** in reasonable legal fees and expenses in connection with seeking dismissal of the First Amended Complaint and opposing the Reconsideration Motion.

24. The Third Circuit Court of Appeals follows the Supreme Court's lodestar method for determining the amount of a reasonable fee. "[T]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The result of this

computation is called the lodestar. The lodestar is strongly presumed to yield a reasonable fee. *See City of Burlington v. Dague*, 505 U.S. 557 (1992); *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996).

25. The general rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the community. *See Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984); *Student Public Interest Research Group v. AT & T Bell Laboratories*, 842 F.2d 1436, 1448 (3d Cir. 1988).

26. Three attorneys provided services to Ross in connection with these matters: myself and Gary M. Kushner, both partners of Goetz Platzer LLP; and Michael J. Joyce, a partner of Joyce, LLC. Goetz Platzer LLP paralegal ToniMarie McGrath assisted with certain filings.

27. My billable rate was $650 in 2025 and $685 in 2026. Mr. Joyce's billable rate was $425 throughout. Mr. Kushner's billable rate was $700 in 2025. Ms. McGrath's billable rate was $285 in 2025. Mr. Kushner and Ms. McGrath have not provided legal services to Ross in 2026.

28. We seek a blended hourly rate of $626.32 for partners and $285 for paralegals. These rates are reasonable for experienced bankruptcy practitioners appearing in these proceedings.

29. As evidence of the reasonableness of these hourly rates, we submit the final fee application of Trust counsel [D.I. 29197]. Trust counsel's final fee application sought a blended hourly rate for partners and counsels of $2,108, and a blended hourly rate of $462 for non-lawyers, including paralegals. *See* D.I. 29197 at p. 44.

30. The Court approved, by order dated April 21, 2025 [D.I. 30180], Trust counsel's final fee application. Respectfully, if a partner rate of $2,108 and a non-attorney rate of $462 were approved as reasonable for Trust counsel for the period 2022 to 2024 – presumably Trust counsel charges higher rates today – then a partner rate of $626.32 and a non-attorney rate of $285 should be found reasonable for Ross's counsel for the period 2025 to 2026.

31. Should the Trust object that only partners, and no associates, provided services to Ross in connection with him seeking dismissal of the First Amended Complaint and opposing the Reconsideration Motion, we note that Trust counsel's blended rate for *associates* ($1,099) is materially higher than Ross's counsel's blended rate for partners ($626.32). *See* D.I. 29197 at p. 44. That Goetz Platzer LLP and Joyce, LLC are efficiently operated small firms that do not reflexively assign numerous junior attorneys to every matter is a point in their favor.

32. Ross's counsel spent a total of 176.8 hours researching and drafting papers to seek dismissal of the First Amended Complaint, oppose the Reconsideration Motion, and request sanctions for the Trust's wasteful and frivolous litigation tactics, as well as preparing for and attending the hearing on these motions. The Goetz Platzer LLP and Joyce, LLC invoices, detailing the nature of the work and the amount of time spent on this work, are collectively annexed as **Exhibit 2**.

33. This work included but was not limited to researching the avoidance claims asserted in the First Amended Complaint, the grounds for barring the Trust's claims under res judicata and issue preclusion, and the Trust's improper use of the "manifest injustice" doctrine to refuse Ross's voluntary redesignation of the charitable beneficiary, as well as preparing motions and briefs based on those topics. A summary of fees by individual timekeeper, and a disclosure of the blended hourly rates, is annexed as **Exhibit 3**.

34. Ross also incurred expenses of $1,134.07, consisting of travel, reproduction costs, delivery services, and online legal database access. These expenses were actual, reasonable, and necessary in connection with seeking dismissal of the First Amended Complaint and opposing the Reconsideration Motion. A summary of expenses is annexed as **Exhibit 4**.

35. To the extent the Trust objects to the amount or payment of these expenses, we ask the Court to consider that Ross was not charged for *any* meals during the seven months these matters were pending.

36. In comparison, Trust counsel charged the Trust $94,370.68 for "dining" and meals during the 23-month period covered by the Trust's final fee application. *See* D.I. 29197 at p. 42.

37. Given Ross's counsel's willingness to waive reimbursement for the cost of meals over months researching and drafting briefs and motions, and during two days of travel to and from the hearing, we respectfully submit that the expenses identified in Exhibit 4 should be found reasonable over any objection that may be asserted by the Trust.

38. The $111,868.07 in fees and expenses, covering 176.8 hours, set forth in this declaration is inclusive of approximately 86 hours demanding that the First Amended Complaint and Reconsideration Motion be withdrawn, and in making the Sanctions Motion.

39. I personally spent numerous hours attempting to persuade the Trust to voluntarily withdraw the First Amended Complaint and Reconsideration Motion. When the Trust unreasonably refused, the Trust imposed a significant burden on Ross by forcing him to respond to the meritless First Amended Complaint and oppose the meritless Reconsideration Motion.

40. Under Federal Rule of Bankruptcy Procedure 9011(c)(2)(C), the Court may award Ross the reasonable expenses, including attorneys' fees, that he incurred for making the Sanctions Motion. *See In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 388 (3d Cir. 1997) (noting that "the time, effort, and resources expended in bringing sanctionable conduct to light would have been unnecessary had the sanctionable conduct never occurred," and stating that these "costs are as much a harm to a party in the litigation as is the delay in the litigation or the substantive prejudice caused by the conduct").

7

41. As the Third Circuit held in *Tutu Wells*, if we exclude from the sanctions award the costs of sanctions proceedings, we would undermine the compensatory goal of a sanctions award.

42. It is true that the Sanctions Order could be read to impose sanctions on the Trust for legal fees and expenses incurred only in seeking dismissal of the First Amended Complaint and opposing the Reconsideration Motion.

43. However, we believe the Court did not intend to exclude, and that it is just and appropriate to include under the umbrella of seeking dismissal of the First Amended Complaint and opposing the Reconsideration Motion, the legal fees that Ross incurred in attempting to persuade the Trust to voluntarily withdraw the First Amended Complaint and Reconsideration Motion, and in making the Sanctions Motion.

44. At the January 20, 2026 hearing, the Court remarked that it was "curious" to see how the legal fees and expenses incurred as a result of the Trust's wasteful litigation "adds up" to the $650,000 amount of the FDU Claim "given everyone's billable rates." *See* Ex. 1 at 24:6-9.

45. Ross can present evidence only of the fees and expenses he incurred. We agree that it would be instructive to learn how much Trust counsel billed the Trust in connection with the First Amended Complaint, Reconsideration Motion, and Sanctions Motion.

46. To reiterate, I attest that the Trust and its counsel should be ordered to pay Ross the sum of **$111,868.07**.

## Reservation of Right to Supplement Fees and Expenses

47. On January 23, 2026, the Trust filed three Notices of Appeal. The Trust thereby indicated its intent to appeal the Sanctions Order, the FDU Order, the denial of the Trust's Reconsideration Motion and the granting of Ross's Motion to Dismiss.

48. By pursuing these appeals, the Trust will cause Ross to incur additional legal fees and expenses to oppose the Trust's frivolous arguments.

49. Therefore, Ross reserves the right to supplement this submission to aid the Court in applying the ordered sanctions to the Trust's ongoing vexatious litigation tactics.

Dated: January 30, 2026
New York, NY

*/s/ Scott D. Simon*
Scott D. Simon (*pro hac vice*)